Susan E. Coleman (SBN 171832)
E-mail:  scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, California 90071-2953
Tel: 213.236.0600  Fax: 213.236.2700

Attorneys for Defendant
THE GEO GROUP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

OAKLAND DIVISION

| | |
|---|---|
| Rosa Lopez, as Legal Guardian of V-S-, a Minor and Successor in Interest to the Estate of Victor Sanchez Brito,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America; GEO Group, Inc., a corporation,<br><br>Defendants. | Case No. 4:23-cv-04292-DMR<br><br>**DEFENDANT GEO'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*(Proposed Order filed concurrently herewith)*<br><br>Date:   December 14, 2023<br>Time:   1:00 p.m.<br>Ctrm.:  4  [HELD VIA ZOOM]<br><br>Judge:  Hon. Donna M. Ryu |

TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on December 14, 2023, at 1:00 p.m. or as soon thereafter as the matter may be heard before the Honorable Donna M. Ryu, United States Magistrate Judge, in Courtroom 4, of the Northern District of California, located at 1301 Clay Street, Oakland, California, Defendant The GEO Group, Inc. will and hereby does move this Court to dismiss the claims brought against GEO in the Complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Plaintiff Lopez also lacks independent standing for any of the claims.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4893-3812-9033 v1

1

4:23-cv-04292-DMR
GEO MOTION TO DISMISS

Plaintiff's claim under the Rehabilitation Act must fail because GEO does not receive federal financial assistance but is instead a contractor. Plaintiff's Unruh Act claim also is not cognizable because the requisite intent is not alleged and the Mesa Verde Detention Facility is not a "business establishment" subject to Unruh. Finally, Plaintiff Rosa Lopez lacks standing as a Plaintiff for any of the claims, and instead V-S as the successor in interest is the only proper plaintiff for a survival action, with Lopez the Guardian Ad Litem.

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such other matters as may be presented to the Court at the time of hearing (if any).

Dated: October 23, 2023

BURKE, WILLIAMS & SORENSEN, LLP

By: /s/ Susan E. Coleman
    Susan E. Coleman

Attorneys for Defendant
THE GEO GROUP, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Rosa Lopez[1], the mother of decedent Victor Manuel Sanchez Brito, asserts various claims for damages against the United States of America ("USA") under the Federal Tort Claims Act and against The GEO Group, Inc. ("GEO") under the Rehabilitation Act and California state laws. (Doc. 1.) As to GEO, Plaintiff brings the following claims: (1) violation of the California Rehabilitation Act (29 USC § 794) prohibiting discrimination on the basis of disability in any program or activity receiving federal assistance; (2) violation of the Unruh Act (Cal. Civ. Code § 51) prohibiting disability discrimination; (3) negligence based on failure to protect Brito and ensure him safe conditions and treatment; (4) intentional infliction of emotional distress; (5) violation of detention standards (Cal. Govt Code § 7320); and (6) violation of the Bane Act (Cal. Civ. Code § 52.1).

## II. BRIEF STATEMENT OF FACTS

Shortly after decedent Brito's arrest by ICE in 2015, he was housed in the Yuba County jail. (Doc. 1, ¶ 61.) Brito remained in Yuba County Jail until July 2018, when he was transferred to Mesa Verde in Kern County. (*Id.*, ¶ 84.) Plaintiff contends that Brito was mistreated, endured deplorable conditions, and that his mental health deteriorated during his time in custody. (*See generally*, Doc. 1.) An unspecified number of months after his release on March 16, 2021, Brito overdosed on drugs[2], which Plaintiff contends was a suicide rather than accidental. (*Id.,* ¶ 9.)

///

---

[1] The actual named Plaintiffs are somewhat unclear from the Complaint. Rosa Lopez is the mother of decedent, and appears to list herself as a Plaintiff (*see* Compl. [Doc. 1] ¶ 2) rather than as the Guardian Ad Litem of decedent's minor child – V.S. (*See id.*, caption and ¶ 13.)

[2] It does not appear that Plaintiff claims wrongful death in the negligence claim, *i.e.* that Brito's death was caused by his time in custody. (*See* Doc. 1, ¶¶ 170-172.)

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4893-3812-9033 v1

1

4:23-cv-04292-DMR
GEO MOTION TO DISMISS

## III. STANDARD ON MOTION TO DISMISS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Though a court is to assume plaintiff's allegations are true, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Dismissal is appropriate under Rule 12(b)(6) where the complaint fails to state a claim for which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "In assessing a motion to dismiss, a court may consider documents beyond the pleadings where the document is incorporated by reference in the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## IV. ARGUMENT

### A. PLAINTIFF'S REHABILITATION ACT CLAIM FAILS

In Count 4, Plaintiff alleges that GEO violated the Rehabilitation Act (29 USC § 794). (*See* Doc. 1, ¶¶ 152-162.) This claim must fail because GEO is not a recipient of federal financial *assistance* as is required.

