1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2
   MICHELLE LO (NYBN 4325163)
3  Chief, Civil Division

4  SHIWON CHOE (CABN 320041)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-6967
7       Facsimile: (415) 436-6748
        shiwon.choe@usdoj.gov
8
   Attorneys for Defendant United States of America
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                   OAKLAND DIVISION

13  ROSA LOPEZ, as Legal Guardian of V-S-, a      ) Case No. 4:23-cv-04292-DMR
    Minor and Successor in Interest to the Estate of )
14  Victor Sanchez Brito,                          )
                                                   ) **DEFENDANT UNITED STATES OF**
15          Plaintiff,                             ) **AMERICA'S MOTION TO DISMISS**
                                                   )
16      v.                                         )
                                                   ) Hearing Date/Time:  December 14, 2023 at 1:00 p.m.
17  UNITED STATES OF AMERICA and GEO              ) Hearing Location:  Zoom webinar
    GROUP, INC.,                                   )
18                                                 )
            Defendants.                            )
19  _____ )

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iv

NOTICE OF MOTION ......................................................................................................... 1

ISSUES PRESENTED ........................................................................................................... 1

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

I.  Following Multiple Criminal Convictions, Plaintiff Was Detained in April 2015 by
ICE ............................................................................................................................... 3

II.  The Mandatory-Detention Requirements of the Immigration and Nationality Act
("INA") ....................................................................................................................... 4

III.  Plaintiff's Immigration and Removal Proceedings .................................................... 4

IV.  Plaintiff's Petition for Review Before the Ninth Circuit .......................................... 6

V.  Plaintiff's Proceedings Before the District Court in the Eastern District of California ......... 6

VI.  Plaintiff's Immigration Detention ............................................................................ 7

    A.  Yuba County Jail ................................................................................................ 7

    B.  Mesa Verde ....................................................................................................... 8

VII.  Plaintiff's Release and Subsequent Events .............................................................. 8

LEGAL STANDARD ........................................................................................................... 9

I.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction ..................................... 9

II.  Motion to Dismiss for Failure to State a Claim ...................................................... 10

ARGUMENT ....................................................................................................................... 10

I.  The Court Lacks Jurisdiction Over Plaintiff's Complaint Against the United States,
Because the United States Has Sovereign Immunity From All of Plaintiff's Claims. ......... 10

    A.  The United States has absolute sovereign immunity except where expressly
waived. ......................................................................................................... 10

    B.  The United States has immunity from Plaintiff's false-imprisonment claim. .......... 12

        1.  A law-enforcement officer would not have liability under state law for
arresting Plaintiff, and thus the United States has no liability either. ............. 12

            (i)  There is no liability because there was reasonable cause for
arrest. ................................................................................................ 12

(ii)   Plaintiff's argument based on Officer Grasso's purported failure to fully investigate Plaintiff's citizenship claim fails, because there is no duty to investigate once probable cause has been established. .......................................................................14

(iii)   Plaintiff's argument based on Officer Grasso's purported failure to comply with ICE Directive 16001.1 fails, because a private person would not be liable for failing to comply with ICE directives..........................................................................14

2.   The Intentional Torts Exception bars Plaintiff's claim, because it bars any and all false-imprisonment claims unless based on the acts or omissions of law-enforcement officers, and (other than Officer Grasso's initial arrest) Plaintiff does not plead any acts or omissions by law-enforcement officers. ........................................................14

3.   The Discretionary Function Exception bars Plaintiff's claim, because how to investigate a citizenship claim by an individual whom official documents state was born in Mexico and for whom no documentation of U.S. citizenship exists, is a discretionary function. ..........................15

4.   The Due Care Exception bars Plaintiff's claim, because ICE was statutorily mandated by federal law to detain Plaintiff..........................17

C.   The United States has immunity from Plaintiff's negligence claim. ................................18

1.   The United States has immunity from Plaintiff's claim based on ICE policies, because a private person would not have liability under state law for failing to comply with ICE policies...........................................18

2.   The United States has immunity from Plaintiff's claim based on ICE's detention of him or ICE's purported failure to release him, regardless of whether Plaintiff tries to recast this false-imprisonment claim as negligence. ....................................................................18

3.   The United States has immunity from Plaintiff's claim based on California juvenile-records laws, because a private person would not have liability under state law for failing to comply with such laws. ...................19

4.   The United States has immunity from Plaintiff's claim based on his conditions of confinement. ...........................................................19

(i)   The United States is not liable for acts or omissions of contractors or non-natural persons, or acts or omissions that have no private-person analogue. ............................................19

(ii)   The Discretionary Function Exception bars Plaintiff's claim, because where to place detainees, or how to supervise contractors who operate detention facilities, are discretionary functions..................................................................20

5.   The United States has immunity from Plaintiff's claim based on his release from custody, because a private person would not have liability under state law with respect to Plaintiff's release..........................21

1    D.  The United States has immunity from Plaintiff's IIED claim. ...........................22

2 II.  Plaintiff's Claims Are Time-Barred...................................................................22

3    A.  Plaintiff's false-imprisonment claim is time-barred in its entirety. ..............................22

4    B.  Plaintiff's negligence and IIED claims are time-barred with respect to any acts
       or omissions prior to November 29, 2020. ..........................................................23

5 III.  Plaintiff Fails to State a Claim .........................................................................23

     A.  Plaintiff fails to cognizably plead a false-imprisonment claim. ...................................23

     B.  Plaintiff fails to cognizably plead a negligence claim. .......................................24

     C.  Plaintiff fails to cognizably plead an IIED claim...............................................25

CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*In re Sanchez Brito,*
No. A█████-766 (IJ Jan. 30, 2017)
(*Sanchez Brito I*) (Scott Decl. Ex. 1) ...................................................................... 1, 4, 5

*In re Sanchez Brito,*
No. A█████-766 (BIA July 14, 2017)
(*Sanchez Brito II*) (Scott Decl. Ex. 2) ....................................................................... 1, 5

*Sanchez Brito v. Sessions,*
No. 17-72066 (9th Cir. Dec. 19, 2017), ECF No. 12
(*Sanchez Brito III*) (Choe Decl. Ex. 1) ...................................................................... 2, 6

*Sanchez Brito v. Barr,*
No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824 (E.D. Cal. July 15, 2020)
(*Sanchez Brito IV*) ......................................................................................................... 2

*Sanchez Brito v. Garland,*
No. 2:18-CV-00097-KJM-DB, 2021 WL 5867473 (E.D. Cal. Dec. 10, 2021)
(*Sanchez Brito V*) ..................................................................................................... 2, 6, 7

*Sanchez Brito v. Garland,*
No. 2:18-cv-00097-KJM-DB, 2022 WL 4237801(E.D. Cal. Sept. 14, 2022)
(*Sanchez Brito VI*) ..................................................................................................... 2, 7

*Adams v. United States,*
420 F.3d 1049 (9th Cir. 2005) ........................................................................... 11, 19, 20

*Adeboye v. United States,*
No. 19-cv-3089 (DLF), 2020 WL 5231323 (D.D.C. Sept. 1, 2020) ................................ 20

*Alfrey v. United States,*
276 F.3d 557 (9th Cir. 2002) ......................................................................................... 20

*Apodaca v. Jenkins,*
No. 2:23-cv-04527-MWF-PD, 2023 WL 4683481 (N.D. Cal. June 16, 2023) ............... 19

*Arnsberg v. United States,*
757 F.2d 971 (9th Cir. 1985) ......................................................................................... 15

*Arteaga-Ruiz v. United States,*
164 F. Supp. 3d 1198 (D. Idaho 2016) (*Arteaga-Ruiz I*) .............................................. 13

*Arteaga-Ruiz v. United States,*
705 F. App'x 597 (9th Cir. 2017) (*Arteaga-Ruiz II*) ................................................ 13, 16

*Asgari v. City of L.A.,*
15 Cal. 4th 744 (1997) ............................................................................................. 12, 23

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................................................... 10

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983)...............................................................................................................22

*Barney v. United States*,
   No. 4:20-cv-03791-KAW, 2021 WL 4497920 (N.D. Cal. Jan. 7, 2021)...........................25

*Barone v. United States*,
   No. 12 Civ. 4103(LAK), 2014 WL 4467780 (S.D.N.Y. Sept. 10, 2014)...........................21

*Belinda K. v. Cty. of Alameda*,
   No. 10-CV-05797-LHK, 2012 WL 1535232 (N.D. Cal. Apr. 30, 2012) .........................19

*Blanco Ayala v. United States*,
   982 F.3d 209 (4th Cir. 2020) .................................................................................... 2, 16

*Carroll v. State*,
   217 Cal. App. 3d 134 (1990) ...........................................................................................13

*Cervantes v. United States*,
   330 F.3d 1186 (9th Cir. 2003) .........................................................................................13

*Christensen v. Super. Ct.*,
   54 Cal. 3d 868 (1991) .....................................................................................................25

*Crosby v. Wellpath, Inc.*,
   No. 20-cv-08529-MMC, 2021 WL 3053056 (N.D. Cal. July 20, 2021) ..........................24

*Delta Sav. Bank v. United States*,
   265 F.3d 1017 (9th Cir. 2001) ................................................................................. 12, 14

*Demore v. Kim*,
   538 U.S. 510 (2003)..........................................................................................................4

*Dickman v. United States*,
   No. 02cv2371-BEN (WMc), 2006 WL 8455252 (S.D. Cal. Mar. 8, 2006) ......................21

*Dierkes v. United States*,
   No. 20-cv-07685-JSW, 2021 WL 4620958 (N.D. Cal. May 7, 2021)...............................25

*Dyniewicz v. United States*,
   742 F.2d 484 (9th Cir. 1984) ...........................................................................................22

*Elgamal v. Bernacke*,
   714 F. App'x 741 (9th Cir. 2018) ....................................................................................14

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011) .........................................................................................23

*FDIC v. Meyer*,
   510 U.S. 471 (1994)..................................................................................................10, 11

*Ferguson v. United States*,
   792 F. App'x 494 (9th Cir. 2020) ....................................................................................18

*Galvin v. Hay*,
   374 F.3d 739 (9th Cir. 2004) ...........................................................................................13

*Gasho v. United States,*
   39 F.3d 1420 (9th Cir. 1994) ............................................................................................... 15

