1  Bardis Vakili, CA Bar No. 247783
   Law Office of Bardis Vakili, P.C.
2  P.O. Box 234160
   Encinitas, CA 92023
3  Tel: (619) 483-3490
   *bardis@vakililegal.com*

4

5  Counsel for Plaintiff Rosa Lopez and Minor V-S-

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                  OAKLAND DIVISION

11

12  Rosa Lopez, as Legal Guardian of V-S-,        Case No. 4:23-cv-04292-DMR
    a Minor and Successor in Interest to the
13  Estate of Victor Sanchez Brito,               **PLAINTIFF'S OPPOSITION TO
                                                  DEFENDANT GEO'S MOTION TO
14                Plaintiff,                       TRANSFER VENUE**

15        v.

16

17  United States of America; GEO Group,
    Inc., a corporation,
18
                  Defendants.
19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2    INTRODUCTION ...................................................................................................... 1

3    ISSUES PRESENTED................................................................................................ 2

4    LEGAL STANDARD................................................................................................. 2

5    ARGUMENT ............................................................................................................. 3

6    I.    It is unlikely Plaintiff could have brought all her FTCA claims in the Eastern District..... 3

7    II.   Defendant GEO Fails to Meet Its Burden to Show Transfer Factors Warrant Disregarding

8          Plaintiff's Choice of Forum. ......................................................................... 5

9          A.    Plaintiff's Choice of Forum Weighs Strongly Against Transfer. ........................... 5

10         B.    The Convenience of the Parties Does Not Weigh in Favor of Transfer. ................ 9

11         C.    The Convenience of Hypothetical Witnesses Does Not Favor Transfer. ............. 11

12         D.    The "Interest of Justice" Factors Do Not Weigh in Favor of Transfer. ................ 14

13   CONCLUSION ......................................................................................................... 16

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079 (D. Or. 2016) ............................. 7

*Advanced Transit Dynamics, Inc. v. J.B. Hunt Transp., Inc.*, No. C-11-00075-DMR,

   2011 WL 1557927 (N.D. Cal. Apr. 25, 2011) ......................................................... 16

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109 (C.D. Cal. 2009) ..... 11

*Animal Legal Def. Fund v. U.S. Dep't of Agric.*, No. CV 12-4407-SC,

   2013 WL 120185 (N.D. Cal. Jan. 8, 2013) ........................................................... 15

*Aracely v. Nielsen*, 319 F. Supp. 3d 110, 129 (D.D.C. 2018) ........................................ 8

*Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980 (N.D. Cal. 2011) ........................ 3

*Brito v. Barr*, No. 2:18-CV-00097-KJM-DB, 2020 WL 4003824 (E.D. Cal. July 15, 2020) ...... 12

*Canal A Media Holding, LLC v. U.S. Citizenship and Immigr. Servs.*,

   CV 17-6491 FMO (JCx), 2018 WL 7297829 (C.D. Cal. Sept. 30, 2018) ............................... 16

*Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044 (N.D. Cal. 2001) ..................... 14

*Chen v. Pioneer Oil, LLC*, 472 F. Supp. 3d 704 (N.D. Cal. 2020) ............................................ 6, 8

*Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*, 472 F. Supp. 2d 1183 (S.D. Cal. 2007) ..... 16

*Ctr. for Biological Diversity v. Kempthorne*, No. 07-cv-0894 EDL, 2008 WL 4543043

   (N.D. Cal. Oct. 10, 2008) ......................................................................... 7

*Dale v. United States*, 846 F. Supp. 2d 1256 (M.D. Fla. 2012) ........................................ 4

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ......................... 6

*Doe v. Geller*, 533 F. Supp. 2d 996 (N.D. Cal. 2008) ........................................... 12

*Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7 (2d Cir. 1995) ........................................... 11

*Fabus Corp. v. Asiana Exp. Corp.*, No. C-00-3172 PJH, 2001 WL 253185

   (N.D. Cal. Mar. 5, 2001) ......................................................................... 9

*Ferrick v. Spotify USA Inc.*, No. CV1509929BRORAOX, 2016 WL 11623778

   (C.D. Cal. Oct. 26, 2016) ....................................................................... 10

*Fireman's Fund Ins. Co. v. National Bank for Cooperatives,* No. C 92–2667 BAC,

1993 WL 341274 (N.D. Cal. Aug. 27, 1993) ............................................ 14

*Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574 (N.D. Cal. 2020) ................................... 14

*Flexible Funding, LLC v. Iron Mountain Info. Mgmt.*, No. C 05-02082 JSW,

   2005 WL 2431241 (N.D. Cal. Sept. 30, 2005) .............................................. 14

*Flotsam of California, Inc. v. Huntington Beach Conf. & Visitors Bureau*,

   No. C 06-7028 MMC, 2007 WL 1152682 (N.D. Cal. Apr. 18, 2007) ..................................... 13

*GameTek LLC v. Electronic Arts*, No. 12-CV-2927 BEN (RBB),

   2013 WL 3864343 (S.D. Cal. July 23, 2013) ............................................. 16

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,

   972 F.3d 1101 (9th Cir. 2020) ...................................................... 7

*Gomez v. Becerra*, No. 23-CV-03724-JCS, 2023 WL 6232236 (N.D. Cal. Sept. 25, 2023).......... 5

*H.L. v. Wal-Mart Stores, Inc.*, 2015 WL 12743600, at *4 (C.D. Cal. Sept. 9, 2015)..................... 4

*Harvard v. Inch*, 408 F. Supp. 3d 1255 (N.D. Fla. 2019) ....................................... 9

*Hatch v. Reliance Ins. Co.*, 758 F.2d 409 (9th Cir. 1985) ................................... 3

