Bardis Vakili, CA Bar No. 247783
Law Office of Bardis Vakili, P.C.
P.O. Box 234160
Encinitas, CA 92023
Tel: (619) 483-3490
bardis@vakililegal.com

*Counsel for Plaintiff Rosa Lopez and Minor V-S-*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| Rosa Lopez, as Legal Guardian of V-S-, a Minor and Successor in Interest to the Estate of Victor Sanchez Brito,<br><br>Plaintiff,<br><br>v.<br><br>United States of America; GEO Group, Inc., a corporation,<br><br>Defendants. | Case No. 4:23-cv-04292-DMR<br><br>**PLAINTIFF'S SUR-REPLY TO DEFENDANT UNITED STATES OF AMERICA'S REPLY (ECF NO. 27)** |

1.     The government is incorrect that state law enforcement immunity – specifically California's law enforcement privilege, Cal. Pen. Code § 847(b), which shields certain officers from liability for arrests based on probable cause – controls in FTCA cases. Reply at 8-10.[1] First, the government disputes that the Supreme Court's decision in *United States v. Olson*, 546 U.S. 43 (2005) requires comparison to a similarly situated private person, asserting instead that the Ninth Circuit's pre-*Olson* cases requiring comparison to a similarly situated law enforcement officer still control post-*Olson*. Reply at 9-10. It cites one unpublished district court case stating that Judge Tashima's opinion on this issue in *Tekle v. United States*, 511 F.3d 839 (9th Cir. 2007) was not joined by the concurrences, and another that did not even mention *Olson* or *Tekle*.[2] Reply at 9-10. These cases are unpersuasive because in *Tekle*, Judge Fisher in fact "agree[d]" with Judge Tashima "that *United States v. Olson*… undermines the prior rule in this circuit" that "the law of citizen's arrest [is] an inappropriate instrument for determining FTCA liability." *Tekle*, 511 F.3d at 856-57. At least one court in this district has since interpreted *Tekle* to require "that the acts of a federal officer in the FTCA context must be evaluated under standards applicable to a private person." *Johnson v. United States*, No. 13-CV-02405-JD, 2016 WL 1298858, at *3 (N.D. Cal. Apr. 3, 2016).

In any event, the splintered decision in *Tekle* makes clear that, in FTCA cases, the appropriate source of any law enforcement privilege is federal law, and therefore *not* Cal. Pen. Code § 847(b). In his concurrence, Judge Fisher interpreted *Olsen* "to provide courts with enough flexibility to preserve law enforcement privileges" in FTCA cases. *Tekle*, 511 F.3d at 857. He then cited *Rhoden v. United States,* 55 F.3d 428, 431 (9th Cir. 1995), which held that "a California court would apply *federal* law to determine whether federal immigration officials' detention of the plaintiff was privileged against a claim of false imprisonment under California law," and stated he would "hold that federal officers should not be held liable under the FTCA if they are acting within the scope of a privilege conferred by another *federal* statute." *Tekle*, 511 F.3d at 857-58 (emphasis added). Thus, albeit for different reasons, two judges in *Tekle*

---

[1] Page cites are to the ECF page number at the top right of the relevant filing.
[2] *Michel v. United States*, No. 16CV277-GPC(AGS), 2017 WL 5067608 (S.D. Cal. Oct. 31, 2017); *Sommer v. United States*, No. 09CV2093-CAB (BGS), 2013 WL 12415738 (S.D. Cal. Dec. 5, 2013) (no mention of *Tekle* or *Olson*).

effectively overruled prior Ninth Circuit precedent applying the law enforcement privilege in § 847(b) to eliminate a federal agent's FTCA liability for an arrest made upon probable cause. The district court on remand in *Tekle* agreed. *Tekle v. United States*, No. CV 01-3894-RSWL, 2009 WL 1303357, at *10 (C.D. Cal. May 8, 2009) (citing *Rhoden*). Even the government later quotes with approval the statement in *Rhoden* that "'a California court would apply federal law'" – so, presumably *not* Cal. Pen. Code § 847(b) – "'to determine whether an arrest by a federal officer was legally justified and hence privileged.'" Reply at 14 (quoting *Rhoden,* 55 F.3d at 431).[3]

       2.       The government offers a tortured reading of 8 U.S.C. § 1357(a)(2) to argue that it authorizes immigration agents to arrest people based merely on probable cause they are not citizens. Reply at 10-11. Under the statute's plain language, the agency must *first* assure itself the person is a non-citizen, and only then may arrest based on probable cause that such a non-citizen is removable. Specifically, § 1357(a)(2) authorizes immigration agents to "…arrest any *alien* in the United States*,* if he has reason to believe *that the alien so arrested* is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest…" 8 U.S.C. § 1357(a)(2) (emphasis added). Plaintiff agrees that "reason to believe" equates with "probable cause," but this language modifies the condition that the "alien" be present in the U.S. unlawfully and likely to escape, and not that the person is an "alien." Thus, a person arrested must be an "alien" as a jurisdictional pre-requisite *before* arrest is authorized based on probable cause that such "alien" is removable.[4] Notably, Congress knows how to write