The Rehabilitation Act does not apply to GEO because it does not receive federal financial assistance. Instead, it is a federal contractor. Plaintiff alleges that GEO "operates . . . at least one program or activity for ICE for which it receives federal financial assistance." (*Id*., ¶ 155.) Plaintiff cites to the Voluntary Work

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4893-3812-9033 v1

2

4:23-cv-04292-DMR
GEO MOTION TO DISMISS

Program (VWP)[3], for which the USA provides a stipend of at least $1 per day to incarcerated persons for labor in its facilities. (*See id.*) However, this is not equivalent to the receipt of a grant, property at below-market value, or other financial assistance. The clearest example of federal financial assistance is the award or grant of money. An agency also might provide federal financial assistance in nonmonetary form; that is, "whatever thing of value is extended by the grant statute." See *United States Dep't of Transp. v. Paralyzed Veterans*, 477 U.S. 597, 607 n.11 (1986) ("Although the word 'financial' usually indicates 'money,' federal financial assistance may take nonmoney form," citing *Grove City Col. v. Bell,* 465 U.S. 555, 564–65 (1984)). Federal financial assistance may include the use or rental of federal land or property at below market value, federal training, a loan of federal personnel, subsidies, and other arrangements with the intention of providing assistance. Federal financial assistance does not encompass contracts of guarantee or insurance, regulated programs, licenses, procurement contracts by the federal government at market value, or programs that provide direct benefits.

An entity's receipt of a procurement contract with the federal government does <u>not</u> subject the contractor to coverage under Title VI. See, e.g., *Fredricks v. City of New York*, No. 12 CIV. 3734, 2013 WL 839584, at *5 (S.D.N.Y. Mar. 6, 2013); *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1060 (2d Cir. 1990) (receipt of Army procurement contracts does not render the company a "program or activity receiving federal financial assistance"); Letter from Robert Kennedy, Attorney General, to Hon. John Sherman Cooper (April 29, 1964), reprinted in 110 Cong. Rec. 10075, 10076 (1964) ("Title VI does not apply to procurement contracts, or to other contracts which do not involve financial assistance by the United States.");

---

[3] The VWP is "voluntary" for detainees but mandatory for ICE contractors such as GEO.  *See* PBNDS § 5.8 (2011, rev. 2016), https://www.ice.gov/doclib/detention-standards/2011/5-8.pdf    This Court may take judicial notice of the PBNDS. Fed. R. Civ. P. 201.

*Venkatraman v. REI Sys., Inc.,* 417 F.3d 418, 421 (4th Cir. 2005) (defendant's "status as a government contractor is irrelevant to Title VI liability [because Title VI] coverage turns on the receipt of "federal financial assistance", not the existence of a contractual relationship"); *LaBouve v. Boeing Co.,* 387 F. Supp. 2d 845, 854 (N.D. Ill. 2005) (Department of Defense contract with a corporation for the procurement of a fighter aircraft did not constitute federal financial assistance); *Gallagher v. Croghan Colonial Bank,* 89 F.3d 275, 277 (6th Cir. 1996) (interest subsidies are akin to procurement contracts); *Cook v. Budget Rent-A-Car Corp.,* 502 F. Supp. 494, 496–97 (S.D.N.Y. 1980) (contracts involving goods or services purchased at fair market value do not constitute "assistance" because the word connotes a transfer of funds at reduced consideration or as a subsidy).

While Plaintiff may argue that GEO is an indirect recipient of federal financial assistance because it receives labor from the detainees – subsidized by ICE – this theory lacks merit. As the Supreme Court explained in *Paralyzed Veterans*, an entity that merely enjoys indirectly the benefits of federal financial assistance is not an intended recipient: "While *Grove City* stands for the proposition that Title IX coverage extends to Congress' intended recipient, whether receiving the aid directly or indirectly, it does not stand for the proposition that federal coverage follows the aid past the recipient to those who merely benefit from the aid." *Paralyzed Veterans*, 477 U.S. 597, 607 (1986) (citing *Grove City Coll. v. Bell*, 465 U.S. 555, 564 (1984)). Finally, in analyzing whether an entity is a recipient, it is necessary to distinguish a recipient from a beneficiary: the former must comply with Title VI while the latter does not. See *Paralyzed Veterans,* 477 U.S. at 606–07. While GEO is arguably an indirect beneficiary, it is not a recipient of federal financial assistance and thus this claim must be dismissed.