*Gonzalez v. United States,*
   814 F.3d 1022 (9th Cir. 2016) ............................................................................................. 17

*Hamilton v. City of San Diego,*
   217 Cal. App. 3d 838 (1990) ................................................................................... 13, 14, 23

*Hyatt v. Yee,*
   871 F.3d 1067 (9th Cir. 2017) ............................................................................................... 9

*In re Consol. U.S. Atmospheric Testing Litig.,*
   820 F.2d 982 (9th Cir. 1987) ............................................................................................... 21

*J.P. v. United States,*
   __ F. Supp. 3d __, No. CV-22-00683-PHX-MTL, 2023 WL 4237331 (D. Ariz. June 28, 2023).. 11, 20

*Jennings v. Rodriguez,*
   138 S. Ct. 830 (2018) ..................................................................................................... 4, 17

*Johnson v. Maker Ecosystem Growth Holdings, Inc.,*
   No. 20-cv-02569-MMC, 2023 WL 2191214 (N.D. Cal. Feb. 22, 2023) ............................................ 19

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994) ....................................................................................................... 9, 10

*Lam v. United States,*
   979 F.3d 665 (9th Cir. 2020) ................................................................................... 12, 15, 16

*Lane v. Pena,*
   518 U.S. 187 (1996) ..................................................................................................... 10, 11

*Lanuza v. United States,*
   No. 2:14-cv-01641-BJR, 2019 WL 3571053 (W.D. Wash. Aug. 6, 2019) ........................................ 15

*Lima-Marín v. United States,*
   No. 20-cv-0322-WJM-MEH, 2021 WL 463626 (D. Colo. Feb. 9, 2021) ........................................... 21

*Martin v. United States,*
   No. 15-CV-278 JLS (DHB), 2016 WL 4542289 (S.D. Cal. Aug. 31, 2016) ...................................... 15

*McDaniels v. Cty. of San Joaquin,*
   No. 2:16-2007 WBS DB, 2017 WL 915356 (E.D. Cal. Mar. 7, 2017) ............................................ 24

*McGowan v. United States,*
   825 F.3d 118 (2d Cir. 2016) ................................................................................................ 20

*McQuade v. United States,*
   839 F.2d 640 (9th Cir. 1988) ................................................................................... 12, 17, 18

*Minch v. Dep't of Cal. Highway Patrol,*
   140 Cal. App. 4th 895 (2006) ................................................................................... 24, 25

*Mondaca-Vega v. Lynch,*
   808 F.3d 413 (9th Cir. 2015) (en banc) ................................................................................. 3

*Nieves Martinez v. United States*,
   997 F.3d 867 (9th Cir. 2021) ........................................................................................ 16

*Nurse v. United States*,
   226 F.3d 996 (9th Cir. 2000) ........................................................................................ 21

*O'Toole v. Super. Ct.*,
   140 Cal. App. 4th 488 (2006) ...................................................................................... 13

*Poorsina v. Zhang*,
   No. 20-cv-09119-JCS, 2021 WL 1222520 (N.D. Cal. Mar. 31, 2021) ........................... 9

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) .................................................................................... 9, 10

*Robinson v. United States*,
   586 F.3d 683 (9th Cir. 2009) ................................................................................. 10, 22

*Sabow v. United States*,
   93 F.3d 1445 (9th Cir. 1996) ...................................................................................... 16

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ...................................................................................... 9

*Sky Ad, Inc. v. McClure*,
   951 F.2d 1146 (9th Cir. 1991) ................................................................................ 11, 20

*Snow-Erlin v. United States*,
   470 F.3d 804 (9th Cir. 2006) ...................................................................................... 12

*Thomas v. Cty. of San Diego*,
   20-cv-1979-CAB-MDD, 2021 WL 2715086 (S.D. Cal. July 1, 2021) ........................... 24

*Tsolmon v. United States*,
   841 F.3d 378 (5th Cir. 2016) ...................................................................................... 17

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) .................................................................................... 9, 10

*Vasilenko v. Grace Family Church*,
   3 Cal. 5th 1077 (2017) ............................................................................................... 24

*Wallace v. Kato*,
   549 U.S. 384 (2007) ................................................................................................... 23

*Watson v. United States*,
   865 F.3d 123 (2d Cir. 2017) ............................................................................ 2, 14, 23

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ...................................................................................... 9

*Zepeda Rivas v. Jennings*,
   445 F. Supp. 3d 36 (N.D. Cal. 2020) ........................................................................... 8

**Statutes**

8 U.S.C. § 1226(c) ....................................................................................... 4, 6, 17, 18

8 U.S.C. § 1227(a)(2) ............................................................................................... 6

8 U.S.C. § 1357(a)(2) ............................................................................................. 13

28 U.S.C. § 1346(b) ......................................................................................... 11, 12

28 U.S.C. § 2401(b) ............................................................................................... 22

28 U.S.C. § 2671 ............................................................................................. 11, 19

28 U.S.C. § 2680(a) ................................................................................. 1, 12, 17, 18

28 U.S.C. § 2680(h) ..................................................................................... 1, 12, 15

Cal. Penal Code § 847(b)(1) .................................................................................. 13

Cal. Veh. Code § 10851 ............................................................................................ 5

**Regulations**

8 C.F.R. § 1003.1(g) .................................................................................... 5, 17, 18

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................. 1, 3, 9

Fed. R. Civ. P. 12(b)(6) ............................................................................. 1, 3, 9, 10

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on December 14, 2023, at 1:00 p.m., Defendant United States of America will respectfully move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff's Complaint against the United States.  The motion is based on this Notice; the following Memorandum of Points and Authorities; the Declarations of Nikisha Scott, Shiwon Choe, and Rigoberto Gilbert and exhibits thereto; and all other matters properly before the Court.

## ISSUES PRESENTED

1.      Whether the United States retains sovereign immunity from Plaintiff's Complaint, and whether the Court therefore lacks jurisdiction, because Plaintiff's claims are not based on acts or omissions for which a private person would be liable under state law, as required under the Federal Tort Claims Act ("FTCA"); are barred by the Intentional Torts Exception, 28 U.S.C. § 2680(h); and/or are barred by the Due Care Exception and/or the Discretionary Function Exception, 28 U.S.C. § 2680(a).

2.      Whether Plaintiff's claims are time-barred.

3.      Whether Plaintiff has failed to plead a cognizable claim.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Official birth-registration documents from the Government of Mexico state that Victor Manuel Sanchez Brito ("Plaintiff")[1] was born in Mexico.  Upon Plaintiff's release from jail in 2015, U.S. Immigration and Customs Enforcement ("ICE") took Plaintiff into custody as an apparent removable noncitizen.  Plaintiff claimed he was born in the United States but had no documentation that supported his claim.  Plaintiff appeared before an Immigration Judge ("IJ") and litigated his citizenship claim.  The IJ ruled Plaintiff was a removable noncitizen.  *In re Sanchez Brito*, No. A███████-766 (IJ Jan. 30, 2017) (*Sanchez Brito I*) (Scott Decl. Ex. 1).  Plaintiff appealed to the Board of Immigration Appeals ("BIA"), which affirmed that Plaintiff was a removable noncitizen.  *In re Sanchez Brito*, No. A████

---

[1] Plaintiff Rosa Lopez brings this action only as legal guardian of V-S-, who is included only as successor in interest to Mr. Sanchez Brito.  Compl. ¶ 13; Lopez Decl. ¶¶ 4–5.  Because Mr. Sanchez Brito is the individual whose interests are at issue (and Ms. Lopez's and V-S-'s interests, if any, are derivative of Mr. Sanchez Brito's), this brief uses "Plaintiff" to refer to Mr. Sanchez Brito together with any interest Ms. Lopez and V-S- may have.  *See Exarhos v. Exarhos*, 159 Cal. App. 4th 898, 905 (2008) (successor in interest "steps into the decedent's position") (brackets omitted).

1   ██████-766 (BIA July 14, 2017) (*Sanchez Brito II*) (Scott Decl. Ex. 2).[2]  As an apparent removable

2   noncitizen, Plaintiff was held in immigration detention.

3       Plaintiff petitioned for review before the Ninth Circuit, which transferred his case to the Eastern

4   District of California.  *Sanchez Brito v. Sessions*, No. 17-72066 (9th Cir. Dec. 19, 2017), ECF No. 12

5   (*Sanchez Brito III*) (Choe Decl. Ex. 1).  The district court there held that "clear, unequivocal and

6   convincing evidence" established a rebuttable presumption that Plaintiff was born in Mexico and was

7   not a U.S. citizen.  *Sanchez Brito v. Barr*, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *4–7

8   (E.D. Cal. July 15, 2020) (*Sanchez Brito IV*).  Ultimately, following a bench trial, the district court held

9   that Plaintiff's mother's uncorroborated testimony that Plaintiff was born in the United States shifted the

10  burden on the Government to disprove citizenship by clear and convincing evidence.  *Sanchez Brito v.*

11  *Garland*, No. 2:18-CV-00097-KJM-DB, 2021 WL 5867473, at *8–9 (E.D. Cal. Dec. 10, 2021) (*Sanchez*

12  *Brito V*), *amended and superseded*, 2022 WL 4237801 (E.D. Cal. Sept. 14, 2022) (*Sanchez Brito VI*).

13  The district court held that the Government did not meet this heightened clear-and-convincing-evidence

14  burden and thus ruled that "[o]n the record developed before this court, [Plaintiff] is a U.S. citizen."  *Id.*

15  at *9.  Upon the issuance of the district court's ruling, ICE released Plaintiff that same day.

16      Plaintiff now seeks money damages, asserting claims for false imprisonment, negligence, and

17  intentional infliction of emotional distress ("IIED") under the FTCA arising out of what he claims is

18  ICE's purported failure to release him before the district court issued its ruling and for the alleged

19  conditions at the facilities at which he was detained.  Any claimed injuries are not compensable as torts,

20  however, as Congress has not waived the Government's sovereign immunity from claims for money

21  damages in these circumstances.  *See, e.g.*, *Watson v. United States*, 865 F.3d 123, 127 (2d Cir. 2017)

22  (holding in similar FTCA case that "[i]t is arresting and disturbing that an American citizen was

23  detained for years in immigration proceedings while facing deportation, but [plaintiff]'s claims for

24  damages are foreclosed by precedent"); *Blanco Ayala v. United States*, 982 F.3d 209, 218 (4th Cir.