*Henriquez v. Garland*, No. 23-CV-01025-AMO, 2023 WL 6226374

   (N.D. Cal. Sept. 25, 2023) ......................................................... 5

*Hinestroza v. United States*, No. CV232026MWFMRWX, 2023 WL 6787769

   (C.D. Cal. Sept. 6, 2023)........................................................... 8

*Hoefer v. U.S. Dep't of Com.*, No. C 00 0918 VRW, 2000 WL 890862

   (N.D. Cal. June 28, 2000) ......................................................... 10

*HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304 (Fed. Cir. 1999) ..................................... 14

*In re Fenwick Island, Inc.*, 330 F. Supp. 1191 (E.D.N.C. 1971) ................................ 11

*Joslyn v. Armstrong*, No. 3:01-cr-198-CFD, 2001 WL 1464780 (D. Conn. May 16, 2001).......... 8

*Kaur v. U.S. Airways, Inc.*, No. C-12-5963 EMC, 2013 WL 1891391

   (N.D. Cal. May 6, 2013) ........................................................... 14

*Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772 (N.D. Cal. 2014) ................................. 3, 6, 7, 13

*Lyon v. U.S. Immigr. & Customs Enf't*, 171 F. Supp. 3d 961 (N.D. Cal. 2016)...................... 9

*Martensen v. Koch*, 942 F. Supp. 2d 983 (N.D. Cal. 2013)....................................... 7

*Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355 (S.D. Fla. 2001) ............ 12

*Nunez Euceda v. United States*, No. 220CV10793VAPGJSX, 2021 WL 4895748

    (C.D. Cal. Apr. 27, 2021) ................................................................................................... 7

*Panavision Intl., LP v. Toeppen,* 141 F.3d 1316 (9th Cir. 1998).......................................... 12, 15

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ........................................................................ 6

*Raju v. Cuccinelli*, No. 20-CV-01386-AGT, 2020 WL 4915773 (N.D. Cal. Aug. 14, 2020)...... 11

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,

    No. 14-CV-05596-JST, 2015 WL 1738269 (N.D. Cal. Apr. 9, 2015) ................................ 7, 14

*Roling v. E\*Trade Securities*, LLC, 756 F. Supp. 2d 1179 (N.D. Cal. 2010) ............................. 9

*Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152 (S.D. Cal. 2005). ................................................... 10

*STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551 (N.D. Cal. 1988)................................................ 13

*U.S. ex rel. Adrian v. Regents of Univ. of California*, No. C 99-3864 TEH,

    2002 WL 334915 (N.D. Cal. Feb. 25, 2002) ............................................................................ 10

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) .............................................................................. 11

*Wilbur P.G. v. United States*, No. 4:21-CV-04457-KAW,

    2022 WL 3024319 (N.D. Cal. May 10, 2022) ............................................................. 7, 14, 15

*Williams v. Bowman*, 157 F. Supp. 2d 1103 (N.D. Cal. 2001) ....................................... 12, 13, 14

*Zepeda Rivas v. Jennings*, No. 20-CV-02731-LB,

    2023 WL 5663153 (N.D. Cal. Aug. 30, 2023) ........................................................................ 11

*Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36 (N.D. Cal. 2020) .............................................. 5, 8

*Zepeda Rivas v. Jennings*, 465 F. Supp. 3d 1028 (N.D. Cal. 2020) ............................................ 9

**Statutes**

28 U.S.C. § 1346(b) ....................................................................................................................... 4

28 U.S.C. § 1402 ........................................................................................................................ 4, 6

28 U.S.C. § 1404(a) ................................................................................................................... 3, 6

**Other Authorities**

"U.S. District Courts - Median Time From Filing to Disposition of Civil Cases, by Action

Taken," (June 30, 2023) available at https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2023/06/30 ........................................................................... 16

Directive 16001.1 .......................................................................................................... 4, 5

Directive 16001.2 ........................................................................................................ 5, 15

The GEO Group, Inc., "2022 Annual Report", available at https://investors.geogroup.com/static-files/85141548-c469-43ca-ad2b-c55e5ea1081b .................................................. 11

**Rules**

Fed. R. Civ. P. 45(c)(1)(B) ........................................................................................... 11

**Treatises**

Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed.) ...................................... 9

1

## **INTRODUCTION**

2      This case involves claims against Defendants United States of America (the

3   "government" or "Federal Defendant") and The GEO Group, Inc. ("GEO") based on (1) the

4   unlawful imprisonment of a U.S. citizen by ICE agents working in and for the agency's San

5   Francisco Field Office, and (2) the unlawful treatment of him by Defendants and their employees

6   and agents while he was in their custody. The U.S. citizen, Victor Sanchez Brito, died within

7   months of finally being freed from his nearly seven years of captivity in ICE custody, roughly

8   half of which was spent in GEO's physical custody at the Mesa Verde ICE Processing Center

9   ("Mesa Verde") in Bakersfield, California. Mr. Brito's mother, Rosa Lopez, brings this case on

10  behalf of V-S-, Mr. Brito's son and only heir, as his legal guardian.

11     Ms. Lopez filed this case in the Northern District of California because, among other

12  things, it is likely the only District where some of her claims may be brought, she and V-S-

13  reside in this District, Mr. Brito lived and died in this District, the people that knew Mr. Brito

14  while he was experiencing the alleged harm – including his prior counsel – reside in this District,

15  most if not all of the decisions to arrest and keep Mr. Brito imprisoned were made by ICE agents

16  in this District, and ICE's supervision of GEO's operation of Mesa Verde, as well as their

17  oversight of its prolonged segregation placements, is conducted by agents in this District.