---

[3] Even if § 847(b) did apply, it does not privilege the imprisonment here because federal officers making arrests for civil status violations do not fall within its purview. The statute states "[t]here shall be no civil liability" against "any peace officer or federal criminal investigator or law enforcement officer described in subdivision (a) or (d) of Section 830.8," if an arrest was made based on probable cause. Cal. Pen. Code § 847(b). However, "subdivision (a)" of § 830.8 states that "[f]ederal… law enforcement officers are not California peace officers, but may exercise the powers of arrest" such that "the provisions of Section 847 shall apply" only in four scenarios, none of which include arrests for civil immigration status violations. Cal Pen. Code § 830.8(a). And subdivision (d) applies only during "a state of war emergency or a state of emergency." Cal. Pen. Code § 830.8(d). Because these definitions do not apply to federal arrests for civil immigration status violations, such actions are not privileged under § 847(b).

[4] The Ninth Circuit has interpreted the unmodified use of "alien" as a jurisdictional prerequisite prohibiting application of immigration laws to claimed U.S. citizens. *See*, *e.g.*, *Theagene v. Gonzales*, 411 F.3d 1107, 1111 (9th Cir. 2005) ("If Theagene is, as he claims, actually a United States citizen, the immigration laws… do not apply to him," as confirmed by "[t]he wording of the two statutes" where one "uses the neutral term 'petitioner,'" and the other uses "alien.").

a statute authorizing action based only on probable cause that someone is an "alien," as the immediately preceding subsection authorizes agents "to interrogate any alien *or person believed to be an alien* as to his right to be or to remain in the United States." 8 U.S.C. § 1357(a)(1) (emphasis added). By using different language in two adjacent subsections, Congress plainly intended to authorize agents to interrogate people based on probable cause they might be "an alien," but *not* to arrest people based on the same standard.

The new cases cited by the government, Reply at 10-11, do not support a different interpretation. Three cases are inapposite because they involved no claim to citizenship at all.[5] In another three, the individuals admitted they were not U.S. citizens at the time of arrest and only raised their citizenship claims later, so they are similarly not on point.[6] Only *Belleri* involved a contemporaneous claim to citizenship, but that ruling was vacated, is unpersuasive, and is limited to situations involving "dubious claims to citizenship" by an admittedly foreign-born individual, which is not the case here. *Belleri v. United States*, No. 10-81527-CIV, 2012 WL 12892399, at *9 (S.D. Fla. Jan. 17, 2012). The government's broad interpretation of § 1357(a)(2) would threaten to strip away the freedom of any citizen who cannot produce a birth certificate on demand, so long as an immigration agent has a foreign document that he does not understand, created under suspicious circumstances, saying the person is not a U.S. citizen. A citizen's rights may not be so lightly shed by such a show-me-your-papers standard.

3. The government's mistaken claim that agency directives cannot limit agents' legal authority to arrest is not supported by the cases cited. Reply at 14. In *Morales de Soto v. Lynch*, the Ninth Circuit declined to remand based on intervening memos that "speak only to the exercise of prosecutorial discretion and do not create or modify the law to be applied by this or

---

[5] *See Tejeda-Mata v. Immigr. & Naturalization Serv.*, 626 F.2d 721, 724 (9th Cir. 1980) ("petitioner willingly admitted his alienage"); *Torres-Navarro v. Barr*, 756 F. App'x 772, 772-73 (9th Cir. 2019) (petitioner was arrested under § 1357(a)(2)'s first provision allowing CBP agents "to arrest anyone whom they have 'reason to believe' is entering the country illegally" and "did not deny" that she did so); *Echeverria-Perez v. Barr*, 794 F. App'x 614, 616 (9th Cir. 2019) (petitioner did not challenge determination "she entered the [U.S.] illegally").

[6] *Arteaga-Ruiz v. United States*, 164 F. Supp. 3d 1198, 1203 (D. Idaho 2016) ("Arteaga-Ruiz admitted to being born in Mexico" and "agreed that he was removable"); *Blanco Ayala v. United States*, 982 F.3d 209, 213 (4th Cir. 2020) ("Blanco allegedly conceded… he was not a U.S. citizen."); *De La Cruz-Flores v. United States*, No. SA-16-CV-707-RCL, 2017 WL 4276812, at *1 (W.D. Tex. Sept. 25, 2017) (plaintiff admitted "he was not and had never claimed to be a citizen of the United States").

any other court." 824 F.3d 822, 827 (9th Cir. 2016). However, Plaintiff does not assert Directives 16001.1 or 16001.2 modify any statute; if anything, they likely *interpret* 8 U.S.C. § 1357(a)(2). More importantly, the relevant portions of the Directives that Plaintiff asserts were not followed do not involve "discretion," but mandatory requirements antecedent to the authority to arrest. For instance, Directive 11006.1 requires consultation with ICE attorneys prior to arrest when there is "some probative evidence that the individual is a U.S. citizen," and Plaintiff alleges Officer Grasso did not consult even though jail records indicated Mr. Sanchez Brito claimed U.S. citizenship his whole life.[7] Complaint ¶¶ 24, 50, 58, 60. And Directive 11006.2 requires immediate release unless there is no probative evidence of citizenship, which was plainly not the case, increasingly so as the case progressed. *Id.* ¶¶ 29, 72-73, 76, 108-09.