///

///

///

## B. THE UNRUH ACT CLAIM IS NOT COGNIZABLE

Plaintiff does not make a prima facie showing of intentional discrimination as needed to proceed with her Unruh Act claim and thus it should be dismissed. Further, Mesa Verde is not a "business establishment" subject to the Unruh Act.

In the Ninth Circuit case of *Greater Los Angeles Agency on Deafness [GLAAD], Inc. et al. v. Cable News Network* (Case. 12-15807, February 5, 2014), Plaintiffs contended that CNN violated the Unruh Act by intentionally excluding deaf and hard of hearing persons from accessing the videos on CNN.com. In making an anti-SLAPP analysis, the Ninth Circuit found Plaintiffs had no probability of prevailing on the merits under the Unruh Act because intentional discrimination based on disability must be shown. The Unruh Act provides that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability [or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civil Code §51(b).  By its terms, the Unruh Act "does not extend to practices and policies that apply equally to all persons." *Turner v. Ass'n of Am. Med. Colls.,* 167 Cal.App.4th 1401, 1408 (2008) (citing Cal. Civ. Code 51(c)).

Thus, to establish a violation of the Unruh Act independent of an ADA claim, Plaintiff must "plead and prove <u>intentional discrimination</u> in <u>public accommodations</u> in violation of the terms of the Act." *Munson v. Del Taco Inc.,* 208 P.3d 623, 627 (Cal. 2009) (internal quotation marks omitted). The California Supreme Court has clarified that the Unruh Act contemplates "willful, affirmative misconduct on the part of those who violate the Act" and that a plaintiff must therefore allege, and show, more than the disparate impact of a facially neutral policy. *Koebke v. Bernardo Heights Country Club*, 115 P.3d 121, 1228-29 (Cal. 2005) (internal quotation marks omitted); *Harris v. Capital Growth Investors XIV*, 805 P.2d 873, 893 (Cal. 1991), superseded by statute on other grounds as explained in Munson,

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4893-3812-9033 v1

5

4:23-cv-04292-DMR
GEO MOTION TO DISMISS

208 P.3d at 627-30; see also *Cullen v. Netflix, Inc.*, 880 F.Supp. 2d 1017, 1024-24 (N.D. Cal. 2012); *Young v. Facebook, Inc.*, 790 F. Supp.2d 1110, 1116 (N.D. Cal. 2011).

The California Court of Appeal's reasoning in *Belton v. Comcast Cable Holdings, LLC*, 151 Cal.App. 4th 1224 (2007) is instructive. The court held that Comcast did not violate the Unruh Act by packing music services with television without an option for consumers (particularly blind consumers) to buy the music service alone. Id. at 1229-30, 1237. The court explained that Comcast's practice of packaging and selling its products "applied equally to sighted and blind subscribers" so the policy, which was neutral on its face, was not actionable despite the alleged disproportionate impact on blind people. *Id*. at 1237-39. Similarly, in the GLAAD case, CNN did not offer any closed captioning on news displayed on CNN.com so its policy of displaying video without closed captioning applied equally to all its website visitors, whether hearing-impaired or not. The court found this failed to demonstrate CNN's "willful, affirmative misconduct" or intentional discrimination and therefore it could not form the basis of an Unruh Act violation. *GLAAD,* Op. at 18, citing *Koebke,* 115 P.3d at 1227-28; see also *Cullen*, 880 F.Supp.2d at 1024-25 (holding plaintiff failed to state an Unruh Act claim by alleging that Netflix failed to caption "a meaningful amount of its streaming library" because such conduct was not "willful, affirmative misconduct"); *Young,* 790 F.Supp. 2d at 1114, 1116 (holding Plaintiff failed to state an Unruh Act claim by alleging that Facebook's customer service was difficult to use with bipolar disorder because it treated "all users in the same cold, automated way").

Although Plaintiff alleges his treatment was inhumane and he was denied programs and services "on account of his disability," this allegation is made against *all Defendants* and does not distinguish between them. Nor does it differentiate between his time at the Yuba County Jail (which GEO does not operate) and Mesa Verde. (*See* Doc. 1, ¶ 7.) For example, Plaintiff alleges "*Defendants'* prolonged

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4893-3812-9033 v1

6

4:23-cv-04292-DMR
GEO MOTION TO DISMISS

torment" of Brito "took its toll. . . ." (*Id*., ¶ 8.)  In the section of the Complaint focused on Mesa Verde, Plaintiff is critical of the entire facility and its treatment of "[p]eople in the general population at Mesa Verde." (*See id.,* ¶ 87.)  Although Plaintiff complains of Brito's conditions while he was in general population (*id.,* ¶ 88), these conditions applied to everyone and cannot be said to be intentionally discriminatory based on his disability.