25  2020) (holding in similar FTCA case that "potential victims of allegedly tortious actions by immigration

26  officials [are] without recourse to money damages.  But that absence is not due to the judiciary, but

27  ─────────────────────────

28  [2] Regulations restrict the Government's ability to discuss here some of the affirmative immigration relief
    Plaintiff sought, hence the IJ and BIA orders have been partially redacted.  The portions of the orders
    addressing Plaintiff's citizenship claim and his criminal convictions remain unredacted.

1    rather Congress, which need not have waived immunity at all. . . .  The safeguards against unfortunate

2    mistakes in this whole field lie not in a tort action but in the elaborate administrative removal process,

3    which involves multiple proceedings before an immigration judge, the Board of Immigration Appeals,

4    and, finally, the federal courts.").  The Government retains immunity where (as here) Plaintiff's claims

5    are not based on acts or omissions for which a private person would be liable under state law, where

6    Plaintiff alleges false imprisonment, where the Government's alleged acts were discretionary functions,

7    and where the Government's acts were taken to execute federal law.  Because (1) the Government has

8    sovereign immunity and the Court thus lacks jurisdiction, (2) Plaintiff's claims are time-barred, and

9    (3)  Plaintiff fails to state a cognizable claim, Plaintiff's Complaint should be dismissed in its entirety.

10                                                **BACKGROUND**

11   **I.     Following Multiple Criminal Convictions, Plaintiff Was Detained in April 2015 by ICE**

12          Petitioner has been convicted of multiple crimes throughout his adulthood and served time in the

13   Marin County Jail on multiple occasions.  Compl. ¶ 48.  In April 2015, Petitioner was scheduled to be

14   released from Marin County Jail after serving one of his multiple jail sentences.  *Id.* ¶ 49.

15          Plaintiff alleges that ICE Officer Marco Grasso was stationed at Marin County Jail for the

16   purpose of identifying immigrants who might be subject to removal from the United States.  *Id.*  Officer

17   Grasso had access to the Jail's booking system.  *Id.* ¶ 50.  Various entries therein identified Plaintiff

18   alternatively as being a U.S. citizen and as being born in Mexico.  *Id.*  Officer Grasso interviewed

19   Plaintiff, who said that he was born in California.  *Id.*  Officer Grasso did not believe him.  *Id.*  Plaintiff

20   does not allege that any official documentation stating that he was born in the United States exists.  *See,*

21   *e.g., id.* ¶ 39; *cf. Sanchez Brito IV*, 2020 WL 4003824, at *5, *7 (Plaintiff admitting that he possess no

22   documents, photographs, or medical records supporting claim that he was born in the United States).  By

23   contrast, Officer Grasso had official documentation stating that Plaintiff was not born in the United

24   States: a Mexican birth registration that stated that Plaintiff was born in Mexico.  Compl. ¶ 51; Admin.

25   Record, *Sanchez Brito v. Sessions*, No. 17-72066 (9th Cir. filed Aug. 7, 2017), ECF No. 6-2 at 1274–

26   76.[3]  This gave rise to a rebuttable presumption that Plaintiff was not a U.S. citizen.  *See Mondaca-Vega*

27   *v. Lynch*, 808 F.3d 413, 419 (9th Cir. 2015) (en banc).  Plaintiff disputes whether this Mexican birth

28   [3] As discussed below, the Court may consider this document (and other documents cited by the
     Complaint and prior court filings) on both a Rule 12(b)(1) and a Rule 12(b)(6) motion to dismiss.

DEF. UNITED STATES' MOT. TO DISMISS
4:23-cv-04292-DMR                                    3

1  registration is reliable as proof of Mexican birth, alleging that it was not filed by his parents but by his

2  grandmother, was created more than three months after his birth, and bore a purported signature from his

3  mother that was not her actual signature.  Compl. ¶¶ 52–54.  But Plaintiff does not allege that this

4  Mexican birth registration is not *authentic*, nor does he deny that someone in his family (even if not his

5  mother) registered his birth as occurring in Mexico or deny that the official records of the Government

6  of Mexico state that he was born in Mexico.  *See* Compl.; *cf. Sanchez Brito IV*, 2020 WL 4003824, at *6

7  ("[P]laintiff does not directly contest the authenticity of the birth certificate produced by [ICE].").

8          On April 25, 2015, Officer Grasso arrested Plaintiff for removal proceedings.  Compl. ¶ 59.

9  **II.      The Mandatory-Detention Requirements of the Immigration and Nationality Act ("INA")**

10         Based on Plaintiff's criminal history and his apparent Mexican citizenship, ICE deemed Plaintiff

11 to be subject to the mandatory-detention provisions of the INA, 8 U.S.C. § 1226(c).  *Id.* ¶ 62.

12         Congress enacted § 1226(c) after finding that one of the major causes of the INS's failure to

13 remove deportable criminal noncitizens was that INS had been exercising its discretion to release them.

14 *See Demore v. Kim*, 538 U.S. 510, 519 (2003).  Congress enacted § 1226(c) specifically to strip the INS

15 of this discretion.  *See id.* at 519, 528; *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018) (with the

16 exception of witness-protection provision set forth in § 1226(c)(2), "§ 1226(c) reinforces the conclusion

17 that aliens detained under its authority are not entitled to be released under any circumstances").

18 **III.     Plaintiff's Immigration and Removal Proceedings**

19         On May 4, 2015—i.e., nine days after he was first arrested by ICE—Plaintiff had his first

20 hearing before an IJ. Compl. ¶ 56.  Plaintiff was represented by counsel.  *Id.* ¶ 66.  Plaintiff had

21 numerous additional hearings throughout 2015, 2016, and 2017.  *See* Admin. Record, *Sanchez Brito v.*

22 *Sessions*, No. 17-72066 (9th Cir. filed Aug. 7, 2017), ECF No. 6-2.  In these proceedings, the

23 Government submitted the Mexican birth registration that Officer Grasso had obtained.  *Id.* at 1274–76

24 (IJ ex. 3); *see Sanchez Brito I*, at 4.  The Government further submitted additional official birth-

25 registration documents that it received from the Government of Mexico, which likewise stated that

26 Plaintiff was born in Mexico.  *See* Admin. Record, *Sanchez Brito v. Sessions*, No. 17-72066 (9th Cir.

27 filed Aug. 7, 2017), ECF No. 6-2 at 1261–67, 1269–73 (IJ exs. 4, 6–7); *Sanchez Brito I*, at 4.

28         On January 30, 2017, the IJ issued an oral decision (that was later reduced to writing).  *See*

Compl. ¶ 75; *Sanchez Brito I*.  The IJ acknowledged that Plaintiff's mother asserted that Plaintiff was born in the United States.  *Sanchez Brito I*, at 2.  The IJ found that she failed to provide corroboration of her statements, however, and instead, during her cross-examination, stopped testifying and subsequently pleaded the Fifth Amendment.  *Id.* at 3.  The IJ found that she was not credible.  *Id.* at 3–4.  The IJ agreed with Plaintiff that the Mexican birth registration originally obtained by Officer Grasso was not signed by his mother and that someone else had affixed her signature thereon.  *Id.* at 4.  But the IJ found that the questions about the signature on the Mexican birth registration did not rebut the presumption of Plaintiff's foreign birth.  *Id.*  The IJ further found that the additional official documents obtained from the Mexican Government also stated and further confirmed that Plaintiff was born in Mexico.  *Id.*  The IJ thus held that clear and convincing evidence established that Plaintiff "is in fact not a citizen of the United States and is a citizen of Mexico."  *Id.*  The IJ also held that one of Plaintiff's prior convictions, for violation of California Vehicle Code § 10851, was a conviction for an aggravated felony.  *Id.* at 5–7.

Plaintiff appealed to the BIA.  *See* Compl. ¶ 75.  On July 14, 2017, the BIA affirmed the IJ.  *See id.*; *Sanchez Brito II*.  The BIA held that the questions Plaintiff raised about the signature purporting to be his mother's on his initial Mexican birth registration did not sufficiently rebut the otherwise clear and convincing evidence of foreign birth established by the numerous official documents obtained from the Government of Mexico that stated that Plaintiff was born in Mexico.  *Sanchez Brito II*, at 2.  The BIA held that neither Plaintiff nor his mother provided evidence to corroborate their claim that Plaintiff was born in the United States, such as a genuine birth certificate, declarations from any individuals with knowledge of Plaintiff's birth, or any records showing Plaintiff's presence in the United States in 1990.  *Id.*  The BIA affirmed that Plaintiff's alienage had been established by clear and convincing evidence.  *Id.* at 1–3.  The BIA also affirmed that Plaintiff's conviction for violation of California Vehicle Code § 10851 was a conviction for an aggravated felony (albeit for different reasons than the IJ).  *Id.* at 3–5.

Pursuant to 8 C.F.R. § 1003.1(g), the BIA's decision that Plaintiff was not a U.S. citizen and had been convicted of an aggravated felony was legally binding on all officers and employees of ICE.  8 C.F.R. § 1003.1(g) ("Except as Board decisions may be modified or overruled by the Board or the Attorney General, decisions of the Board . . . are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States.").  Noncitizens

1   convicted of aggravated felonies are subject to mandatory detention, which means that ICE is legally

2   barred by Congressional statute from releasing them.  8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(A)(iii).

3   **IV.   Plaintiff's Petition for Review Before the Ninth Circuit**

4          Plaintiff petitioned for review of the BIA's decision before the Ninth Circuit.  Compl. ¶ 75.  In

5   December 2017, the Ninth Circuit transferred the proceedings to the Eastern District of California for a

6   de novo review of Plaintiff's citizenship claim.  *Id.* ¶ 76; *Sanchez Brito III*.  Notably, the Ninth Circuit's

7   order did not reverse or vacate the BIA's decision, which thus remained in force and effect.

8   **V.   Plaintiff's Proceedings Before the District Court in the Eastern District of California**

9          Following transfer to the Eastern District, the Government moved for summary judgment.  *See*

10  Compl. ¶ 108.  The court held that "clear, unequivocal and convincing evidence" established a

11  rebuttable presumption that Plaintiff was born in Mexico and was not a U.S. citizen.  *Sanchez Brito IV*,

12  2020 WL 4003824, at *4–7.  The court found it undisputed that the numerous official documents

13  obtained from the Government of Mexico were authentic and stated that Plaintiff was born in Mexico.