18     Despite the clear connection with this District, Defendant GEO, a multinational,

19  multibillion-dollar private prison corporation headquartered in Florida, asks this Court to

20  disregard Ms. Lopez's choice and transfer the case a few hours away simply because the building

21  where GEO imprisoned Mr. Brito is in Bakersfield, which is physically in the Eastern District of

22  California (though roughly the same distance to this Court as it is to Sacramento), and because it

23  might theoretically be more convenient for its own unidentified employees, as well as for some

24  potential non-party witnesses who GEO has not identified and who may or may not testify about

25  matters that GEO has not detailed. The motion should be denied.

26     As a threshold matter, it is not at all clear that Ms. Lopez could even bring all of her

27  claims against the United States in the Eastern District. The special venue requirements of the

28  Federal Tort Claims Act ("FTCA") only permit her claim to be filed where she resides or where

the acts or omissions complained of occurred. Her residence is in this District, and actions of the United States agents who falsely arrested and imprisoned Mr. Brito and who negligently investigated his citizenship took place in this District.

Even if Ms. Lopez could have brought the case in the Eastern District, GEO's scant and speculative justification is insufficient to meet its heavy burden to prove that transfer is so "clearly" more convenient for the parties and witnesses or furthers the interests of justice that it warrants disregarding the great solicitude this Court must afford Plaintiff's choice of her home forum, particularly when there are no signs whatsoever she engaged in forum shopping.

## ISSUES PRESENTED

1.   Whether Plaintiff could have brought all of her FTCA claim against the United States in the Eastern District of California.

2.   Whether, if the case could have been brought in the Eastern District, GEO meets its heavy burden to show the convenience of the parties and witness and the interest of justice warrant disregarding Plaintiff's choice of her home forum, where the case has clear connections to this District, there are no signs of forum shopping, and there are no other reasons for discounting the deference owed to a plaintiff's choice of forum.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). By its plain language, "section 1404(a) requires two findings—that the district court" to which transfer is requested "is one where the action 'might have been brought' and that the 'convenience of parties and witnesses in the interest of justice' favor transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

If the first element is met and the case could have been brought in the target district, then "courts in this District have commonly articulated the relevant factors" for the second inquiry "as follows: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and

1  (8) the relative court congestion and time of trial in each forum." *Barnes & Noble, Inc. v. LSI*

2  *Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011).

3  "[T]he burden is on the party seeking transfer to show that when these factors are applied,

4  the balance of convenience *clearly* favors transfer." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d

5  772, 776 (N.D. Cal. 2014) (emphasis added). "It is not enough for the defendant to merely show

6  that it prefers another forum, and transfer will also not be allowed if the result is merely to shift

7  the inconvenience from one party to another." *Id.*; *see also H.L. v. Wal-Mart Stores, Inc.*, 2015

8  WL 12743600, at *4 (C.D. Cal. Sept. 9, 2015) ("If the transfer would merely switch the

9  inconvenience from defendant to plaintiff, the transfer should not be allowed.").

10  ### ARGUMENT

11  ### I.   IT IS UNLIKELY PLAINTIFF COULD HAVE BROUGHT ALL HER FTCA
12  ### CLAIMS IN THE EASTERN DISTRICT.

13  The claims against the United States are brought pursuant to the FTCA, 28 U.S.C. §

14  1346(b). The FTCA has a specific venue provision that strictly limits where such a case may be

15  brought. 28 U.S.C. § 1402. Specifically, a plaintiff may bring a § 1346(b) FTCA case such as

16  this one "*only in* the judicial district where the plaintiff resides or wherein the act or omission

17  complained of occurred." *Id.* (emphasis added). "The obvious purpose behind such a broad

18  venue statute is to protect the plaintiff from abuse by the United States forcing the plaintiff to

19  litigate the controversy in an inconvenient forum." *Dale v. United States*, 846 F. Supp. 2d 1256,

20  1258 (M.D. Fla. 2012) (quotations and citations omitted).

21  Here, it is unlikely that Plaintiff could have brought her false imprisonment claim in the

22  Eastern District because the central acts and omissions that she challenges in that claim revolve

23  around the investigation and decision by ICE Agent Marco Grasso and his superiors in the "ICE

24  San Francisco Field Office" to arrest Mr. Brito and then to keep him imprisoned, in excess of

25  ICE's lawful authority and in violation of binding policy forbidding his detention. Complaint ¶¶

26  11, 49-60, 111, 133-136. Agent Grasso was stationed in Marin County Jail, in this District, when

27  he conducted his investigation and decided to arrest and imprison Mr. Brito. *Id.* ¶ 49, 59. By

28  policy, the San Francisco "Field Office Director[]" and any "Special Agents in Charge" in the

San Francisco Field Office were required to "ensure that [Agent Grasso] underst[ood] and adhere[d] to" Directive 16001.1's requirements for that investigation and decision. *Id.* ¶¶ 23-24, 60; Declaration of Bardis Vakili in Opposition to Motion to Transfer ("Vakili Venue Decl."), Ex. A ("Directive 16001.1") at 3. Furthermore, the same policy required consultation with attorneys in the ICE Office of Chief Counsel in the San Francisco Field Office. Complaint ¶ 23, 71; Directive 16001.1 at 1-2. Plaintiff alleges that Agent Grasso and his superiors and colleagues in the ICE San Francisco Field Office did not adhere to that policy. Complaint ¶ 71, 133.

After the initial decision to arrest Mr. Brito was made, ICE officials – presumably working in the San Francisco Field Office – transferred him to and held him in Yuba Jail, and then a few years later moved him to Mesa Verde. *Id.* ¶¶ 59, 61, 84. These facilities, and the individuals ICE imprisons in them, are "controlled by the 'San Francisco Field Office'" of ICE, in this District. *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 39 n.4 (N.D. Cal. 2020) (referencing ICE websites); Complaint ¶¶ 61, 84-85.