*United States v. Tatoyan*, 474 F.3d 1174 (9th Cir. 2007) is even more far afield. The case involved a criminal appeal asserting that a customs agent's failure to comply with protocols requiring notice to defendant of reporting requirements established that the defendant lacked knowledge of those requirements. *Id.* at 1178. The court rejected the argument, stating "[c]ompliance with these internal agency regulations is not 'mandated by the Constitution or federal law,'" and that "it is not the province of this court" in a criminal case "to penalize the government for non-compliance." *Id.* The court did not hold that agency protocols may not limit agents' authority to arrest. And, unlike the criminal statute at issue there, the FTCA makes it unquestionably the province of this Court to penalize the government for its agents' non-compliance with agency-created restrictions on their authority to arrest.[8]

Defendant is also incorrect that the Directives cannot form the basis of a negligence claim for failure to release. Reply at 19. Under California law, a law enforcement agent has an ongoing duty to investigate the lawfulness of arrest. Plaintiff's Opp. (ECF No. 26) at 25. And, as

---

[7] Whatever discretion exists in determining what constitutes "probative" evidence, Reply at 17, it does not include the discretion to pretend Mr. Sanchez Brito's lifelong claims to U.S. citizenship in databases Officer Grasso regularly relied upon does not constitute "some probative evidence," especially where the Directive requires "any uncertainty about whether the evidence is probative of U.S. citizenship should weigh against detention." Directive 16001.1 at 2 (ECF 23-1 at 6).

[8] Indeed, the Supreme Court case cited in *Tatoyan* identified compliance with immigration regulations that provide "safeguards against essentially unfair procedures" as an example of when "a court's duty to enforce… is most evident." *United States v. Caceres*, 440 U.S. 741, 749 (1979). The Directives here provide exactly such safeguards.

4

Defendant's central case on this point makes clear, in California if a duty is owed, then internal agency guidance or policy is "admissible evidence on the question of breach of duty." *Minch v. Dep't of California Highway Patrol*, 140 Cal. App. 4th 895, 908 (2006).

The new cases cited by the government do not hold that failure to comply with mandatory directives falls within the discretionary function exception. Reply at 16. The court in *Andrade* held that the DHS memos in question did not "direct a specific course of action," unlike the Directives here. *Andrade v. Walters*, No. CV 18-0889-MWF (KSX), 2019 WL 2895624, at *5 (C.D. Cal. May 31, 2019). The remaining three cases are inapposite because the plaintiffs did not allege non-compliance with policy as grounds for a violation. *Appolon v. United States*, No. 16CV2275SJSMG, 2017 WL 3994925, at *17 (E.D.N.Y. Sept. 6, 2017) (alleging negligent investigation, not a violation of a mandatory directive); *Iracheta v. United States*, No. CV B:14-135, 2015 WL 13559948, at *9 (S.D. Tex. June 19, 2015) (same); *Douglas v. United States*, 796 F. Supp. 2d 1354, 1369 (M.D. Fla. 2011) (same).

4. *Contreras v. Anderson*, 59 Cal. App. 4th 188 (1997) does not support the government's argument that ICE agents had no duty to protect Mr. Sanchez Brito from harm simply because the agency does not own or control Yuba or Mesa Verde. Reply at 21. To the contrary, the *Conteras* court recognized that liability may exist on property owned by another but controlled by defendant, and it merely held there was no "evidence that the defendant took affirmative action to preclude or limit the adjoining landowner's control" of the property. *Id*. at 200. Under California law, "When it comes to property, control is defined as the power to prevent, remedy or guard against the dangerous condition." *Colonial Van & Storage, Inc. v. Superior Ct.*, 76 Cal. App. 5th 487, 497 (2022) (cleaned up). Applying this definition, Plaintiff alleged Mr. Sanchez Brito was in ICE custody at all times and that ICE agents had the power to prevent, remedy, or guard against Mr. Sanchez Brito's prolonged solitary confinement through both the agency's general oversight responsibilities and its mandatory responsibilities under Directive 11065. Complaint ¶¶ 33, 35, 61, 85, 100, 142(f)-(h). This qualifies as sufficient control to hold ICE agents liable for their failures to appropriately guard against the dangerous conditions imposed on Mr. Sanchez Brito by their subcontractors.

| | |
|---|---|
| Dated: March 4, 2024 | Respectfully submitted, |
| | */s/ Bardis Vakili* <br> Bardis Vakili |
| | Counsel for Plaintiff |