While Plaintiff states that Brito was put into a Restricted Housing Unit (RHU) for safety reasons according to Defendants, she speculates that it was actually due to his mental illness.  (*See id*., ¶ 90.) This theory – at odds with the stated reason for his placement – fails to show intentionally targeted him for RHU placement due to his disability. Rather, it is the type of situation where a facially neutral policy - - placing those in danger into protective custody - - may have a disparate impact on those with mental illness because of them acting out and subjecting them to violence from other detainees. See *Koebke*, 115 P.3d at 1228-29 (holding a plaintiff must allege, and show, more than the disparate impact of a facially neutral policy).  Nor does Plaintiff allege that any conditions in RHU were different for Brito than for any other detainees, who she alleges can be placed in those units for suicide watch, disciplinary segregation, [or protective custody]. (Doc. 1, ¶ 93, 95.) Accordingly, Plaintiff fails to allege intentional willful action targeted to Brito's disability, as required for an Unruh Act claim, and it should be dismissed.

Further, Mesa Verde as an ICE Detention Facility is not a "business establishment" subject to Unruh.  See *Taormina v. Cal. Dept. of Corr*., 946 F. Supp. 829, 834 (S.D. Cal. 1996). Citing the California Supreme Court's decision in *O'Connor v. Village Green Owners Ass'n*, 33 Cal.3d 790, 795 (1983), the *Taormina* court reasoned that in context of the Unruh Act, the term "business" usually refers to matters "synonymous with calling, occupation or trade, engaged in for the purpose of making a livelihood or gain." *Id.*  A prison, the district court reasoned, does not qualify as a 'business' because prisoners are not engaged in a calling, occupation or

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4893-3812-9033 v1

7

4:23-cv-04292-DMR
GEO MOTION TO DISMISS

trade for purposes of making a livelihood or gain." *Id*. Rather, prisoners are in prison, not by choice, but "because of crimes which they have committed." *Id*. Similarly, detainees in an ICE facility are not in custody by choice. Plaintiff's Unruh Act claim should accordingly be dismissed with prejudice.

## C.  PLAINTIFF LOPEZ LACKS STANDING TO BRING ANY OF THE CLAIMS RAISED IN A SURVIVAL ACTION

Plaintiff contends GEO violated its duty to care for decedent Brito by failing to protect him and failing to ensure him safe conditions and treatment. Plaintiff does not allege a negligent wrongful death – likely because Brito died an unstated number of months after his release due to a drug overdose -- so the negligence claim here is brought as a survival action, which must be brought by the decedent's successor in interest. *See* Cal. Civ. Proc. Code, § 377.30.

So too, all of the other claims raised herein. California Code of Civil Procedure § 377.20 provides that "[e]xcept as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period."  This includes the Bane Act claim. *Bay Area Rapid Transit Dist. v. Superior Ct.*, 38 Cal. App. 4th 141, 143 (1995).  The Bane Act is not a wrongful death statute, but "a *personal* cause of action for the victim of a hate crime." *Id.* (emphasis in original). "The Bane Act is simply not a wrongful death provision." *Id.* (Dismissing parents' claim under the Bane Act for the wrongful death of their son alleging "loss of aid, comfort and society" under the Bane Act).

Brito's successor in interest is his son V-S. (Doc. 1, ¶ 13.) But V-S is not listed as a Plaintiff, by and through a Guardian Ad Litem.  Instead, Plaintiff Rosa Lopez – the grandmother of V-S – states she is a proper plaintiff as the Guardian of V-S. (*See id.*) She cites Fed. R. Civ. P. 17; however, this rule indicates the minor may sue by way of a Guardian Ad Litem, not that the Guardian is a proper Plaintiff in her own right. Accordingly, the Complaint must be amended.

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4893-3812-9033 v1

8

4:23-cv-04292-DMR
GEO MOTION TO DISMISS

Further, it should be noted that the recoverable damages herein are limited to the damages that Brito would have been able to recover, including medical expenses (minimal if any due to him being in custody), lost wages (if any), or property damages (not applicable under these facts). Damages for pain and suffering are not recoverable in a survival action. *See* Cal. Civ. Proc. Code, § 377.30.

## V. CONCLUSION

For the foregoing reasons, this Court should grant this motion and dismiss the Complaint without leave to amend as to the Rehabilitation Act and Unruh Act claims brought against GEO, and with leave to amend the other claims.

Dated:  October 23, 2023          BURKE, WILLIAMS & SORENSEN, LLP


By: /s/ Susan E. Coleman
         Susan E. Coleman

Attorneys for Defendant
THE GEO GROUP, INC.

                                                                                GEO MOTION TO DISMISS