14  *Id.* at *5–7.  The court further found it undisputed that Plaintiff had no documentation supporting his

15  claim that he was born in the United States or that his mother was in the United States at the time of his

16  birth.  *Id.* at *5.  The court further held that the questions that Plaintiff raised about his Mexican birth

17  registration—that the signature purporting to be his mother's was in fact not her signature and that it was

18  registered three months after his birth—did not undermine its authenticity.  *Id.* at *6–7.  Accordingly,

19  Plaintiff's Mexican birth certificate constituted "clear, unequivocal and convincing evidence" of

20  Mexican birth and "creates a rebuttable presumption of plaintiff's alienage."  *Id.* at *7.

21         The court denied summary judgment, however, holding that the question of whether Plaintiff's

22  mother's uncorroborated declaration that Plaintiff was born in the United States was sufficient to satisfy

23  Plaintiff's burden of proof, could not be resolved on summary judgment.  *Id.* at *8.

24         A bench trial followed on Plaintiff's citizenship claim.  Compl. ¶ 109.  On December 10, 2021,

25  the court issued its decision.  *Id.* ¶ 110; *Sanchez Brito V*, 2021 WL 5867473.  The court first reaffirmed

26  that "[i]t is undisputed here" that Plaintiff's Mexican birth registration constituted "clear, unequivocal,

27  and convincing evidence" establishing a rebuttable presumption that Plaintiff was not a U.S. citizen.

28  *Sanchez Brito V*, 2021 WL 5867473, at *2.  The court held that the burden thus shifted to Plaintiff to

prove that he was a U.S. citizen.  *Id.*  The court found that there was "no documentary proof directly supporting [Plaintiff's mother's] testimony about [Plaintiff]'s birth in California[.]"  *Id.* at *3.  The court found, however, that Plaintiff's mother's testimony was generally credible, *id.*, albeit with an inconsistency regarding when she came to the United States, *id.* at *5.  The court held that Plaintiff's mother's testimony, supported by an expert Plaintiff offered who testified about Mexican birth-registration practices (but who had never reviewed the Mexican birth certificate in this case and had no specific knowledge of birth-registration practices in the Mexican municipality where Plaintiff's birth was registered), satisfied Plaintiff's burden by a preponderance of the evidence.  *Id.* at *3–8.  The burden thus shifted to the Government to prove that Plaintiff was not a U.S. citizen by a clear and convincing evidence.  *Id.* at *9.  Concluding that the Government did not meet this heightened standard, the court ruled that "[o]n the record developed before this court, [Plaintiff] is a U.S. citizen."  *Id.*[4]

Upon the court's issuing its ruling, ICE released Plaintiff that same day.  Compl. ¶ 112.

**VI.    Plaintiff's Immigration Detention**

Prior to his release, Plaintiff was detained first at the Yuba County Jail ("YCJ") and then at the Mesa Verde ICE Processing Center ("Mesa Verde").  *Id.* ¶¶ 61, 84.

ICE does not operate either YCJ or Mesa Verde.  *See id.* ¶ 19.  Rather, both YCJ and Mesa Verde are run by third parties—non-party Yuba County and co-defendant The GEO Group ("GEO"), respectively—pursuant to contracts with ICE.  *Id.* ¶¶ 19, 61, 84.  These contractors—not ICE—operate these facilities and are responsible for the provision of programming, discipline, protection, transportation, and medical care for the individuals detained at the facilities.  *Id.* ¶ 19.

**A.    Yuba County Jail**

In April 2015, Plaintiff was placed at YCJ, a contract facility run by Yuba County.  *Id.* ¶ 61.

Upon Plaintiff's arrival, medical staff at YCJ—who were non-federal contractors, not ICE employees—conducted an initial assessment of Plaintiff and noted in his file that he had been diagnosed with schizophrenia.  *Id.* ¶ 63.  In May 2015, ICE referred Plaintiff to a psychiatrist, who ordered that

---

[4] With respect to Officer Grasso, the court found that he was credible but that his findings that Plaintiff was born in Mexico were insufficient to satisfy the heightened clear-and-convincing standard.  *Sanchez Brito V*, 2021 WL 5867473, at *9.  Plaintiff claims that the court called Officer Grasso's investigation "incomplete."  Compl. ¶ 111 (citing *Sanchez Brito V*, 2021 WL 5867473, at *8–9).  As Plaintiff acknowledges, the court subsequently superseded its decision and issued an amended order that removed all comments critical of Officer Grasso.  *Sanchez Brito VI*, 2022 WL 4237801; *accord* Compl. ¶ 111 n.7.

1    Plaintiff be treated with a medication called Invega.  *Id.* ¶ 64.

2          Plaintiff alleges that by the fall of 2015, YCJ medical staff began treating him with medications

3    called Seroquel and Risperidone, and not Invega, allegedly because Invega was not "covered" by ICE.

4    *Id.* ¶ 68.  Plaintiff does not allege that any ICE employee treated him with Seroquel or Risperidone.  *Cf.*

5    *id.* ¶ 63 (YCJ medical staff are contractors).  Plaintiff further alleges that he refused to take his

6    Risperidone and instead was caught with contraband, including marijuana and Suboxone.  *Id.* ¶ 77.

7          Plaintiff alleges that the majority of his detention at YCJ was spent in "administrative

8    segregation" and that he spent "significant durations of time" in solitary confinement.  *Id.* ¶ 78.  Plaintiff

9    does not allege that any ICE employee placed him in segregation or solitary confinement, however.

10         **B.      Mesa Verde**

11         In July 2018, Plaintiff was transferred to Mesa Verde, a contract facility run by GEO.  *Id.* ¶ 84.

12         Plaintiff groups "Defendants" (i.e., the United States and GEO) together and makes various

13   allegations against "Defendants" collectively.  But Plaintiff does not make allegations regarding ICE

14   employees regarding his time at Mesa Verde.  And Plaintiff alleges only the following about ICE even

15   as an institution: that (1) ICE conducted a review of his solitary confinement, *id.* ¶ 100, (2) ICE opposed

16   a bail application that he filed in another lawsuit, *Zepeda Rivas v. Jennings*, No. 3:20-cv-02371-VC

17   (N.D. Cal.), *id.* ¶ 102,[5] and (3) in the spring of 2021, Plaintiff was transferred to another facility for

18   inpatient mental health care and in July 2021, ICE returned him to Mesa Verde, *id.* ¶¶ 105–06.

19   **VII.   Plaintiff's Release and Subsequent Events**

20         ICE promptly released Plaintiff on December 10, 2021, the same day upon the district court in

21   the Eastern District of California issuing its ruling that Plaintiff was a U.S. citizen.  *Id.* ¶ 112.

22         Plaintiff alleges that "ICE officers released [him] directly to the street in a highly confused and

23   deteriorated mental state, with only four days' worth of medication."  *Id.* ¶ 113.  Plaintiff does not allege

24   that he was released unattended.  *See id.*  Rather, Plaintiff was released to his attorney and qualified

25   representative, Antonia Maria Stainbrook.  Gilbert Decl. ¶¶ 4, 12 & Exs. 1, 5.[6]

26   _____

     [5] Plaintiff complains that ICE did not mention his citizenship claim in response to his *Zepeda Rivas* bail
27   application.  Compl. ¶ 102.  But that case was a class action that specifically "[wa]s not about whether
     any particular person should be released; it [was]s about the conditions of confinement at the facilities"
     in light of COVID-19 only.  *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 39 (N.D. Cal. 2020).

28   [6] Additionally, while Plaintiff claims that he received only four days' worth of medication, ICE's

1    The Complaint suggests that Plaintiff lived at home following his release, and disappeared from
2    home four months later in April 2022.  *See* Compl. ¶ 116.  Plaintiff's brother found him two weeks later
3    in a homeless encampment.  *Id.*  Five months after Plaintiff's release, on May 9, 2022, Plaintiff's mother
4    felt that Plaintiff was a danger to himself and requested that he be civilly committed to a hospital.  *Id.*
5    ¶ 117.  Plaintiff left the hospital, however.  *Id.*  On May 11, a Solano County detective called Plaintiff's
6    mother and stated that Plaintiff's body had been found in an abandoned building.  *Id.* ¶ 118.  The
7    medical examiner determined Plaintiff died of a drug overdose.  *Id.*

8                                           **LEGAL STANDARD**

9    **I.     Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

10   "Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*,
11   511 U.S. 375, 377 (1994).  Where jurisdiction is lacking, a defendant may move to dismiss under
12   Federal Rule of Civil Procedure 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or
13   factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the
14   challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke
15   federal jurisdiction."  *Id.*  A court resolves a facial attack as it would a motion to dismiss under Rule
16   12(b)(6), i.e., assuming the allegations in the complaint are true and drawing all reasonable inferences in
17   the plaintiff's favor and determining whether the allegations are sufficient to invoke jurisdiction.  *Hyatt
18   v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017).  In a facial attack, a court can also look beyond the
19   complaint to consider documents that are proper subjects of judicial notice on a Rule 12(b)(6) motion.
20   *Id.*; *see, e.g.*, *Poorsina v. Zhang*, No. 20-cv-09119-JCS, 2021 WL 1222520, at *5 (N.D. Cal. Mar. 31,
21   2021).  This includes documents cited and incorporated by reference in the Complaint and prior court
22   filings.  *See, e.g.*, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Reyn's Pasta Bella, LLC v.
23   Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).[7]  In a factual attack, a court may look beyond the
24   complaint without "presum[ing] the truthfulness of the plaintiff's allegations."  *White v. Lee*, 227 F.3d
25   1214, 1242 (9th Cir. 2000).  In a factual attack, the Court can hear evidence and resolve factual disputes,

26   records reflect that he received a greater supply of medication.  Gilbert Decl. Ex. 2.  As discussed below,
     the Court may consider these facts on a Rule 12(b)(1) motion to dismiss.

27
28   [7] As relevant here, the Court may take judicial notice of Plaintiff's Mexican birth registrations and
     certificates as documents incorporated by reference in the Complaint and as prior court records, and of
     the ICE directives that Plaintiff cites as documents incorporated by reference in the Complaint.