Within months of transferring him, Directive 16001.1 was superseded by Directive 16001.2. Complaint ¶¶ 26, 72. Pursuant to Directive 16001.2, "Field Office Directors" – in the San Francico Field Office here – "are responsible for providing appropriate supervisory oversight" to agents under their control, like Agent Grasso, in making detention decisions regarding people claiming U.S. citizenship. Vakili Venue Decl., Ex. B ("Directive") §§ 4.2, 4.5. Like its predecessor, Directive 16001.2 required consultation with attorneys in the ICE Office of Chief Counsel in the San Francisco Field Office. Complaint ¶ 23, 71; Directive 16001.2 §§ 2, 4.2, 5.1(2), 5.1(4)(c). Plaintiff alleges that Officer Grasso and his superiors and colleagues in the ICE San Francisco Field Office did not adhere to Directive 16001.2. Complaint ¶¶ 112, 134.

Finally, *only* ICE agents in the San Francisco Field Office had authority to release Mr. Brito. *See Henriquez v. Garland*, No. 23-CV-01025-AMO, 2023 WL 6226374, at *2 (N.D. Cal. Sept. 25, 2023) (holding the "Director of the San Francisco Field Office is the proper respondent" in a habeas petition seeking release from Mesa Verde and that "it is of little consequence where Petitioner is detained so long as he remains in the Director's custody"). Indeed, "[h]ere, as in the many other cases in which this Court has addressed the question, there

is no dispute that the San Francisco FOD is the person with primary authority over [Mr. Brito's] arrest and detention" at Mesa Verde. *Gomez v. Becerra*, No. 23-CV-03724-JCS, 2023 WL 6232236, at *6 (N.D. Cal. Sept. 25, 2023) (finding the proper venue for a Mesa Verde habeas petitioner is the Northern District where the officials with authority to release are located).

Thus, most if not all of "the acts or omissions complained of" regarding Plaintiff's claim for false arrest/imprisonment occurred in this District and not any other, regardless of where Mr. Brito was physically held as a result of those decisions. 28 U.S.C. § 1402. In addition, Plaintiff's second claim for negligence against the United States, insofar as it challenges Agent Grasso's negligent investigation and his violation of California law in pursuing that investigation, also occurred solely in Marin County, in this District. Complaint ¶¶ 51-57, 142(a)-(c).

Accordingly, pursuant to the limited venue requirements of the FTCA, Plaintiff's first claim and material aspects of his second claim likely could not have been brought in the Eastern District of California and could be brought "only in" this District. 28 U.S.C. § 1402. Therefore, the Court should deny GEO's motion.

## II.    DEFENDANT GEO FAILS TO MEET ITS BURDEN TO SHOW TRANSFER FACTORS WARRANT DISREGARDING PLAINTIFF'S CHOICE OF FORUM.

Even if the Court determines Plaintiff could have brought this case in the Eastern District, GEO fails to meet its heavy burden to establish that the relevant § 1404 factors clearly warrant transfer away from Ms. Lopez's home forum.

### A.    Plaintiff's Choice of Forum Weighs Strongly Against Transfer.

A plaintiff's choice of forum is not just one factor among many; it is dispositive unless the defendant "clearly" demonstrates that transfer is necessary. *Lax*, 65 F. Supp. 3d at 776; *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) ("[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum."). Accordingly, a "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Chen v. Pioneer Oil, LLC*, 472 F. Supp. 3d 704, 710 (N.D. Cal. 2020).

1    In this case, the bar is even higher because Ms. Lopez is a resident of Marin County in

2    this District, and her choice of her "home forum" is "entitled to considerable deference."

3    Complaint ¶ 13; *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972

4    F.3d 1101, 1112 (9th Cir. 2020). "[A] plaintiff's choice of forum is entitled to greater deference

5    when the plaintiff has chosen the home forum." *Martensen v. Koch*, 942 F. Supp. 2d 983, 999

6    (N.D. Cal. 2013) (citing *Piper Aircraft Co.*, 454 U.S. at 255); *Adidas Am., Inc. v. Cougar Sport,*

7    *Inc.*, 169 F. Supp. 3d 1079, 1096 (D. Or. 2016) ("[A] plaintiff's choice of forum is especially

8    given deference where the plaintiff is a resident of the forum in which the action is brought.").

9    Accordingly, courts in this District often deny transfer simply because the plaintiff is a local

10   resident. *See, e.g., Lax*, 65 F. Supp. 3d at 780 (denying transfer where only one of seven named

11   plaintiffs resided in district); *Ctr. for Biological Diversity v. Kempthorne*, No. 07-cv-0894 EDL,

12   2008 WL 4543043, at *3 (N.D. Cal. Oct. 10, 2008) (denying transfer where one plaintiff

13   organization resided in forum, despite the proposed transferee forum being "the only state with

14   meaningful ties to the subject matter of the litigation"); *Reyes v. Bakery & Confectionery Union*

15   *& Indus. Int'l Pension Fund*, No. 14-CV-05596-JST, 2015 WL 1738269, at *3-5 (N.D. Cal. Apr.

16   9, 2015) (denying transfer of class action from home forum despite finding "the convenience of

17   non-party witnesses weighs gently in favor of transfer" and other factors were neutral).

18   In FTCA cases in particular, district courts regularly deny transfer from plaintiff's home

19   district even where the incidents complained of occurred in another district. *See e.g. Wilbur P.G.*

20   *v. United States*, No. 4:21-CV-04457-KAW, 2022 WL 3024319, at *3 (N.D. Cal. May 10, 2022)

21   (noting courts have denied transfer of "family separation" FTCA cases based solely "on

22   residency of the plaintiffs" and "declined to consider the Section 1404(a) factors"); *Nunez*

23   *Euceda v. United States*, No. 220CV10793VAPGJSX, 2021 WL 4895748, at *4 (C.D. Cal. Apr.