1   if necessary, without treating the motion as one for summary judgment.  *Robinson v. United States*, 586

2   F.3d 683, 685 (9th Cir. 2009).  In either a facial or factual attack, the burden of establishing that

3   jurisdiction exists lies on the plaintiff, as the party asserting jurisdiction.  *Kokkonen*, 511 U.S. at 377.

4   **II.     Motion to Dismiss for Failure to State a Claim**

5           "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief

6   that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Where a complaint fails to do

7   so, a defendant may move to dismiss under Federal Rule of Civil Procedure 12(b)(6).  To survive such a

8   motion, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference

9   that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a

10  cause of action, supported by mere conclusory statements, do not suffice," and "an unadorned, the-

11  defendant-unlawfully-harmed-me accusation" or "labels and conclusions or a formulaic recitation of the

12  elements of a cause of action will not do."  *Id.*  In deciding a Rule 12(b)(6) motion, a court assumes the

13  allegations in the complaint are true and additionally may consider documents incorporated by reference

14  in the Complaint and prior court filings.  *Ritchie*, 342 F.3d at 908; *Reyn's Pasta*, 442 F.3d at 746 n.6.

15                                        **ARGUMENT**

16  **I.     The Court Lacks Jurisdiction Over Plaintiff's Complaint Against the United States,
    Because the United States Has Sovereign Immunity From All of Plaintiff's Claims.**

17      **A.     The United States has absolute sovereign immunity except where expressly waived.**

18          "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from

19  suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  "Sovereign immunity is jurisdictional in nature."  *Id.*

20  "[T]he terms of the United States' consent to be sued in any court define that court's jurisdiction to

21  entertain the suit."  *Id.* (brackets omitted).  "It is axiomatic that the United States may not be sued

22  without its consent and that the existence of consent is a prerequisite for jurisdiction."  *Id.*

23          The Government may waive its sovereign immunity.  But "[a] waiver of the Federal

24  Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be

25  implied."  *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).  "Moreover, a waiver of the

26  Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the

27  sovereign."  *Id.*  "Limitations and conditions upon which the Government consents to be sued must be

28

1   strictly observed and exceptions thereto are not to be implied." *Id.*

2      The FTCA provides a limited waiver of the Government's sovereign immunity.  28 U.S.C.

3   § 1346(b); *see Meyer*, 510 U.S. at 475–77.  Specifically, the FTCA allows for claims that are:

4        [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property,
         or personal injury or death [4] caused by the negligent or wrongful act or omission of any
5        employee of the Government [5] while acting within the scope of his office or employment,
         [6] under circumstances where the United States, if a private person, would be liable to the
6        claimant in accordance with the law of the place where the act or omission occurred.

7   28 U.S.C. § 1346(b); *see Meyer*, 510 U.S. at 477.  The FTCA's waiver of sovereign immunity does not

8   extend to claims that do not satisfy these six elements.  Among other things:

9      The FTCA waives sovereign immunity only with respect to "act[s] or omissions of any employee

10  of the Government."  The FTCA does not waive immunity with respect to acts or omissions of

11  contractors.  28 U.S.C. § 2671 (defining "employee of the government" for purposes of § 1346(b) and

12  expressly excluding "any contractor with the United States").  Additionally, as used in the FTCA,

13  "employee of the Government" refers only to natural persons.  *Adams v. United States*, 420 F.3d 1049,

14  1053–55 (9th Cir. 2005).  The FTCA thus does not waive immunity with respect to acts or omissions of

15  a non-natural person, such as a corporation, or the United States or a U.S. agency writ large apart from

16  the acts or omissions of a natural-person employee.  *Id.*; *accord, e.g.*, *J.P. v. United States*, __ F. Supp.

17  3d __, No. CV-22-00683-PHX-MTL, 2023 WL 4237331, at *4–5 (D. Ariz. June 28, 2023) ("[T]he

18  FTCA does not apply to generalized theories of negligence asserted against the staff and employees of

19  federal institutions as a whole.") (quotation marks omitted) (citing *Adams*, 420 F.3d at 1053).

20     The FTCA waives sovereign immunity only "under circumstances where the United States, if a

21  private person, would be liable to the claimant in accordance with the law of the place where the act or

22  omission occurred" (here, California).  The FTCA does not waive immunity in circumstances where a

23  private person would not be liable under state law.  Among other things, the FTCA does not waive

24  immunity for "action of the type that private persons could not engage in and hence could not be liable

25  for under local law." *Sky Ad, Inc. v. McClure*, 951 F.2d 1146, 1147 n.2 (9th Cir. 1991); *see, e.g.*, *Meyer*,

26  510 U.S. at 477–78 (FTCA does not waive immunity for constitutional torts, because constitutional

27  rights cannot impose liability on private persons under state law).  Additionally, the FTCA does not

28  waive immunity for an alleged failure to follow federal policies, because a private person would not be

liable under state law in those circumstances.  *See, e.g.*, *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1024–26 (9th Cir. 2001) ("The breach of a duty created by federal law is not, by itself, actionable under the FTCA. . . .  [T]he plaintiffs must show that the conduct of the government violates some state law.").

Additionally, even if a claim satisfies the elements in § 1346(b), the United States retains sovereign immunity with respect to "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid" ("Due Care Exception").  28 U.S.C. § 2680(a); *see, e.g.*, *McQuade v. United States*, 839 F.2d 640, 642–43 (9th Cir. 1988) (affirming dismissal of FTCA claim at pleading stage for lack of jurisdiction where acts of Government employees were pursuant to regulations and court order).

The United States further retains sovereign immunity with respect to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused" ("Discretionary Function Exception" or "DFE").  28 U.S.C. § 2680(a); *see, e.g.*, *Lam v. United States*, 979 F.3d 665, 673 (9th Cir. 2020) (affirming dismissal of FTCA claim at pleading stage for lack of jurisdiction where alleged acts of Government employee were discretionary functions).

The United States also expressly retains sovereign immunity with respect to "[a]ny claim arising out of . . . false imprisonment" ("Intentional Torts Exception").  28 U.S.C. § 2680(h).  This immunity extends to all claims arising out of an alleged false imprisonment, even if couched as negligence or some other claim.  *Snow-Erlin v. United States*, 470 F.3d 804, 808 (9th Cir. 2006).  The FTCA waives this immunity with respect to acts or omissions of "investigative or law enforcement officers," but it retains immunity with respect to acts or omissions of non-law-enforcement officers.  28 U.S.C. § 2680(h).

**B.**     **The United States has immunity from Plaintiff's false-imprisonment claim.**

**1.**     **A law-enforcement officer would not have liability under state law for arresting Plaintiff, and thus the United States has no liability either.**

**(i)**     **There is no liability because there was reasonable cause for arrest.**

Under California law, false arrest and false imprisonment are the same tort.  *Asgari v. City of L.A.*, 15 Cal. 4th 744, 752 n.3 (1997).  The United States can be held liable under the FTCA for false arrest or false imprisonment only if a state law-enforcement officer would be liable in the same

1   circumstances.  *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) (applying California law regarding

2   false arrest for law-enforcement officers, as opposed to private-citizen arrests, because "law enforcement

3   obligations make the law of citizen arrests an inappropriate instrument for determining FTCA liability")

4   (brackets omitted); *Cervantes v. United States*, 330 F.3d 1186, 1188 (9th Cir. 2003) (same).

5       Under California law, a law-enforcement officer has no liability where the officer "at the time of

6   the arrest, had reasonable cause to believe the arrest was lawful."  Cal. Penal Code § 847(b)(1); *see*

7   *Galvin*, 374 F.3d at 758 (applying § 847(b)(1) to FTCA claim); *Cervantes*, 330 F.3d at 1188 (same).

8   "Reasonable cause" is synonymous with "probable cause."  *Carroll v. State*, 217 Cal. App. 3d 134, 141

9   (1990); *see, e.g.*, *Hamilton v. City of San Diego*, 217 Cal. App. 3d 838, 845 (1990).  "Probable cause for

10   an arrest is shown if a man of ordinary caution or prudence would be led to believe and conscientiously

11   entertain a strong suspicion of the guilt of the accused.  Probable cause may exist even though there may

12   be some room for doubt."  *Hamilton*, 217 Cal. App. 3d at 844 (citations omitted). "Where the facts are

13   not in conflict, the issue of probable cause is a question of law."  *Id.*

14       "The existence of probable cause depends upon facts known by the arresting officer at the time

15   of the arrest."  *Id.*  Probable cause is "an objective standard."  *O'Toole v. Super. Ct.*, 140 Cal. App. 4th

16   488, 511 (2006).  "[T]here can be no false arrest if the officers had at least one reasonable ground to

17   arrest an individual, even if the officers' additional reasons were not valid."  *Id.* at 512.  That a plaintiff

18   might be able to make a legal argument that his arrest violated his rights, or that a court might ultimately

19   agree, does not vitiate probable cause, as "[courts] cannot conclude that a reasonable police officer

20   would have, or should have, predicted that a court would reach this conclusion."  *Id.* at 513.

21       Here, Plaintiff alleges Officer Grasso had a Mexican birth registration stating that Plaintiff was

22   born in Mexico.  Compl. ¶ 51.  Officer Grasso thus had probable cause to arrest Plaintiff pending

23   removal proceedings.  *See, e.g.*, *Arteaga-Ruiz v. United States*, 164 F. Supp. 3d 1198, 1203 (D. Idaho

24   2016) (*Arteaga-Ruiz I*) (dismissing FTCA false-imprisonment, negligence, and emotional-distress

25   claims by U.S. citizen alleging that ICE wrongfully detained him and noting that "[b]y statute, an ICE

26   agent has the 'power' to arrest someone in the United States if the agent has 'reason to believe' that the

27   person is in the United States in violation of any immigration laws or regulations") (quoting 8 U.S.C.

28   § 1357(a)(2)), *aff'd*, 705 F. App'x 597 (9th Cir. 2017) (*Arteaga-Ruiz II*).  This vitiates Plaintiff's claim.

**(ii)    Plaintiff's argument based on Officer Grasso's purported failure to fully investigate Plaintiff's citizenship claim fails, because there is no duty to investigate once probable cause has been established.**

Plaintiff's allegation that Officer Grasso failed to sufficiently investigate his citizenship claim before arresting him, Compl. ¶¶ 59–60, does not create a reasonable inference that Officer Grasso arrested Plaintiff without legal privilege.  Under California law, there is "no duty of further investigation once probable cause has been established."  *Hamilton*, 217 Cal. App. 3d at 846.