24   27, 2021) (denying transfer of FTCA case to Texas where family separation occurred "because

25   Plaintiff resides in Los Angeles County").

26   That rule must apply here, where not only does Plaintiff reside in this District, but many

27   of the central disputed actions also emanated from ICE agents located in this District, as noted

28   *supra*, Section I. At minimum, there is sufficient doubt regarding whether Plaintiff's first claim

could even be brought in the Eastern District that transfer unnecessarily risks prejudicing her case. Indeed, for the precise reason that a plaintiff's venue options are limited by the FTCA, courts have held that "a plaintiff's choice of venue pursuant to a special venue statute" like the FTCA's "may be entitled to even greater deference." *Hinestroza v. United States*, No. CV232026MWFMRWX, 2023 WL 6787769, at *2 (C.D. Cal. Sept. 6, 2023).

Moreover, the "great weight" already afforded to a plaintiff's choice of forum is "especially" robust "when there are strong contacts between the chosen forum and the dispute," as Plaintiff has described is the case here. *Chen*, 472 F. Supp. at 710. As noted *supra*, Federal Defendant conducts operations at the detention centers at issue in this case from ICE's San Francisco Field Office. *Zepeda Rivas*, 445 F. Supp. 3d at 39 n.4; Complaint ¶¶ 61, 84-85. The operational decisions to arrest Mr. Brito and keep him imprisoned occurred in this District. Complaint ¶¶ 49-60. The oversight required by ICE policy regarding GEO's imposition of solitary confinement on Mr. Brito was supposed to be performed by "the Field Office Director" in the ICE San Francisco Field Office. Complaint ¶¶ 35, 142(e)-(h). The immigration court whose rulings Federal Defendant relies on in its Motion to Dismiss was based in San Francisco. *See* ECF No. 15 at 13-14, 26.[1] Mr. Brito lived and died in this District, and his family members are located in this District. Complaint ¶¶ 13, 44, 48, 116-18. And GEO has significant contacts with this forum as well, including by detaining people held in the legal custody of the ICE San Francisco Field Office. *Id.* ¶ 15, 84-85.

Even if the Court considers that Mr. Brito's imprisonment occurred in the Eastern District, Courts regularly adjudicate civil rights lawsuits against state and federal agencies in fora where those agencies make operational decisions, even when some or all the events in question occur elsewhere. *See, e.g., Aracely v. Nielsen*, 319 F. Supp. 3d 110, 129 (D.D.C. 2018) (denying motion to transfer from District of D.C. to Texas district where ICE detention and parole denials occurred because the challenged actions "emanated from an agency located in the District of Columbia"); *see Joslyn v. Armstrong*, No. 3:01-cr-198-CFD, 2001 WL 1464780, at *1 (D. Conn.

---

[1] When Plaintiff cites page numbers of prior court filings, it is to the ECF page number in blue at the top of the page, not the page number placed by counsel at the bottom of the page.

May 16, 2001) (denying to motion to transfer venue by the Director of the Connecticut Department of Correction in a lawsuit concerning conditions and mistreatment of Connecticut prisoners who were being held in a prison in Virginia); *see Harvard v. Inch*, 408 F. Supp. 3d 1255, 1260-62 (N.D. Fla. 2019) (denying motion to transfer case to a contiguous district where "individual acts" occurred because these acts were "the manifestation of the policies and practices" that defendant promulgated in the instant district).

It is therefore unsurprising that courts in this District regularly adjudicate cases based on actions involving ICE prisoners at Mesa Verde. *See, e.g.*, *Zepeda Rivas v. Jennings*, 465 F. Supp. 3d 1028 (N.D. Cal. 2020) (granting class-wide preliminary injunction in action challenging ICE and GEO's COVID-19 response at Yuba Jail and Mesa Verde facilities, both physically located in the Eastern District); *see also Lyon v. U.S. Immigr. & Customs Enf't*, 171 F. Supp. 3d 961, 964 (N.D. Cal. 2016) (addressing telephone access for people in four ICE facilities, three of which – Mesa Verde included – are located in the Eastern District).

Accordingly, this case simply does not present one of the limited circumstances in which "[t]he plaintiff's preference may be given less weight" because "plaintiff sued in a district that has no obvious connection to the case." Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed.). "Because there is no evidence of forum shopping… plaintiffs' choice of forum carries significant weight." *Roling v. E*Trade Securities*, LLC, 756 F. Supp. 2d 1179, 1186 (N.D. Cal. 2010) (denying transfer even though not all plaintiffs resided in the forum and the plaintiffs believed, albeit mistakenly, that defendant was headquartered in the forum).

Cases cited by GEO do not compel a different result. In *Fabus Corp.*, a court in this District granted transfer to the Central District in a case in which plaintiffs' home forum was not this District (some were based in Korea and Fabus itself was based in the forum to which transfer was sought), defendants were also located in the Central District, and the disputed delivery at the center of the case occurred in the Central District. *Fabus Corp. v. Asiana Exp. Corp.*, No. C-00-3172 PJH, 2001 WL 253185, at *2 (N.D. Cal. Mar. 5, 2001). That stands in stark contrast to the myriad connections to this District in this case, and it certainly does not justify any reduction in deference afforded to Ms. Lopez's decision to litigate in her home forum. *Saleh* is similarly

1    inapposite, as it involved "foreign plaintiffs seek[ing] to litigate a class action involving claims

2    that did not arise in the chosen forum." *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1157 (S.D.