**(iii)   Plaintiff's argument based on Officer Grasso's purported failure to comply with ICE Directive 16001.1 fails, because a private person would not be liable for failing to comply with ICE directives.**

Plaintiff's allegation that Officer Grasso failed to comply with an internal ICE directive, Directive 16001.1,[8] in investigating his citizenship claim, Compl. ¶ 60, similarly does not provide a basis for liability.  A private person could not be held liable under state law for a failure to follow ICE directives, and thus the United States retains immunity with respect to claims based on such alleged failures.  The Second Circuit addressed precisely this scenario in *Watson*, 865 F.3d 123, where a U.S. citizen brought FTCA false-imprisonment and negligence claims, alleging that ICE had wrongfully detained him.  The Second Circuit held that claims based on "ICE's failure to follow its own directives regarding how to pursue an investigation into a subject's citizenship" necessarily fail, because a private person would have no liability under such circumstances.  *Id.* at 134–35; *accord, e.g.*, *Delta Sav. Bank*, 265 F.3d at 1024–26 ("The breach of a duty created by federal law is not, by itself, actionable under the FTCA."); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well.").  Plaintiff's claim likewise fails here.

**2.    The Intentional Torts Exception bars Plaintiff's claim, because it bars any and all false-imprisonment claims unless based on the acts or omissions of law-enforcement officers, and (other than Officer Grasso's initial arrest) Plaintiff does not plead any acts or omissions by law-enforcement officers.**

Plaintiff next alleges that some unidentified "[a]gents of the United States" violated ICE Directive 16001.1 or 16001.2,[9] and that this gives rise to a false-imprisonment claim.  Compl. ¶¶ 133–

---

[8] Available at https://www.ice.gov/doclib/foia/prosecutorial-discretion/reporting-investigating-us-citizen-claims.pdf (last visited Oct. 24, 2023).

[9] Available at https://www.ice.gov/sites/default/files/documents/Document/2017/16001.2.pdf (last visited Oct. 24, 2023).

1   34.  This argument fails as well.  First, as discussed above, Plaintiff cannot base an FTCA claim on an

2   alleged failure to follow ICE directives.  Second, under the Intentional Torts Exception, the Government

3   retains absolute immunity from false-imprisonment claims, unless the claim is based on the acts or

4   omissions of law-enforcement officers.  28 U.S.C. § 2680(h); *see, e.g.*, *Arnsberg v. United States*, 757

5   F.2d 971, 977–78 (9th Cir. 1985).  It is Plaintiff's burden to establish that the Government employees on

6   whose acts or omissions he bases his claim are law-enforcement officers.  *See, e.g.*, *Gasho v. United*

7   *States*, 39 F.3d 1420, 1433 (9th Cir. 1994) ("the plaintiff [must] demonstrate[] that an 'investigative or

8   law enforcement officer' committed the intentional tort"); *Martin v. United States*, No. 15-CV-278 JLS

9   (DHB), 2016 WL 4542289, at *4–6 (S.D. Cal. Aug. 31, 2016) (same).  Plaintiff pleads no facts here to

10  support a claim that the unspecified "[a]gents of the United States" of whom he complains are law-

11  enforcement officers.  For example, Plaintiff refers to "ICE counsel" and a privileged ICE memo that he

12  claims did not comply with ICE directives.  Compl. ¶¶ 72–73.  But ICE counsel are not law-enforcement

13  officers.  *See, e.g.*, *Lanuza v. United States*, No. 2:14-cv-01641-BJR, 2019 WL 3571053, at *3–4 (W.D.

14  Wash. Aug. 6, 2019).  The United States thus retains immunity from Plaintiff's claim.

15          **3.**     **The Discretionary Function Exception bars Plaintiff's claim, because how to
16                  investigate a citizenship claim by an individual whom official documents
                 state was born in Mexico and for whom no documentation of U.S. citizenship
17                 exists, is a discretionary function.**

18          "If the government can show that the alleged injury arose out of the [Government] employee's

19  discretionary acts, then the district court must dismiss plaintiff's case." *Lam*, 979 F.3d at 672.  "The

20  DFE is intended to prevent judicial second-guessing of legislative and administrative decisions grounded

21  in social, economic, and political policy through the medium of an action in tort." *Id.* at 673 (quotation

22  marks omitted).  "So, if the policies allow an employee to make independent policy judgments, then the

23  DFE defeats plaintiff's claim." *Id.*  "[W]hether the discretion involved was abused makes no difference;

24  the government will still prevail." *Id.*  "Thus, courts should put the negligence issue aside on a DFE-

25  based motion to dismiss and focus its inquiry on whether the employee's acts were discretionary." *Id.*

26          "The Supreme Court has created a two-part test, known as the *Berkovitz*/*Gaubert* test, to

27  determine the types of discretionary acts covered by the DFE." *Id.*  "If . . . the policies are not

28  mandatory but rather directly or implicitly give discretion to the employee, the DFE defense survives

1   this first step." *Id.* at 674.  "Second, the court must decide if that judgment is of the kind that the

2   discretionary function exception was designed to shield." *Id.* at 673–74 (quotation marks omitted).

3   "When established governmental policy, as expressed or implied by statute, regulation, or agency

4   guidelines, allows a government agent to exercise discretion, it must be *presumed* that the agent's acts

5   are grounded in policy when exercising that discretion." *Id.* at 674 (emphasis in original).  "For a

6   complaint to survive a motion to dismiss, it must allege facts which would support a finding that the

7   challenged actions are not the kind of conduct that can be said to be grounded in the policy of the

8   regulatory regime." *Id.*  "The focus of the inquiry is not on the agent's subjective intent in exercising

9   the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether

10  they are *susceptible* to policy analysis." *Id.* (emphasis in original).  "[V]ery importantly, the district

11  court must not focus on or even consider the employee's actual thinking about what to do or not do, or

12  the status of the employee, or the 'routine or frequent nature' of the discretionary act." *Id.*  If the

13  employee's actions are *susceptible* to policy analysis, the complaint must be dismissed.  *Id.* at 674–65.

14      Here, the first prong of the DFE test is satisfied, because "[t]he decision how to investigate, who

15  to investigate, and how to present evidence to the proper authorities are classic examples of

16  discretionary conduct." *Sabow v. United States*, 93 F.3d 1445, 1452 (9th Cir. 1996) (brackets omitted).

17  This includes decisions about how ICE should investigate an individual's claim of U.S. citizenship.  *See,*

18  *e.g.*, *Arteaga-Ruiz II*, 705 F. App'x at 598; *Blanco Ayala*, 982 F.3d at 215–17 (holding first DFE prong

19  satisfied in U.S. citizen's FTCA claim that ICE wrongfully detained him and failed to investigate his

20  citizenship, because "[i]n deciding whom to investigate, detain, and then remove, DHS officers must

21  make all the kinds of classic judgment calls the discretionary function exception was meant to exempt

22  from tort liability").  The second prong of the DFE test is also satisfied, because how to conduct an

23  investigation "involves policy judgments at the core of the executive branch." *Nieves Martinez v.*

24  *United States*, 997 F.3d 867, 881 (9th Cir. 2021); *see, e.g.*, *Arteaga-Ruiz II*, 705 F. App'x at 598 (how to

25  investigate immigration detainee's claim of U.S. citizenship is "susceptible to a policy analysis");

26  *Blanco Ayala*, 982 F.3d 209, 217–18 (same, because "[immigration] officials must allocate limited

27  agency resources so as to prioritize the most important cases" and "must confront issues which have the

28  natural tendency to affect diplomacy, foreign policy, and the security of the nation") (quotation marks

1  omitted); *Tsolmon v. United States*, 841 F.3d 378, 383 (5th Cir. 2016) (generally same).

2      Plaintiff's reliance on ICE Directives 16001.1 and 16001.2 does not save his claim.  Neither

3  Directive sets forth a mandatory requirement.  Directive 16001.1 states that where there is some

4  "probative evidence" that an individual is a U.S. citizen, ICE officers should consult with ICE counsel

5  and that, if the evidence of U.S. citizenship outweighs evidence to the contrary, the individual should not

6  be taken into custody.  Directive 16001.1 at 1.  But the Directive does not define what constitutes

7  probative evidence and does not set a mandatory standard for determining when probative evidence of

8  U.S. citizenship outweighs evidence to the contrary.  Directive 16001.2 similarly does not set a

9  mandatory standard: it states that ICE should release individuals where there is "strong/facially credible"

10  or "probative" evidence of U.S. citizenship, Directive 16001.2, § 5.1(4), but it does not define what

11  constitutes credible or probative evidence.  As the Ninth Circuit has held, where an agency's guidelines

12  state that an agency must take certain actions "[w]hen credible information is received" but "provide no

13  criteria for determining what is 'credible information,'" the DFE applies and the Government retains

14  immunity.  *Gonzalez v. United States*, 814 F.3d 1022, 1029 (9th Cir. 2016); *see also id.* at 1032–33 ("In

15  investigations, . . . the executive must consider the reliability of the information, the relative importance

16  of the [issue], and the agency's mission and resources. . . .  These considerations surely implicate social,

17  economic, and political judgments.").  The DFE applies here and bars Plaintiff's claim.

### 4.    The Due Care Exception bars Plaintiff's claim, because ICE was statutorily mandated by federal law to detain Plaintiff.

18

19

20      Additionally, the Due Care Exception bars Plaintiff's claim.  The IJ issued an order finding that

21  Plaintiff was a noncitizen and had committed an aggravated felony, and the BIA issued an order

22  affirming the same.  ICE was bound by federal law to adhere to these orders and findings unless and

23  until they were overruled.  8 C.F.R. § 1003.1(g).  And ICE likewise is bound by federal law to detain

24  noncitizens who had committed aggravated felonies and not to release them "under any circumstances."

25  *Jennings*, 138 S. Ct. at 836 (citing 8 U.S.C. § 1226(c)).  Plaintiff may not base an FTCA claim on

26  detention that resulted from the execution of federal statutes and regulations.  28 U.S.C. § 2680(a).