3    Cal. 2005). Likewise, a case involving transfer to Washington D.C. of a "nationwide class"

4    action in which "[o]nly one named plaintiff resides in California," while "three named plaintiffs

5    and all of the defendants are located in the Washington, DC, area" offers little of value to this

6    case brought by an individual Plaintiff litigating in her home district regarding events that

7    occurred in this District. *Hoefer v. U.S. Dep't of Com.*, No. C 00 0918 VRW, 2000 WL 890862,

8    at *2 (N.D. Cal. June 28, 2000). Finally, the *qui tam* action cited by GEO is also inapplicable,

9    because "a plaintiff's choice of forum is *not* given substantial weight when the plaintiff is a *qui*

10   *tam* relator, asserting the rights of the United States government," and because the court in that

11   case found that the plaintiff "allege[d] no facts indicating that the events that form the basis of

12   his claim against Defendants took place in California." *U.S. ex rel. Adrian v. Regents of Univ. of*

13   *California*, No. C 99-3864 TEH, 2002 WL 334915, at *3 (N.D. Cal. Feb. 25, 2002).

14           Because GEO cannot meet its burden to overcome the great deference owed to Ms.

15   Lopez's choice of her home forum, this Court should deny the motion on this factor alone.

16           **B.    The Convenience of the Parties Does Not Weigh in Favor of Transfer.**

17           GEO also fails to establish the convenience of the parties favors transfer. The parties in

18   this case are Ms. Lopez, the United States of America, and GEO. As noted, Plaintiff's claims

19   against the United States for violating Mr. Brito's rights as a U.S. citizen involve ICE officials

20   who are likely located in the Northern District. Ms. Lopez and V-S- also reside in this District.

21   Complaint ¶ 13. GEO does not reside in this District, but it also does not reside in the target

22   district; it is headquartered in Boca Raton, Florida, which is not meaningfully more convenient to

23   either district. Complaint ¶ 15. Because Plaintiff is a sole individual litigating against the vast

24   resources of the United States of America and a behemoth corporate entity, this factor does not

25   weigh in favor of bullying her out of her home forum.

26           "[W]here a disparity between the parties exists, such as an individual plaintiff suing a

27   large corporation, the court may also consider the relative means of the parties in determining

28   whether to transfer." *Ferrick v. Spotify USA Inc.*, No. CV1509929BRORAOX, 2016 WL

11623778, at *5 (C.D. Cal. Oct. 26, 2016) (citations omitted). Here, the obvious disparity favors denying the motion to transfer. The United States and GEO are far better suited to litigate in a supposedly inconvenient forum than Ms. Lopez and her minor grandson. Meanwhile, GEO offers no persuasive argument that Sacramento or Fresno in the Eastern District are any more convenient than Oakland for a Florida-based international corporation that records billions of dollars in revenue profiting from human incarceration around the United States and the world.[2] For Federal Defendant's part, "the agency has field offices and is represented nationwide by U.S. Attorney's Offices." *Raju v. Cuccinelli*, No. 20-CV-01386-AGT, 2020 WL 4915773, at *4 (N.D. Cal. Aug. 14, 2020). Thus, although the government "consents to transfer" to the Eastern District, ECF No. 17 at 2, "the agency is well equipped to litigate elsewhere, including here." *Raju*, 2020 WL 4915773 at *4. "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964). In addition, any officer of GEO or the government located in California are within this Court's subpoena power. Fed. R. Civ. P. 45(c)(1)(B).

Furthermore, the proximity of the two districts precludes this factor from holding significant weight. Where transfer is requested "to a contiguous district," movants must "show a strong balance of convenience in their favor." *In re Fenwick Island, Inc.*, 330 F. Supp. 1191, 1192 (E.D.N.C. 1971); *see also Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7, 10 (2d Cir. 1995) (stating "[a] forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel"). GEO fails to make a sufficiently strong showing here.

Finally, GEO has recently litigated in this District regarding issues at Mesa Verde. *See, e.g., Zepeda Rivas v. Jennings*, No. 20-CV-02731-LB, 2023 WL 5663153 (N.D. Cal. Aug. 30, 2023). Where corporate defendants are "involved in other litigation in this district," it

---

[2] *See* The GEO Group, Inc., "2022 Annual Report" at 4, 17, available at https://investors.geogroup.com/static-files/85141548-c469-43ca-ad2b-c55e5ea1081b (noting "total revenues of $2.38 billion" with custodial facilities in the U.S., as well as South Africa, Australia, and the U.K.).

PLAINTIFF'S OPPOSITION TO DEFENDANT GEO'S MOTION TO TRANSFER VENUE
 CASE NO. 23-CV-04292-DMR                                                    10

1  "undermines [their] argument that they will be greatly inconvenienced" by doing so here. *Allstar*

2  *Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009).

3      Accordingly, GEO fails to show that the convenience of the parties favors transfer.

4      **C.    The Convenience of Hypothetical Witnesses Does Not Favor Transfer.**

5      The convenience of the witnesses also does not favor transfer, particularly where GEO is

6  concerned primarily for its own employees but identifies no actual witnesses and only speculates

7  as to these hypothetical witnesses' location and the need for their appearance at trial.

8      "[T]he convenience of witnesses is 'no longer weighed heavily given the modern

9  advances in communication and transportation.'" *Doe v. Geller*, 533 F. Supp. 2d 996, 1010 (N.D.

10  Cal. 2008) (quoting *Panavision Intl., LP v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998)). In

11  this day and age, depositions can be taken remotely or in a convenient location for each witness

12  and only witnesses who will need to be present at any trial will need to travel. Indeed, "when

13  considering this factor, it is not so much the convenience of the witnesses but the possibility of

14  having their testimony at the trial that is important." *Mason v. Smithkline Beecham Clinical*

15  *Lab'ys*, 146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001).