27      The Ninth Circuit addressed a similar situation in *McQuade*, 839 F.2d 640.  The plaintiff there

28  was arrested and confined for nearly three years pursuant to a district-court order holding him in

1   contempt.  *Id.* at 642.  The Ninth Circuit held that the Due Care Exception barred any FTCA claim

2   because the detaining Government employees—the U.S. Marshal and the Bureau of Prisons—were

3   legally bound by federal regulations to detain the plaintiff until the district court ordered his release.  *Id.*

4   The plaintiff argued that the underlying statute did not actually authorize the district court to order him

5   detained for more than 18 months.  *Id.*  The Ninth Circuit rejected this argument and held that the

6   plaintiff's FTCA claim still was barred, because in detaining him, the Marshal and the Bureau were

7   following federal regulations to obey the court's order, even if the court order was legally erroneous, and

8   that "[t]he Marshal and the Bureau owed no duty to [plaintiff] to question the validity of the court

9   order."  *Id.* at 642–43; *accord, e.g.*, *Ferguson v. United States*, 792 F. App'x 494, 495 (9th Cir. 2020)

10  (same).  The same is true here.  Federal regulations and statutes—8 C.F.R. § 1003.1(g) and 8 U.S.C.

11  § 1226(c)—required ICE to comply with the IJ's and BIA's orders and to keep Plaintiff detained.  All

12  claims arising out of Plaintiff's detention thus are barred under 28 U.S.C. § 2680(a).

13                                          *     *     *

14          For the foregoing reasons, the United States retains and has not waived its sovereign immunity

15  from Plaintiff's false-imprisonment claim.  The Court thus lacks jurisdiction over this claim.

16      **C.      The United States has immunity from Plaintiff's negligence claim.**

17          **1.      The United States has immunity from Plaintiff's claim based on ICE policies,
                       because a private person would not have liability under state law for failing
18                     to comply with ICE policies.**

19          Plaintiff first claims that unnamed ICE individuals allegedly violated ICE policies.  Compl.

20  ¶ 142(a).  As discussed in Part I.B.1(iii), a private person would not have liability under state law for a

21  failing to comply with ICE policies, and thus the United States has no liability either.

22          **2.      The United States has immunity from Plaintiff's claim based on ICE's
                       detention of him or ICE's purported failure to release him, regardless of
23                     whether Plaintiff tries to recast this false-imprisonment claim as negligence.**

24          Plaintiff next claims negligence based on his detention or ICE's purported failure to release him.

25  Compl. ¶ 142(b), (d), (h).  These are simply attempts to recast his non-cognizable false-imprisonment

26  claim under another label and fail for all the same reasons.  As discussed in Part I.B.1, a private person

27  would not have liability for Plaintiff's detention or a purported failure to release him.  Further, as

28  discussed in Part I.B.2–4, this claim is also barred by the Intentional Torts Exception (which applies to

all claims arising out of an alleged false imprisonment, even if couched as negligence), the Discretionary

Function Exception, and the Due Care Exception.

**3.      The United States has immunity from Plaintiff's claim based on California juvenile-records laws, because a private person would not have liability under state law for failing to comply with such laws.**

Plaintiff next claims that Officer Grasso violated California Welfare and Institutions Code § 827

and California state-court rules in obtaining his Mexican birth registration.  Compl. ¶ 57, 142(c).  But a

private person would not have liability for this supposed violation.  *See, e.g.*, *Belinda K. v. Cty. of*

*Alameda*, No. 10-CV-05797-LHK, 2012 WL 1535232, at *7 (N.D. Cal. Apr. 30, 2012) (Welfare and

Institutions Code does not create a private right of action).  The United States thus has no liability either.

**4.      The United States has immunity from Plaintiff's claim based on his conditions of confinement.**

**(i)      The United States is not liable for acts or omissions of contractors or non-natural persons, or acts or omissions that have no private-person analogue.**

Plaintiff next claims negligence based on the alleged conditions in which he was confined and a

theory that ICE failed to protect him vis-à-vis these conditions.  Compl. ¶ 142(e)–(g).  This theory fails.

Plaintiff makes a number of allegations against "Defendants" collectively.  But group pleading

against "Defendants"—i.e., the United States as an institution, grouped together with GEO, a separate

corporation—is improper and does not plead a claim.  *See, e.g.*, *Johnson v. Maker Ecosystem Growth*

*Holdings, Inc.*, No. 20-cv-02569-MMC, 2023 WL 2191214, at *5 (N.D. Cal. Feb. 22, 2023) (group

pleading a negligence claim violates Rule 8(a)); *Apodaca v. Jenkins*, No. 2:23-cv-04527-MWF-PD,

2023 WL 4683481, at *5 (N.D. Cal. June 16, 2023) (dismissing negligence claim by federal detainee

against detention-facility officials where plaintiff grouped all defendants together).  It is axiomatic that

Plaintiff cannot bring an FTCA claim based on the acts of contractors or based on the acts of non-natural

persons like Yuba County or GEO.  28 U.S.C. § 2671; *Adams*, 420 F.3d at 1053–55.

The lone allegation that Plaintiff makes against ICE—which he makes only against ICE as an

institution, not against any natural-person ICE employee—is that ICE began to conduct a limited review

of his allegedly extended solitary confinement but failed to comply with the purported requirements of

an internal ICE directive, Directive 11065.1.[10]  Compl. ¶ 100.  Plaintiff misquotes the Directive,

---

[10] Available at https://www.ice.gov/doclib/detention-reform/pdf/segregation_directive.pdf (last visited

however.  Plaintiff claims that it says that, upon review of segregation placements, the ICE Field Office Director "'shall . . . arrange for utilization of such less restrictive options that are appropriate and available.'"  *Id.* ¶ 35 (ellipsis added by Plaintiff).  This is not correct.  What it actually says is that the Director "shall determine *whether* the continued placement in segregation is necessary, excessive, or in violation of applicable detention standards" and "consider as part of his or her evaluation *whether* a less restrictive housing or custodial option is appropriate, and, in coordination with ICE headquarters when necessary, arrange for utilization of such less restrictive options that are appropriate and available." Directive 11065.1, § 5.1(7) (emphasis added).  The Directive does not set a mandatory standard for determining whether placement in segregation is or is not necessary or excessive or whether a less restrictive housing option is or is not appropriate.  Rather, the matter is committed to agency discretion.

This lone allegation does not overcome the United States' immunity.  First, it is made only against ICE as an institution, not a natural-person Government employee, and "the FTCA does not apply to generalized theories of negligence asserted against the staff and employees of federal institutions as a whole."  *See, e.g.*, *J.P.*, __ F. Supp. 3d __, 2023 WL 4237331, at *4–5 (citing *Adams*, 420 F.3d at 1053). Second, placing a detainee should be placed in solitary confinement is inherently a government function, and no FTCA liability exists for government functions "that private persons could not engage in."  *Sky Ad*, 951 F.2d at 1147 n.2; *see, e.g.*, *McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016) (dismissing FTCA claim brought by detainee who claimed Government was negligent in failing to release him, because "[p]rivate persons cannot establish facilities to detain other persons—only the government can, either on its own or through a governmental contractor" and, thus, "there is no private analogue to [plaintiff]'s claim"); *Adeboye v. United States*, No. 19-cv-3089 (DLF), 2020 WL 5231323, at *2 (D.D.C. Sept. 1, 2020) (same).

        **(ii)**    **The Discretionary Function Exception bars Plaintiff's claim, because where to place detainees, or how to supervise contractors who operate detention facilities, are discretionary functions.**

Additionally, in any event, Plaintiff's claim is barred by the Discretionary Function Exception. It is well settled that decisions regarding detainee placements, including placement in administrative segregation, are discretionary functions.  *See, e.g.*, *Alfrey v. United States*, 276 F.3d 557, 564–65 (9th

Cir. 2002) ("it is clear that balancing the need to provide inmate security with the rights of inmates to circulate and socialize within the prison involves considerations based upon public policy" that protect such decisions under DFE) (brackets omitted); *Barone v. United States*, No. 12 Civ. 4103(LAK), 2014 WL 4467780, at *12 (S.D.N.Y. Sept. 10, 2014) (dismissing FTCA claim by prisoner held in solitary confinement for 19 months as barred by DFE because "[d]ecisions about which inmates must be separated from other inmates are susceptible to policy analysis, as they 'involve a balancing of a number of public policy considerations including the inmate safety, the ability of inmates to move about the facility, general concerns for prison security, and the effective use of limited resources'"). And Plaintiff's claim here is one level further removed—he does not allege that ICE placed him in segregation, but instead complains only about ICE's review of the contractors who run the facilities and the contractors' decisions to place him in segregation. *See* Compl. ¶ 100. Decisions about how ICE reviews or supervises contractors are discretionary functions. As such, Plaintiff's claim is barred. *See, e.g.*, *Nurse v. United States*, 226 F.3d 996, 1001–02 (9th Cir. 2000) (decisions how to supervise employees "fall squarely within the discretionary function exception"); *In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 996 (9th Cir. 1987) (same re contractors); *Dickman v. United States*, No. 02cv2371-BEN (WMc), 2006 WL 8455252, at *8 (S.D. Cal. Mar. 8, 2006) ("[A]ny claim that the Government or its employees were negligent in supervising its contractor [GEO]. . . . [is] barred by the discretionary function exception to the FTCA."); *Lima-Marín v. United States*, No. 20-cv-0322-WJM-MEH, 2021 WL 463626, at *4–6 (D. Colo. Feb. 9, 2021) ("ICE's decisions regarding its delegation of inmate care to GEO and oversight of GEO involved public policy objectives, such as balancing detainee safety with facility needs and resource allocation. Accordingly, the discretionary-function exception applies, and the Government is immune from liability under FTCA.").

### 5. The United States has immunity from Plaintiff's claim based on his release from custody, because a private person would not have liability under state law with respect to Plaintiff's release.

Finally, Plaintiff attempts to claim negligence based on his release from custody. Compl. ¶ 142(i). But Plaintiff does not allege that a private person would have liability under state law with respect to his release. Plaintiff does not allege that he was released unattended[11] and, in any event, does

---

[11] Plaintiff stops short of actually pleading that he was released unattended. *See* Compl. ¶¶ 113, 142(i);

1   not allege that a private person would have liability under state law with respect to his release.  Plaintiff

2   claims that ICE released him with four days' worth of medication.  Compl. ¶¶ 113, 142(i).  Even

3   assuming that were true, *but see* Gilbert Decl. Ex. 2 (more than four days' worth of medication was

4   provided), Plaintiff does not allege that a private person would have liability under state law with respect

5   to his medication.  The United States thus retains sovereign immunity from this claim.