16      As an initial matter, GEO does not specify that it requests transfer to the Fresno Division

17  of the Eastern District, only requesting transfer to the Eastern District more generally. GEO

18  Motion to Transfer Venue at 3, ECF No. 12 ("Transfer Mtn"); ECF No. 12-1 (proposed order);

19  *compare id. with Williams v. Bowman*, 157 F. Supp. 2d 1103, 1104, 1106 (N.D. Cal. 2001)

20  (seeking transfer specifically to "Fresno Division" because plaintiff was "presently" incarcerated

21  closer to Fresno). GEO mentions Fresno only once and appears to argue in favor of the benefits

22  of both Sacramento and Fresno. Transfer Mtn at 3 (mentioning Mesa Verde's proximity to

23  Fresno and Yuba Jail's proximity to Sacramento).

24      To the extent GEO argues in favor of transfer to the Sacramento Division,[3] it is not a

25  more convenient venue thank Oakland for *any* likely witnesses. The two courts are virtually

26  _____

27  [3] Unless this Court specifies Fresno Division, it is not certain that the Eastern District would
    necessarily assign the case to Fresno, as Mr. Brito's citizenship case while he was incarcerated at
    Mesa Verde was assigned Chief Judge Mueller, who it appears is located in Sacramento. *Brito v.*

28  *Barr*, No. 2:18-CV-00097-KJM-DB, 2020 WL 4003824 (E.D. Cal. July 15, 2020); *see* Website

equidistant from Mesa Verde, so it is not more convenient for witnesses located near the facility. Vakili Venue Decl. ¶ 5, 6. Sacramento is also less convenient for ICE witnesses located in San Francisco, as well as for Mr. Brito's family members and other witnesses living in the Bay Area.

Even if this Court considers the convenience of Fresno as opposed to Sacramento, this factor does not weigh in favor of transfer. Fresno may be only marginally more convenient for any witnesses located near Mesa Verde. "While [Bakersfield] is closer to Fresno than San Francisco [or Oakland], it is not terribly close to either venue," at about two hours' drive from Fresno and about four hours from Oakland. *Williams*, 157 F. Supp. 2d at 1107; Vakili Decl. ¶¶ 5, 7. "More importantly, [witnesses] will have little need physically to go to court until this case goes to trial." *Williams*, 157 F. Supp. 2d at 1107. In any event, even if GEO must pay for transport of any of its employees to this District for trial, the distance is not so far that doing so is sufficiently inconvenient. *See Flotsam of California, Inc. v. Huntington Beach Conf. & Visitors Bureau*, No. C 06-7028 MMC, 2007 WL 1152682, at *2 (N.D. Cal. Apr. 18, 2007) ("The need for occasional travel by air from the Huntington Beach area to San Francisco for trial or other proceedings does not constitute the type of inconvenience that would warrant disturbing the plaintiff's choice of forum.").

Regardless of whether the Court considers Fresno or Sacramento, GEO's concerns for "the convenience of [its own] employee witnesses are entitled to little weight because litigants are able to compel their employees to transfer at trial, regardless of forum." *Lax*, 65 F. Supp. 3d at 779; *accord STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) ("[D]efendant's claim that defense witnesses could not be expected to appear at trial must be discounted since at least four of the six witnesses are defendant's employees whom defendant can compel to testify."). Accordingly, "[i]n considering the convenience of witnesses, courts have recognized that the convenience of *non-party witnesses* is more important than the convenience of party witnesses, including representatives of corporate parties." *Kaur v. U.S.*

---

for Eastern District of California, https://www.caed.uscourts.gov/caednew/index.cfm/judges/all-judges/5020/. Notably, GEO does not argue the case should be assigned specifically to Chief Judge Mueller in Sacramento, presumably because this case does not require re-litigation of Mr. Brito's citizenship claim.

*Airways, Inc.*, No. C-12-5963 EMC, 2013 WL 1891391, at *5 (N.D. Cal. May 6, 2013) (citing cases) (emphasis in original). Thus, where "the witnesses to be called by the defendant are all its employees," "their location is not as important a factor as it would be if they were not under the defendant's control" and required a "subpoena" to testify. *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 n.2 (Fed. Cir. 1999); *accord Wilbur P.G.*, 2022 WL 3024319, at *3-4 (noting "Courts in this district" follow the same rule, citing cases).

In any event, GEO fails to meet its burden on this factor because it fails to identify any specific witnesses, explain their testimony with any particularity, or state whether they will need to testify at trial. To be entitled to weight on this factor, "[t]he moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 587 (N.D. Cal. 2020) (finding "[t]his factor is neutral as defendants have not met their burden" because they "have made no attempt to identify witnesses with any particularity"); *accord Williams*, 157 F. Supp. at 1108; *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1049 (N.D. Cal. 2001). Here, GEO fails to "clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included." *Fireman's Fund Ins. Co. v. National Bank for Cooperatives,* No. C 92–2667 BAC, 1993 WL 341274, at *4 (N.D. Cal. Aug. 27, 1993). The only witnesses GEO notes who are not employees of a defendant in this case are hypothetical Wellpath employees, but GEO does not specify who they are or if they will be necessary. Transfer Mtn at 3, 8. Without the necessary specificity, "[t]here is no way of knowing now how many of these witnesses will need to travel to [the Northern District of] California to testify at trial, and if they do so it will be voluntarily." *Reyes*, 2015 WL 1738269, at *4.