6                                         *       *       *

7            For the foregoing reasons, the United States retains and has not waived its sovereign immunity

8   from Plaintiff's negligence claim.  The Court thus lacks jurisdiction over this claim.

9            **D.      The United States has immunity from Plaintiff's IIED claim.**

10           Plaintiff's IIED claim essentially just repeats his negligence claim, aside from adding conclusory

11  allegations that ICE's actions supposedly were willful and deliberate.  *See* Compl. ¶ 149.  As discussed

12  in Part I.C, the United States has sovereign immunity, because a private person would not have liability

13  regarding the issues Plaintiff raises (ICE policies and Plaintiff's detention, placement in segregation

14  during detention, or release), and because Plaintiff's claims are barred by the Intentional Tort Exception,

15  the Discretionary Function Exception, and the Due Care Exception.

16                                        *       *       *

17           For the foregoing reasons, the United States has sovereign immunity from all of Plaintiff's

18  claims.  The Court thus lacks jurisdiction over Plaintiff's Complaint against the United States.

19  **II.     Plaintiff's Claims Are Time-Barred**

20           Additionally, the FTCA requires plaintiffs to file an administrative claim within two years of

21  when their claim accrues; if they do not, their claim is forever time-barred.  *Dyniewicz v. United States*,

22  742 F.2d 484, 485 (9th Cir. 1984) (citing 28 U.S.C. § 2401(b)).  Plaintiff filed his claim on November

23  29, 2022.  Compl. ¶ 16.  Any claim that accrued prior to November 29, 2020, therefore is time-barred.

24           **A.      Plaintiff's false-imprisonment claim is time-barred in its entirety.**

25           Plaintiff's false-imprisonment claim accrued in its entirety prior to November 29, 2020 and thus

26  is time-barred in its entirety.  False imprisonment continues only until legal process is initiated against a

27  *cf. Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526
(1983) ("[i]t is not, however, proper to assume that [a plaintiff] can prove facts that [he] has not

28  alleged").  And even if he had claimed that he was released unattended, the Court may take notice of the
evidence establishing that he actually was released to his attorney.  *See, e.g.*, *Robinson*, 586 F.3d at 685.

plaintiff.  It ends as soon as legal process begins.  *Asgari*, 15 Cal. 4th at 757–58 (rejecting plaintiff's claim that false imprisonment "continued from the date of his arrest to the date of his release from prison" and holding instead that "Plaintiff's false imprisonment ended when he was arraigned in municipal court," after which "plaintiff's confinement was pursuant to lawful process and no longer constituted false imprisonment"); *Wallace v. Kato*, 549 U.S. 384, 389–90 (2007) (same).  Even assuming that a false-imprisonment claim arose in April 2015 when Officer Grasso arrested Plaintiff, the claim ended on May 4, 2015, when legal process before the IJ was initiated against Plaintiff, Compl. ¶ 66, or at the very latest, by January 30, 2017, when the IJ found that Plaintiff was a noncitizen and issued an order of removal, *id.* ¶ 75.  The Second Circuit addressed precisely this scenario in *Watson*, 865 F.3d 123, and held that the U.S.-citizen plaintiff there was held pursuant to legal process as of, at the latest, the date the IJ issued an order of removal (if not earlier).  *Id.* at 131 & n.7.  Because the IJ's order there was issued more than two years before the plaintiff filed his administrative claim, the plaintiff's claim there was time-barred.  *Id.* at 137 & n.8.  Plaintiff's claim is likewise time-barred here.

**B.    Plaintiff's negligence and IIED claims are time-barred with respect to any acts or omissions prior to November 29, 2020.**

Plaintiff's other claims are time-barred with respect to any acts or omissions prior to November 29, 2020.  Among other things, any claims relating to Plaintiff's initial arrest, any investigation into his citizenship claims, any alleged breach of California juvenile-records laws (all in 2015), his detention at YCJ (2015–2018), or his detention at Mesa Verde before November 29, 2020, are time-barred.

**III.    Plaintiff Fails to State a Claim**

Even assuming the United States did not have sovereign immunity and the Court had jurisdiction, Plaintiff's Complaint still must be dismissed, because he fails to state a cognizable claim.

**A.    Plaintiff fails to cognizably plead a false-imprisonment claim.**

As discussed in Part I.B.1(i), the existence of reasonable cause vitiates a false-imprisonment claim.  "Where the facts are not in conflict, the issue of probable cause is a question of law."  *Hamilton*, 217 Cal. App. 3d at 844.  A court may properly dismiss a false-imprisonment claim at the pleading stage.  *See, e.g.*, *Fayer v. Vaughn*, 649 F.3d 1061, 1065 (9th Cir. 2011) (affirming dismissal of claims at pleading stage where "the facts in the amended complaint show that [plaintiff]'s arrest was supported by

probable cause").  Here, the Complaint shows that Officer Grasso had a Mexican birth registration stating that Plaintiff was born in Mexico, Compl. ¶ 51, and thus that Officer Grasso thus had reasonable cause to arrest Plaintiff pending removal proceedings.  Plaintiff's claim thus should be dismissed.

> **B.      Plaintiff fails to cognizably plead a negligence claim.**

Under California law, "[a] plaintiff in a negligence suit must demonstrate a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." *Vasilenko v. Grace Family Church*, 3 Cal. 5th 1077, 1083 (2017) (internal quotation marks omitted). Plaintiff does not cognizably allege any facts that any Government employee breached a legal duty of care that he or she owed to Plaintiff that was the proximate cause of Plaintiff's claimed harm.  Plaintiff alleges as a conclusion that some unidentified "[a]gents of the United States" owed him a general duty to ensure that the conditions of his confinement did not amount to punishment, to protect him against prolonged confinement, and to protect him from harm, Compl. ¶ 142, but these generalized conclusions do not plead facts setting forth duty, breach, causation, and injury by any employee sufficient to state a claim.  *See, e.g.*, *Crosby v. Wellpath, Inc.*, No. 20-cv-08529-MMC, 2021 WL 3053056, at *5 (N.D. Cal. July 20, 2021) (dismissing negligence claim by prisoner who claimed prison staff owed him a duty to monitor his safety but failed to allege facts about how staff's monitoring was inadequate); *Thomas v. Cty. of San Diego*, 20-cv-1979-CAB-MDD, 2021 WL 2715086, at *3 (S.D. Cal. July 1, 2021) (same re prisoner who claimed jail officials acted negligently in refusing to provide him with medical care but did not plead how each such official acted negligently to cause his harm); *McDaniels v. Cty. of San Joaquin*, No. 2:16-2007 WBS DB, 2017 WL 915356, at *2–3 (E.D. Cal. Mar. 7, 2017) (same re schizophrenic prisoner who claimed jail officials failed to treat or monitor her where "[t]he Complaint contains no factual allegations regarding any wrongful conduct or deliberation by an individual actor").

Plaintiff relies on internal ICE directives to try to plead that ICE (as an institution) owed him a duty of due care.  But ICE directives do not establish an enforceable duty of care that can serve as the basis of a state-law negligence claim.  *See, e.g.*, *Minch v. Dep't of Cal. Highway Patrol*, 140 Cal. App. 4th 895, 908 (2006) (holding with respect to negligence claim that police manual that "was not adopted pursuant to the Administrative Procedure Act[ and] does not have the force of law, [] does not establish a duty in tort").  Further, even if any of the directives Plaintiff cites were to establish a duty of care, the

1  directives leave decisions on the issues of which Plaintiff complains—how to investigate a citizenship

2  claim and how to evaluate placements in segregated housing—to officer discretion.  Plaintiff cannot

3  plead a duty or breach where a directive leaves matters to discretion.  *See, e.g.*, *id.* (holding that, even if

4  police manual imposed duty in tort, plaintiff failed to establish breach where manual confers discretion).

5  Because Plaintiff has not pleaded facts setting forth duty, breach, causation, and injury by a

6  natural-person Government employee, Plaintiff's negligence claim should be dismissed.

7  **C.      Plaintiff fails to cognizably plead an IIED claim.**

8  Under California law, the elements of an IIED claim are "(1) extreme and outrageous conduct by

9  the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional

10 distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate

11 causation of the emotional distress by the defendant's outrageous conduct."  *Christensen v. Super. Ct.*,

12 54 Cal. 3d 868, 903 (1991).  "Conduct to be outrageous must be so extreme as to exceed all bounds of

13 that usually tolerated in a civilized community."  *Id.*  Further, "[i]t is not enough that the conduct be

14 intentional and outrageous.  It must be conduct directed at the plaintiff, or occur in the presence of a

15 plaintiff of whom the defendant is aware."  *Id.*  Plaintiff fails to plead these elements.  Other than with

16 respect to his initial arrest by Officer Grasso and ICE counsel's litigation of his removal proceedings—

17 neither of which was so extreme as to exceed all bounds tolerated in a civilized community, and both of

18 which in any event occurred before November 29, 2020 and thus are time-barred—Plaintiff does not

19 allege facts that any Government employee engaged in conduct that was directed at him or occurred in

20 his presence, much less that any such Government employee did so intentionally or recklessly, that any

21 such conduct was so extreme as to exceed all bounds tolerated in a civilized community, or that any

22 such conduct was the actual and proximate cause of severe or extreme emotional distress.

23 **CONCLUSION**

24 For the foregoing reasons, Plaintiff's Complaint should be dismissed.  Further, because the

25 defects in Plaintiff's claims are fundamental and cannot be cured, dismissal should be with prejudice.

26 *See, e.g.*, *Dierkes v. United States*, No. 20-cv-07685-JSW, 2021 WL 4620958, at *3 (N.D. Cal. May 7,

27 2021) (finding in FTCA case that amendment would be futile and dismissing with prejudice); *Barney v.*

28 *United States*, No. 4:20-cv-03791-KAW, 2021 WL 4497920, at *5 (N.D. Cal. Jan. 7, 2021) (same).

1    DATED: October 24, 2023                    Respectfully submitted,

2                                               ISMAIL J. RAMSEY
                                                United States Attorney
3
                                                *s/Shiwon Choe*
4                                               SHIWON CHOE
                                                Assistant United States Attorney
5
                                                Attorneys for Defendant United States of America
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28