GEO's cases do not alter this conclusion. In *Flexible Funding*, the moving party "provide[d] a declaration setting forth witnesses who live in or near Massachusetts, which include witnesses who generated the invoices at issue, the Iron Mountain representative who approved them, and non-party witnesses who delivered the notices of assignment." *Flexible Funding, LLC v. Iron Mountain Info. Mgmt.*, No. C 05-02082 JSW, 2005 WL 2431241, at *3 (N.D. Cal. Sept. 30, 2005). GEO has done nothing of the sort here. In *Animal Defense Fund*, the

court found that "all but one Plaintiff" was located in the Northern District, while all "Defendants and one Plaintiff are on the East Coast" and all "likely witnesses and evidence" were "located elsewhere as well." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, No. CV 12-4407-SC, 2013 WL 120185, at \*4 (N.D. Cal. Jan. 8, 2013). That record bears little resemblance to the record here, where all witnesses (hypothetical and identified) and evidence are within driving distance of the two competing adjacent venues.

Accordingly, GEO fails to establish this factor favors transfer.

**D.    The "Interest of Justice" Factors Do Not Weigh in Favor of Transfer.**

The remaining factors fall under the "interest of justice" category of § 1404, and GEO fails to prove that these clearly favor transfer to the Eastern District.

*First*, GEO fails to identify how, merely because the facilities where Mr. Brito was incarcerated are in the Eastern District, the "ease of access to evidence" weighs in favor of transfer. In today's world, "given the modern advances in communication and transportation" the "the location of the evidence . . . is no longer weighed heavily." *Panavision Int'l, L.P*, 141 F.3d at 1323. In this case, most of the evidence will likely be documentary and presumably stored electronically, which can be readily accessed from anywhere. For instance, Directive 16001.2 clearly states that "Records generated pursuant to this directive are maintained in" several electronic "system[s] of records." Directive 16001.2 § 6. In addition, "A-files" and other detention records are also routinely disseminated via online platform. *See, e.g.*, ICE Freedom of Information Act website, https://www.ice.gov/foia (noting option to "Request ICE records online"). Accordingly, the location of the detention centers does not mean the "ease of access to evidence" favors transfer. *See Wilbur P.G.*, 2022 WL 3024319, at \*4 (noting that even if some "discovery may be more challenging because the detention facilities are located in Arizona," the court "is confident that the parties will utilize the technology at their disposal, including depositions by video conference, to fulfill their obligations").

Even if site inspections of the Yuba and Mesa Verde facilities become necessary – and it is hardly clear at this stage that they will – GEO offers no explanation why transfer of the entire

1    case is necessary to move it to a court that is closer to one facility but is not meaningfully closer

2    to the other. Vakili Decl. ¶¶ 5-10.

3         _Second_, the local interest in the controversy favors keeping the case in the Northern

4    District. ICE agents in this District ordered and orchestrated the arrest and prolonged

5    imprisonment of a U.S. citizen with a severe mental illness who is from this District, giving the

6    local community in this District a significant interest in how this controversy is resolved. *See*

7    *Canal A Media Holding, LLC v. U.S. Citizenship and Immigr. Servs.*, CV 17-6491 FMO (JCx),

8    2018 WL 7297829, at *4 (C.D. Cal. Sept. 30, 2018) ("[G]iven that this case involves… a Florida

9    resident—who is currently undergoing removal proceedings in Florida—the outcome of this case

10   will principally affect residents of Florida."); *see also GameTek LLC v. Electronic Arts*, No. 12-

11   CV-2927 BEN (RBB), 2013 WL 3864343, at *3 (S.D. Cal. July 23, 2013) (Because "EA's

12   headquarters and other offices are located in the Northern District" and the subject of litigation

13   was "entirely designed and developed at EA's offices in the Northern District," the "Northern

14   District has a strong local interest in deciding this action").

15        Moreover, the initial arrest occurred at a county jail in this District, and an Office of

16   Education in this District facilitated the arrest by taking part in unlawful transfer of a juvenile

17   record to ICE. Complaint ¶¶ 49, 57. Although communities in the Eastern District may have

18   some interest in what takes place in the immigration detention centers in their communities, the

19   behavior of local and Federal officials in the Northern District creates a strong local concern for

20   in this District.

21        _Third_, GEO concedes that familiarity of the competing forums with the relevant law and

22   court congestion[4] factors do not weigh in favor of transfer. Transfer Mtn at 8:22-23, 9:1.

---

23   [4] Ordinarily, to measure congestion, courts compare the "median time from filing to disposition
24   or trial" in the two fora. *Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*, 472 F. Supp. 2d
     1183, 1196 (S.D. Cal. 2007). Here, the comparison would indeed weigh against transfer, as the
25   median times are all longer in the Eastern District. See "U.S. District Courts - Median Time
     From Filing to Disposition of Civil Cases, by Action Taken," (June 30, 2023) available at
26   https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2023/06/30.
     However, because all "parties have consented to magistrate court jurisdiction… the relative
27   average caseloads or median times to trial for district court judges does not factor into the
     analysis of whether transfer should be granted." *Advanced Transit Dynamics, Inc. v. J.B. Hunt*
28   *Transp., Inc*., No. C-11-00075-DMR, 2011 WL 1557927, at *3 (N.D. Cal. Apr. 25, 2011).

Accordingly, GEO fails to establish that the interest of justice weighs in favor of transfer to the Eastern District.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Court deny GEO's motion to transfer venue.

Respectfully submitted,

Dated: November 3, 2023            */s/ Bardis Vakili*

Bardis Vakili
Law Office of Bardis Vakili, P.C.
P.O. Box 234160
Encinitas, CA 92023
(619) 483-3490 (phone)
bardis@vakililegal.com

---

Nevertheless, because this case will likely be delayed by several months if it were now to be transferred and restarted in a new forum, this factor still weighs against transfer.