1
2
3
4
5

Bardis Vakili, CA Bar No. 247783
Law Office of Bardis Vakili, P.C.
P.O. Box 234160
Encinitas, CA 92023
Tel: (619) 483-3490
bardis@vakililegal.com

Counsel for Plaintiff Rosa Lopez and Minor V-S-

6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

11
12
13
14
15
16
17
18

Rosa Lopez, as Legal Guardian of V-S-,
a Minor and Successor in Interest to the
Estate of Victor Sanchez Brito,

        Plaintiff,

    v.

United States of America; GEO Group,
Inc., a corporation,

        Defendants.

Case No. 4:23-cv-04292-DMR

**PLAINTIFF'S OPPOSITION TO
DEFENDANT UNITED STATES'
MOTION TO DISMISS AMENDED
COMPLAINT**

19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF CONTENTS</u>

2 <u>INTRODUCTION</u> ....................................................................................................... 1

3 <u>STATEMENT oF THE CASE</u> .................................................................................. 2

4 <u>ISSUES PRESENTED</u> ................................................................................................ 4

5 <u>LEGAL STANDARD</u> ................................................................................................. 4

6 <u>ARGUMENT</u> ............................................................................................................. 4

7       I.      Plaintiff States a Claim for Negligence Based on ICE Agents' Failure to Release Mr. Sanchez Brito. ............................................................................ 4

8            A. ICE Agents Owed Mr. Sanchez Brito a Duty of Care. ..................................... 5

9            B. ICE Agents' Failure to Release Mr. Sanchez Brito Breached Their Duties. ..... 8

10            C. Plaintiff Adequately Pleads Causation and Damages. ..................................... 15

11       II.     Plaintiff States a Claim for IIED. .......................................................................... 15

12       III.    Plaintiff's Claims Are Not Time Barred in Whole or in Part. ............................... 18

13            A. Plaintiff's False Imprisonment Claim is Not Time Barred. ............................. 18

14            B. Plaintiff's Negligence Claim Based on Keeping Mr. Sanchez Brito Imprisoned and IIED Claim Are Not Time Barred and Include the Entire Period of Mr. Sanchez Brito's Detention. .................................................................................. 22

16 <u>CONCLUSION</u> ......................................................................................................... 25

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Berkman v. United States*,
   957 F.2d 108 (4th Cir. 1992) ................................................................... 5

*Bills v. Clark*,
   628 F.3d 1092 (9th Cir. 2010) ................................................... 18, 19, 20

*Calderon v. U.S. Dist. Ct. for Cent. Dist. of California*,
   163 F.3d 530 (9th Cir. 1998) ................................................................. 21

*Cervantes v. City of San Diego*,
   5 F.3d 1273 (9th Cir.1993) ..................................................................... 19

*Christensen v. Super. Ct.*,
   54 Cal.3d 868 (1991) ............................................................................. 16

*Corales v. Bennett*,
   567 F.3d 554 (9th Cir.2009) ................................................................... 16

*Coyle v. Historic Mission Inn Corp.*,
   24 Cal. App. 5th 627 (2018) ................................................................ 8, 9

*Crosby v. Wellpath, Inc.*,
   No. 20-CV-08529-MMC, 2021 WL 3053056 (N.D. Cal. July 20, 2021) ............................... 14

*Duke v. Cmty. Health Connections, Inc.*,
   355 F. Supp. 3d 49 (D. Mass. 2019). ..................................................... 21

*Edison v. United States*,
   822 F.3d 510 (9th Cir. 2016) ............................................................... 7, 8

*Erlin v U.S.*,
   364 F.3d 1127 (9th Cir. 2004) ................................................. 2, 22, 23, 24

*Flowers v. Carville*,
   310 F.3d 1118 (9th Cir. 2002) ............................................................... 25

*Gonzalez v. United States*,
   No. CV-12-01912 DMG DTBX, 2013 WL 942363 (C.D. Cal. Mar. 11, 2013) ...................... 24

*Hayes v. Cnty. of San Diego*,
   57 Cal. 4th 622 (2013) ............................................................................ 5

*Heck v. Humphrey*,
   512 U.S. 477, 486, 490 (1994)........................................................... 23, 24

*Henderson v. United States*,
   846 F.2d 1233 (9th Cir. 1988) ................................................................. 6

*J.A.M. v. United States*,
   No. 22-CV-380-GPC-BGS, 2024 WL 3353594, (S.D. Cal. June 21, 2024) .................... 5

*J.P. v. United States,*
  679 F. Supp. 3d 911 (D. Ariz. 2023) ................................................................ 5

*Johnson v. Guzman Chavez,*
  594 U.S. 523 (2021) ....................................................................................... 14

*Kesner v. Superior Ct.,*
  1 Cal. 5th 1132 (2016) ..................................................................................... 8

*Knox v. Davis,*
  260 F.3d 1009 (9th Cir. 2001) ....................................................................... 25

*Kwai Fun Wong v. Beebe,*
  732 F.3d 1030 (9th Cir. 2013) ....................................................................... 19

*Lance v. United States,*
  70 F.3d 1093 (9th Cir. 1995) ........................................................................... 5

*Laws v. Lamarque,*
  351 F.3d 919 (9th Cir. 2003) ......................................................................... 21

*Lawson v. Superior Ct.,*
  180 Cal. App. 4th 1372 (2010) ........................................................................ 7

*Lugtu v. California Highway Patrol,*
  26 Cal. 4th 703 (2001) .............................................................................. 6, 13

*Lyttle v. United States,*
  867 F. Supp. 2d 1256 (M.D. Ga. 2012) ......................................................... 12

*Martinez v. City of Los Angeles,*
  141 F.3d 1373 (9th Cir. 1998) ..................................................................... 5, 8

*McDaniels v. Cnty. of San Joaquin,*
  No. CV 2:16-2007 WBS DB, 2017 WL 915356 (E.D. Cal. Mar. 7, 2017) ............ 14

*Mendia v. Garcia,*
  165 F. Supp. 3d 861 (N.D. Cal. 2016) ..................................................... 12, 16

*Mendoza v. Carey,*
  449 F.3d 1065 (9th Cir. 2006) ....................................................................... 20

*Miles v. Cnty. of Alameda,*
  No. 3:22-CV-06707-WHO, 2023 WL 8853717 (N.D. Cal. Dec. 21, 2023) ............ 7

*Minch v. Dep't of California Highway Patrol,*
  140 Cal. App. 4th 895 (2006) ........................................................................ 13

*Nesovic v. United States,*
  71 F.3d 776 (9th Cir. 1995) ........................................................................... 25

*OSU Student Alliance v. Ray,*
  699 F.3d 1053 (9th Cir. 2012) ......................................................................... 4

*Plascencia v. United States,*

No. EDCV 17-02515 JGB (SPX), 2018 WL 6133713 (C.D. Cal. May 25, 2018) .................. 10

*Ramirez v. United States*,
   998 F. Supp. 425 (D.N.J. 1995) .......................................................... 12

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ............................................................ 4

*Sullivan v. Cty. of Los Angeles*,
   12 Cal. 3d 710 (1974) ....................................................................... 8

*Supermail Cargo, Inc. v. United States*,
   68 F.3d 1204 (9th Cir. 1995) .............................................................. 19

*Tarasoff v. Board of Regents*,
   17 Cal.3d 425 (1976) ........................................................................ 6

*Tejeda-Mata v. Immigr. & Naturalization Serv.*,
   626 F.2d 721 (9th Cir. 1980) .............................................................. 9

*The Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*,
   88 Cal. App. 4th 595 (2001) .............................................................. 5

*Thomas on behalf of Thomas v. Cnty. of San Diego*,
   No. 20-CV-1979-CAB-MDD, 2021 WL 2715086 (S.D. Cal. July 1, 2021) .......... 14

*United States v. Wong*,
   575 U.S. 402 (2015) .......................................................................... 18

*Watson v. United States*,
   865 F.3d 123 (2d Cir. 2017) ....................................................... 13, 21, 22

*West v. United States*,
   No. CV-13-00304-PHX-GMS, 2018 WL 1090610 (D. Ariz. Feb. 28, 2018) .......... 22

*Whalem/Hunt v. Early*,
   233 F.3d 1146 (9th Cir. 2000) ............................................................ 19

**Statutes**

18 U.S.C. § 4001 ............................................................................... 9

28 U.S.C. § 2401(b) ............................................................................ 18

8 U.S.C. § 1231(a)(1)(B) ..................................................................... 15

8 U.S.C. § 1231(a)(2) .......................................................................... 14

8 U.S.C. § 1357(a)(1) .......................................................................... 9

8 U.S.C. § 1357(a)(2) .......................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................... 4, 18

1

## **INTRODUCTION**

2      Plaintiff Rosa Lopez brings several claims under the Federal Tort Claims Act ("FTCA")

3  against the United States for ICE agents' unlawful arrest and nearly seven-year-long

4  imprisonment of her son, Victor Sanchez Brito, a natural-born U.S. citizen who lived with severe

5  schizoaffective disorder, bipolar type. In dismissing Plaintiff's previous claims against the

6  United States, the Court identified several issues in her original complaint that could be cured

7  through amendment. Plaintiff's First Amended Complaint ("FAC"), ECF No. 48, now cures

8  those issues, despite the government's arguments to the contrary in its Motion to Dismiss

9  Amended Complaint, ECF No. 53.

10      First, Plaintiff states a claim for negligence based on ICE agents' failure to release Mr.

11  Sanchez Brito for nearly seven years. The Court previously determined that such a claim was

12  viable under the FTCA, but it dismissed the claim with leave to amend, holding that the original

13  complaint failed sufficiently to connect any alleged unlawful acts to specific government

14  employees. The FAC now cures this issue, identifying the roles of specific officers responsible

15  for making determinations regarding Mr. Sanchez Brito's custody and their negligent actions

16  refusing to release him. Additionally, the government is incorrect that Plaintiff fails to plead facts

17  to support the four elements of negligence: duty, breach, causation, and injury. The facts pled

18  support a conclusion that ICE agents owed her son (1) a general duty of care for placing him at

19  risk of foreseeable harm, (2) a heightened duty based on their role as his jailers to protect him

20  from harm, and (3) the duty, recognized by the Court in its prior order, to investigate whether

21  their custody of him continued to be lawful. Plaintiff also pleads facts sufficient to support a

22  finding that ICE officers breached those duties by refusing to release him as evidence

23  undermining their claimed authority to imprison him mounted and by failing to comply with

24  their own written directives governing the detention of U.S. citizens. The FAC also details the

25  various ways these actions caused Mr. Sanchez Brito to suffer harm, including the deterioration

26  of his mental and physical health.

27      Second, Plaintiff states a claim for intention infliction of emotional distress ("IIED"). The

28  Court previously dismissed this claim on the ground that the original complaint did not

sufficiently allege actions by government employees directed at Mr. Sanchez Brito. The FAC now makes such action directed at him abundantly clear, alleging ICE officers made intentional and directed decisions both to keep him in custody and in prolonged solitary confinement. Courts, including in this District, have held that a threat of deportation combined with confinement of a U.S. citizen sufficiently states a claim for IIED. This case is no different. Additionally, the prolonged solitary confinement of an individual with severe mental illness also constitutes conduct not tolerated by civilized society, supporting an IEED claim. The FAC also details how government employees' intentional actions caused him severe emotional distress.

Third, Plaintiff's claims against the United States are not time barred, in whole or in part. Her false imprisonment claim, as narrowed by the Court in its prior order, may have accrued more than two years prior to her submission of the administrative complaint, but she has pled facts sufficient to warrant equitable tolling based, in large part, on his severe mental illness and lack of access to information while detained. On the facts alleged, Ninth Circuit precedent requires this Court to reject the government's timeliness arguments at the motion to dismiss stage and to allow the claim to proceed to discovery for development of the record whether equitable tolling should apply based on Mr. Sanchez Brito's mental illness. Regarding Plaintiff's negligence claim, *Erlin v U.S.*, 364 F.3d 1127 (9th Cir. 2004)squarely forecloses any argument that any portion of this claim is untimely. Furthermore, because both the negligence claim based on failure to release and the IIED claim allege torts that were ongoing from the time of his initial imprisonment until the day of his release, the entirety of that time is actionable under the continuing tort doctrine. Therefore, the government's argument that these claims should be barred for conduct that pre-dates November 29, 2020 is baseless.

Accordingly, Plaintiff respectfully requests that this Court deny the government's motion.

## STATEMENT OF THE CASE

Because the Court is familiar with the facts through its adjudication of Defendants' motions to dismiss the original complaint, ECF No. 45 at 2-6, Plaintiff provides only an overview of her claims here and elaborates as necessary in her argument section below.

1   Plaintiff, the mother of Mr. Sanchez Brito and legal guardian of his only son and heir V-

2   S-, raises four FTCA claims against the United States based on ICE agents' unlawful arrest,

3   imprisonment, and treatment of him. Count One alleges false imprisonment for the arrest of Mr.

4   Sanchez Brito. FAC ¶¶ 133-142. ICE Officer Marco Grasso lacked legal authority to arrest Mr.

5   Sanchez Brito based on, among other things, a cursory and inadequate investigation into his

6   claim to U.S. citizenship and unreasonable reliance on an obviously fraudulent delayed birth

7   registration from Mexico. *Id.* ¶¶ 51-62, 113, 138. In adjudicating the government's first motion

8   to dismiss, the Court held that "[r]esolution of whether Grasso had probable cause to arrest

9   Sanchez Brito is not appropriate on a motion to dismiss, where the government relies on the

10  Mexican birth registration to establish probable cause and the complaint alleges that the

11  document was 'insufficiently probative' of Sanchez Brito's actual place of birth." ECF No. 45 at

12  22. However, the Court dismissed the claim as time-barred, with leave to amend. *Id.* at 31-32. In

13  her FAC, Plaintiff adds allegations sufficient to justify equitable tolling of this claim.

14  Count Two alleges negligence by ICE agents for failing to release Mr. Sanchez Brito for

15  nearly seven years despite their awareness of the mounting evidence that he was a U.S. citizen

16  and that the evidence upon which they relied was flawed. FAC ¶¶ 143-50. The Court previously

17  dismissed this claim with leave to amend because the complaint did "not clearly link any alleged

18  negligent act to any specific individual actor." ECF No. 45 at 32-33. The FAC rectifies this by

19  explicitly describing the roles of the ICE agents involved in Mr. Sanchez Brito's imprisonment

20  and alleging their specific acts that resulted in his remaining in ICE custody for so long.

21  Count Three alleges negligence by ICE agents for subjecting Mr. Sanchez Brito to

22  unlawful conditions of confinement. FAC ¶¶ 151-58. The Court dismissed this claim for lack of

23  subject matter jurisdiction without leave to amend, holding that (1) it was made only against ICE

24  as an institution and not any United States employee, and (2) housing placement in detention is

25  an "inherently government function." ECF No. 45 at 29-30. Plaintiff has requested leave to file a

26  motion to reconsider this ruling, ECF No. 46, but this claim is not currently before the Court.

27

28

1    Count Four alleges IIED, based on ICE agents' intentional actions subjecting Mr.
2    Sanchez Brito to prolonged imprisonment under threat of deportation and prolonged solitary
3    confinement, causing him severe emotional distress. FAC ¶¶ 159-65. The Court previously
4    dismissed this claim with leave to amend because the complaint did "not allege conduct by any
5    ICE agent that was 'directed at' Sanchez Brito." ECF No. 45 at 33. The FAC rectifies this by
6    clarifying the specific actions taken by particular ICE agents and directed at him.

## ISSUES PRESENTED

1.   Whether Plaintiff states a claim for negligence based on the refusal by ICE agents
     responsible for Mr. Sanchez Brito's custody to release him prior to December 10, 2021.

2.   Whether Plaintiff states a claim for IIED based on ICE agents' intentional decisions to
     keep Mr. Sanchez Brito in custody and/or in prolonged solitary confinement.

3.   Whether Plaintiff's claims are timely, including (a) whether she alleges sufficient facts to
     warrant development of the record in discovery for purposes of determining if the Court
     should apply equitable tolling to her false imprisonment claim, and (b) when her claims
     for negligence and IIED accrued and whether those claims may include ICE agents' acts
     and omissions prior to November 29, 2020 under the continuing tort doctrine.

## LEGAL STANDARD

In Rule 12(b)(6) motions, courts take the facts pleaded as true, drawing all inferences in
the light most favorable to the plaintiff to determine if she states a plausible claim. *OSU Student
Alliance v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012). If alternative explanations are plausible,
the court may not dismiss. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## ARGUMENT

## I.    PLAINTIFF STATES A CLAIM FOR NEGLIGENCE BASED ON ICE AGENTS' FAILURE TO RELEASE MR. SANCHEZ BRITO.

In its prior order on the government's first motion to dismiss, the Court properly held that
California law "supports the proposition that law enforcement officers have a 'duty to investigate
the validity of incarceration after sufficient notice.'" ECF No. 45 at 28 (quoting *Martinez v. City*

*of Los Angeles*, 141 F.3d 1373, 1381 (9th Cir. 1998)). However, because the complaint did "not sufficiently specify the identity or role of any individual" United States employee or "link any alleged negligent act to any specific individual actor," the Court held that Plaintiff "failed to state a claim for negligence based on a failure-to-release" theory and dismissed the claim with leave to amend.[1] *Id.* at 32. The FAC addresses this by describing the roles of ICE officers involved in Mr. Sanchez Brito's lengthy imprisonment, as well as their acts and omissions that caused his continued imprisonment.

The FAC alleges acts and omissions by specific ICE agents that would render a private person liable for negligence in California. "[T]o prove facts sufficient to support a finding of negligence" in California, "a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *J.A.M. v. United States*, No. 22-CV-380-GPC-BGS, 2024 WL 3353594, at *14 (S.D. Cal. June 21, 2024) (citing *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013)). The facts alleged support findings in Plaintiff's favor regarding each of these elements.

### A. ICE Agents Owed Mr. Sanchez Brito a Duty of Care.

"Duty… is a legal issue and must be determined by the court." *The Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*, 88 Cal. App. 4th 595, 604 (2001). Here, ICE agents owed Mr. Sanchez Brito at least three types of duty: (1) a generalized duty of care by exposing him to the risk of harm in immigration detention, (2) a heightened duty of care as his jailers to protect him from harm while imprisoned, and (3) as the Court has already held, a duty to ensure they

---

[1] The Court correctly held that Plaintiff need not actually name any specific officers and that describing the "role" of officers involved in Mr. Sanchez Brito's continued detention is sufficient. ECF No. 45 at 32. It is well-settled that "[t]he United States is the only proper defendant in an FTCA action," and that any "Does" named as "additional defendants" must be dismissed. *Lance v. United States*, 70 F.3d 1093, 1095 (9th Cir. 1995). FTCA plaintiffs must merely provide enough information for "the courts to determine the relationship to the United States of the actor whose negligence might be imputed to the government under state law." *Berkman v. United States*, 957 F.2d 108, 113 (4th Cir. 1992). Thus, to the extent the government argues Plaintiff must explicitly *name* specific officers, ECF No. 53 at 8-9, any such argument is meritless. *See J.P. v. United States*, 679 F. Supp. 3d 911, 922 (D. Ariz. 2023) ("Although Plaintiffs do not refer to the CBP officers by name, the United States' pre-discovery complaints about Plaintiffs' inability to name the specific actors is premature.").

PLAINTIFF'S OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS AMENDED COMPLAINT

1    continued to have legal authority to maintain custody of him, as they had notice sufficient to put

2    a reasonable person under a duty to investigate the validity of the incarceration.

3        First, "[u]nder California law, as a general rule, a 'defendant owes a duty of care to all

4    persons who are foreseeably endangered by his conduct, with respect to all risks which make the

5    conduct unreasonably dangerous.'" *Henderson v. United States*, 846 F.2d 1233, 1234 (9th Cir.

6    1988) (quoting *Tarasoff v. Board of Regents,* 17 Cal.3d 425, 434 (1976)). "It is well established,

7    moreover, that one's general duty to exercise due care includes the duty not to place another

8    person in a situation in which the other person is exposed to an unreasonable risk of harm

9    through the reasonably foreseeable conduct (including the reasonably foreseeable negligent

10   conduct) of a third person." *Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 716 (2001)

11   (parenthetical in original). Here, Plaintiff alleges that "officers in the ICE San Francisco Field

12   Office," regularly target individuals claiming home-birth in the United States for removal and

13   that "Officer Grasso, Mr. Sanchez Brito's Deportation Officers and their supervisors, and other

14   ICE officers responsible for Mr. Sanchez Brito's imprisonment were aware that" doing so would

15   invariably "ensnare potential U.S. citizens" and result in "imprisoning" valid "claimants to U.S.

16   citizenship." FAC ¶¶ 122-24. Plaintiff also alleges that the same set of ICE agents "were or

17   should have been aware" that a substantial number of U.S.-born citizens of Mexican descent

18   "later register those children as born in Mexico," but "[d]espite being aware of the risk of harm

19   to United States citizens," they persist in targeting such individuals for removal, exemplified by

20   their "tunnel-vision insistence on imprisoning Mr. Sanchez Brito" and keeping him in custody.

21   FAC ¶¶ 122, 124. Therefore, they knew that keeping Mr. Sanchez Brito in custody created a

22   foreseeable risk of unlawfully imprisoning a U.S. citizen.

23       The FAC also alleges that "[t]he Field Officer Director for the ICE San Francisco Field

24   Office and ICE officers responsible for Mr. Sanchez Brito's imprisonment… were and are aware

25   of the devastating impacts of solitary confinement," particularly "for people with severe mental

26   illness," and that they "did recognize or should have recognized" that their subcontractors

27   detention services – which agents "in the ICE San Francisco Field Officer" were "responsible for

28

overseeing," including by "reviewing… prolonged solitary confinement" placements – were "likely to create a particular risk of physical harm in the absence of special precautions." FAC ¶¶ 125-28. ICE agents involved in keeping Mr. Sanchez Brito in custody knew of his severe mental illness, and the Office of Inspector General placed them on notice that their oversight of solitary confinement placements by subcontractors was inadequate. FAC ¶¶ 126, 128. Thus, by keeping Mr. Sanchez Brito in prolonged solitary confinement, ICE agents exposed Mr. Sanchez Brito to foreseeable harm, triggering a duty of care with respect to the risks of such harm.

Second, "California's recognition of a special relationship between jailers and prisoners" means that "[t]he state imposes a heightened duty of care on jailers, due to prisoners' increased vulnerability while incarcerated." *Edison v. United States*, 822 F.3d 510, 521 (9th Cir. 2016) (citing, *e.g.*, *Lawson v. Superior Ct.*, 180 Cal. App. 4th 1372, 1389 (2010)). As a result, "the United States has a duty to protect" those in its custody, even in carceral facilities run by private contractors. *Id.* (involving detention in a GEO facility); *see also Miles v. Cnty. of Alameda*, No. 3:22-CV-06707-WHO, 2023 WL 8853717, at *20 (N.D. Cal. Dec. 21, 2023) ("This special relationship between a jailer and a prisoner gives rise to a duty of care to protect the prisoner from foreseeable harm," including but not limited to harm "inflicted by a third party."). Here, Plaintiff alleges that Mr. Sanchez Brito was in "ICE's continuous custody" at all times between his arrest on April 25, 2015 and his release on December 10, 2021. FAC ¶ 14. She also alleges that ICE Deportation Officers were "responsible for determining matters related to the custody of detained individuals assigned to them, including whether the individual should be released and whether a condition of confinement is unlawful or must be altered regarding individuals assigned to them." FAC ¶ 20. "Every Deportation Officer has a Supervisory Deportation Officer," each of whom "has a supervisor within the ICE regional field office," and that "chain of command continues up the chain until it reaches the ICE Field Office Director." *Id.* Mr. Sanchez Brito, like every individual in ICE custody, was assigned to a deportation officer, and every officer in that officer's chain of command was also responsible for determining whether Mr. Sanchez Brito should remain in custody. *Id.* They had lawful authority to release him and an oversight role over

1   GEO. *Id.* ¶¶ 19-20, 27, 30, 63, 87. Thus, under California law and the Ninth Circuit's holding in

2   *Edison*, they owed Mr. Sanchez Brito a heightened duty to protect him from harm.

3   Finally, as the Court already held, the ICE agents responsible for keeping people in the

4   agency's custody have an ongoing duty to ensure those in custody remain detained pursuant to

5   lawful authority after sufficient notice." ECF No. 45 at 28; *Martinez*, 141 F.3d at 1380 (liability

6   may exist for a jailer "if there is 'some notice sufficient to put him, as a reasonable man, under a

7   duty to investigate the validity of the incarceration."); *Sullivan v. Cty. of Los Angeles*, 12 Cal. 3d

8   710, 719 (1974). The FAC details specifically the roles of the ICE agents in Mr. Sanchez Brito's

9   cases, including their authority to release him, and that they were on notice of facts regarding his

10  citizenship claim sufficient to investigate the validity of his continued detention. FAC ¶¶ 20, 71-

11  78. Thus, they owed him a duty to investigate whether continued imprisonment was lawful.

12  Thus, the Court should reject the government's assertion that the FAC "has not pleaded

13  facts setting forth duty," among other elements of negligence. ECF No. 53 at 8.[2]

14  **B.      ICE Agents' Failure to Release Mr. Sanchez Brito Breached Their Duties.**

15  Plaintiff also pleads facts setting forth ICE agents' breach of their duties to Mr. Sanchez

16  Brito by failing to release him, even as evidence mounted that their case that he was not a U.S.

17  citizen was fundamentally flawed.

18  "Breach is the failure to meet the standard of care." *Coyle v. Historic Mission Inn Corp.*,

19  24 Cal. App. 5th 627, 643 (2018). While "[a]nalysis of duty occurs at a higher level of

20  generality," the issues of "[b]reach, injury, and causation must be demonstrated on the basis of

21  facts adduced at trial, and a jury's determination of each must take into account the particular

22  context in which any act or injury occurred." *Kesner v. Superior Ct.*, 1 Cal. 5th 1132, 1144

23  (2016). In other words, whether the government breached a duty to Mr. Sanchez Brito is

24  fundamentally a question for a jury – or, in the context of the FTCA, for the Court as fact-finder.

25  "This is because each case presents different conditions and situations. What would be ordinary

26  care in one case might be negligence in another." *Coyle*, 24 Cal. App. 5th at 639-40 (cleaned up).

27
28  [2] Page number citations to the government's motion refer to the blue page number assigned by the Court's ECF system.

PLAINTIFF'S OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS AMENDED COMPLAINT

Here, Plaintiff alleges facts from which a fact-finder could determine that ICE agents breached their duties to Mr. Sanchez Brito by keeping him in custody. A reasonable officer would have been on notice, based on the evidence presented in his removal case, that further investigation into the lawfulness of Mr. Sanchez Brito's incarceration was warranted and that the lawful authority to keep him in custody was in grave doubt. FAC ¶¶ 71-78, 110-11. Indeed, the Court has already determined that it "is not appropriate on a motion to dismiss," to resolve question of whether there was "probable cause to arrest Sanchez Brito."[3] ECF No. 45 at 22. It follows that it is also inappropriate to determine on a motion to dismiss whether ICE agents exercised reasonable care in ensuring they continued to have lawful authority to keep Mr. Sanchez Brito in custody, even as evidence of their lawful authority to do so dissipated. *See Plascencia v. United States*, No. EDCV 17-02515 JGB (SPX), 2018 WL 6133713, at *9 (C.D. Cal. May 25, 2018) ("[A] motion to dismiss is not the appropriate time to determine reasonableness" when plaintiff alleges that detention was unreasonable).

---

[3] Although the Court need not resolve the question at the motion to dismiss stage, Congress did not authorize ICE to incarcerate based on mere probable cause to believe a person is a noncitizen. Specifically, 8 U.S.C. § 1357(a)(2) authorizes immigration agents to "…arrest any *alien* in the United States, if he has reason to believe that the *alien* so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest…" 8 U.S.C. § 1357(a)(2) (emphasis added). "The phrase 'has reason to believe' has been equated with the constitutional requirement of probable cause, *Tejeda-Mata v. Immigr. & Naturalization Serv.*, 626 F.2d 721, 725 (9th Cir. 1980), but the phrase relates to the conditions that a person *already determined* to be an "alien" is "in the United States" unlawfully and "likely to escape," and not that the person is an "alien." In other words, a person arrested must be an "alien" as a jurisdictional pre-requisite before arrest is authorized based on probable cause that such "alien" is present unlawfully and a flight risk. Notably, Congress knows how to write a statute authorizing action based only on a reasonable belief that someone is an "alien," as the immediately preceding subsection of § 1357 authorizes agents "to interrogate any alien *or person believed to be an alien* as to his right to be or to remain in the United States." 8 U.S.C. § 1357(a)(1) (emphasis added). By using different language in the two adjacent subsections, Congress explicitly authorized ICE agents to *interrogate* people based on probable cause they might be "an alien," but specifically declined to authorize them to arrest people based on the same standard. Indeed, in the Non-Detention Act, Congress explicitly forbade agencies from "imprison[ing] or otherwise detain[ing]" U.S. citizens under any authority other than "pursuant to an act of Congress." 18 U.S.C. § 4001. Furthermore, in California, probable cause of a legal violation does not alone provide authority to detain, as there must be probable cause of a legal violation *for which detention is also authorized*. *Edgerly v. City & Cty. of San Francisco*, 599 F.3d 946, 959 (9th Cir. 2010) (finding "custodial arrest" was not authorized based on probable cause of a cite-and-release violation). Accordingly, ICE agents had authority to pursue removal proceedings on "the *non*-detained docket of immigration court" based on probable cause Mr. Sanchez Brito was not a U.S. citizen, FAC ¶ 23, but they lacked authority to imprison him in the effort just based solely on a reasonable belief that he was not one.

1      Although the Court previously dismissed this claim on the ground that the complaint

2 failed to adequately connect any actions to individual ICE agents, the FAC has cured any such

3 deficiency. Specifically, the FAC adds specific allegations that

4          "[a]ll individuals in ICE detention," including Mr. Sanchez Brito, "are assigned an officer
          within the ICE Enforcement and Removal Operations unit. This officer is often referred
5          to as the individual's 'Deportation Officer.' The Deportation Officer is responsible for
          determining matters related to the custody of detained individuals assigned to them,
6          including whether the individual should be released and whether a condition of
          confinement is unlawful or must be altered regarding individuals assigned to them. Every
7          Deportation Officer has a Supervisory Deportation Officer, and each Supervisory
          Deportation Officer has a supervisor within the ICE regional field office. This chain of
8          command continues up the chain until it reaches the ICE Field Office Director in the ICE
          regional field office."
9

10 FAC ¶ 20.

11      Thus, Plaintiff explicitly identifies particular ICE officers by role who were responsible

12 for making custody determinations regarding Mr. Sanchez Brito.

13      The FAC then details the evidence supporting Mr. Sanchez Brito's claim to U.S.

14 citizenship, as well as ICE agents' continuous refusal to release him notwithstanding that

15 evidence. For instance, Plaintiff testified in his removal case regarding the details of Mr. Sanchez

16 Brito's birth, that she had never seen the delayed Mexican birth registration before, that the

17 signature on it was not hers, and that she did not know the supposed witnesses listed on the

18 document. *Id.* ¶ 71. The fact that the document clearly did not establish that either of Mr.

19 Sanchez Brito's parents were in Mexico when it was created was also discussed. *Id.* A

20 handwriting expert gave testimony that Plaintiff's signature on the delayed birth registration had

21 been forged, which the immigration judge credited, stating that the document was "clearly" an

22 "orchestrated event" and finding the signature "was falsified." *Id.* ¶¶ 75-77. ICE counsel was

23 unable to produce a single witness to corroborate the agency's assertion that Mr. Sanchez Brito

24 was born in Mexico. *Id.* ¶ 75. The FAC now adds the critical and previously missing link

25 between specific ICE agents and their alleged negligent conduct, stating "Mr. Sanchez Brito's

26 ICE Deportation Officers and their supervisors were or should have been aware" of this

27

28

mounting evidence, but that they nevertheless "decided to continue to imprison Mr. Sanchez Brito." *Id.* ¶¶ 71-72, 75-76, 78.

Then, following the allegation that, on December 19, 2017, the Ninth Circuit issued an order stating that "genuine issue of material fact exists as to petitioner's claim of United States citizenship," the FAC now adds the connection previously identified by the Court as missing, alleging "Mr. Sanchez Brito's ICE Deportation Officers and their supervisors, who were or should have been aware of these developments" at the Ninth Circuit, "decided to continue to keep Mr. Sanchez Brito imprisoned…." FAC ¶ 78. The FAC also adds that these same agents continued to imprison him even after Judge Mueller's July 14, 2020 order denying the government's motion for summary judgment and finding that "a genuine question of material fact exists regarding" Mr. Sanchez Brito's U.S. citizenship, including based on Plaintiff's U-visa application, in which she had listed him as a U.S.-born citizen while listing her older daughter as born in Mexico, an issue about which she had no reason to lie. *Id.* ¶ 110.

The FAC also repeats the prior allegations that, in his testimony at trial, Agent Grasso admitted that, due to his poor Spanish language skills, he did not consider the fact that the delayed Mexican birth registration did not place Mr. Sanchez Brito's parents in Mexico at his birth and that he trusted the fraudulent Mexican document without question, even though ICE officers routinely question the validity of delayed *United States* birth certificates. *Id.* ¶¶ 55, 57, 113. However, it now adds allegations that the same specific actors in ICE again refused to release him after the February 21, 2021 bench trial, at which expert testimony was presented explaining the many reasons why "it was common for undocumented Mexican parents with U.S.-born children to register those children as born in Mexico," including "as a precaution if the parents were deported," which ICE officers involved in Mr. Sanchez Brito's case already knew, or reasonably should have known, based on the agency's pattern and practice of targeting home birthed U.S. citizens of Mexican descent. *Id.* ¶¶ 111, 122-24

Other courts have upheld negligence claims in similar cases involving unlawful detention of U.S. citizens. For instance, in *Lyttle*, the plaintiff, a U.S. citizen with severe mental illness,

asserted that "ICE Defendants breached their duty of reasonable care by negligently acting or failing to act in such a way that resulted in Mr. Lyttle's wrongful detention and deportation by ICE, which these Defendants knew or should have known posed a substantial risk of grave harm to Mr. Lyttle." *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1301 (M.D. Ga. 2012). The plaintiff alleged "specifically that the Defendants were negligent in performing their duties by: failing to review available documentation of Lyttle's citizenship; failing to investigate Lyttle's claims of being born in the United States;… and detaining, holding, and deporting a U.S. citizen." *Id.* The court found "that these allegations would support a general negligence claim for arrest and confinement under Georgia law."[4] *Id.*; *see also Ramirez v. United States*, 998 F. Supp. 425, 435 (D.N.J. 1995) (where plaintiff alleged "INS agents negligently handled the events leading to his detention" based on mistaken identity, court found agents had "a duty to act with a reasonable level of care when detaining" him and "[i]f the agents did not exercise the level of care that a reasonably prudent INS agent would have employed under the circumstances, then a cause of action for negligence may exist"); *Mendia v. Garcia,* 165 F. Supp. 3d 861, 878 (N.D. Cal. 2016) ("Defendants have not shown Plaintiff," a U.S. citizen subjected to an ICE detainer, "is unable to state a claim for negligence.").

Further supporting Plaintiff's claim of breach are her allegations that Mr. Sanchez Brito's "[d]eportation officers, their supervisors, and the Field Office Director for the ICE San Francisco Field Office" violated Directive 16001.2 by keeping him in custody, as the Directive required the "immediate[] release[]" of anyone with a claim to U.S. citizenship, unless there is "[n]o probative evidence indicates the individual is a U.S. citizen." FAC ¶¶ 27-30, 110, 148.a. The government's attempts to minimize the importance of these alleged violations are unpersuasive. ECF No. 53 at 9 n.3. Although this Court previously held that Plaintiff's "failure-to-release

---

[4] In adjudicating the government's first motion to dismiss, this Court held that *Lyttle* did not "address negligence claims based" solely "on ICE directives" and did not hold "that a violation of ICE directives," without more, "is sufficient to state any FTCA claim." ECF No. 45 at 27. That holding does not foreclose Plaintiff's reliance on *Lyttle* here for the proposition that ICE agents' conduct *as a whole* – not solely their violation of ICE directives – would render a similarly situated person liable for negligence under California law, as the *Lyttle* court held with respect to the similar requirements of Georgia negligence law.

negligence claim may [not] be premised on a violation of ICE directives" alone, as the question is determined by state law, ECF No. 45 at 27, it is well-settled in California that violations of internal policies are relevant evidence of whether a duty was breached. For instance, in *Lugtu*, the Supreme Court of California considered "the appropriate role that the provisions of" a "CHP Officer Safety Manual" should "play in a negligence action under California law." *Lugtu*, 26 Cal. 4th at 720. Citing the California Evidence Code, it held that "the provisions of the CHP Officer Safety Manual may not properly be viewed as *establishing* the applicable standard of care, but they may be *considered* by the trier of fact in determining whether or not an officer was negligent in a particular case." *Id.* (emphasis in original). Even the primary case cited by the government regarding Directive 16001.2 makes this clear. ECF No 54 at 9 n.3. In *Minch*, a California appeals court explicitly held that, although a "CHP Officer Safety Manual" "does not establish a duty in tort on the part of CHP officers," it is "admissible evidence on the question of breach of duty." *Minch v. Dep't of California Highway Patrol*, 140 Cal. App. 4th 895, 908 (2006); *see also Watson v. United States*, 865 F.3d 123, 134-35 (2d Cir. 2017) (holding failure to abide by "internal regulations may constitute evidence of negligence," though it "does not demonstrate negligence in itself") (cleaned up).

The FAC includes specific allegations that "Directive 16001.2 was binding on all ICE agents and officers referenced in this complaint, including Mr. Sanchez Brito's Deportation Officers and their supervisors, who were obligated to follow its requirements." FAC ¶ 27. Whatever discretion the Directive allows, ECF No. 53 at 9 n.3, it does not provide ICE agents the discretion to pretend that obviously probative evidence constitutes "no probative evidence."

Because the FAC details the various actions, and failures to act, by ICE officers constituting breach of their duty to Mr. Sanchez Brito, this case is unlike the cases cited by the government. ECF No. 53 at 9. In *Crosby*, the court dismissed a negligence claim based on failure to monitor a detainee who suffocated himself with a plastic bag, because "plaintiffs fail[ed] to allege sufficient facts" to infer breach, such as "how or when" the decedent "obtained a plastic bag and how Wellpath's staff's monitoring was inadequate." *Crosby v. Wellpath, Inc.*, No. 20-

CV-08529-MMC, 2021 WL 3053056, at *5 (N.D. Cal. July 20, 2021). In *McDaniels*, the "plaintiff merely allege[d] that defendants' 'negligent actions and/or negligent failure to act, as set forth herein-above proximately caused the death of decedent,'" and "fail[ed] to allege any specific wrongful conduct by defendants." *McDaniels v. Cnty. of San Joaquin*, No. CV 2:16-2007 WBS DB, 2017 WL 915356, at *3 (E.D. Cal. Mar. 7, 2017). By contrast, Plaintiff here describes in stark detail the various forms of evidence that were presented to support Mr. Sanchez Brito's citizenship claim, as well as the inadequate nature of the evidence relied on by ICE. The conclusory allegations in those cases do not compare to the detailed claims here. Furthermore, the FAC specifically addresses the central issue identified in *Thomas*, also identified by this Court's prior order, that the plaintiff did "not sufficiently specify the identity or role of any Doe Defendant in the alleged wrongdoing" or "link any particular negligent act to any specific individual actor." *Thomas on behalf of Thomas v. Cnty. of San Diego*, No. 20-CV-1979-CAB-MDD, 2021 WL 2715086 at *3 (S.D. Cal. July 1, 2021) As described above, the FAC contains detailed allegations regarding the officers involved, their roles, and their actions and omissions in refusing to release Mr. Sanchez Brito.

The fact that the immigration judge "ordered Sanchez Brito removed," ECF No. 53 at 4, is immaterial to Plaintiff's negligence claim. The government does not claim or present evidence that ICE's agents relied on the removal order in keeping Mr. Sanchez Brito in custody, nor can such a conclusion be reasonably inferred from the FAC. Any post-hoc speculation that the removal order justified his continued detention cannot support dismissal of this claim. Furthermore, had the ICE agents complied with their duties and released Mr. Sanchez Brito, as Plaintiff alleges they should have, the removal order would not have mandated that ICE take him back into custody. If someone is at liberty when a removal order is issued, that person's detention is not "mandatory" until the beginning of the "removal period." 8 U.S.C. § 1231(a)(2); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021). However, "[t]he removal period begins on the latest of" three possible dates, the applicable one here being that, "if the removal order is judicially reviewed" and a "stay of the removal" is in place, then the "removal period"

begins on the date of the reviewing "court's final order." 8 U.S.C. § 1231(a)(1)(B). That is precisely what happened in Mr. Sanchez Brito's case. *See* Choe Decl, Exh. 1, ECF No. 15-2 at 4 (Ninth Circuit order indicating judicial review and stay of removal were in place in Mr. Sanchez Brito's case). Thus, because judicial review was ongoing until the district court confirmed his U.S. citizenship, the "removal period" never commenced in this case, so his re-detention would never have been mandated if he had been released.

For the abovementioned reasons, the FAC adequately connects the actions of specific ICE officers to allegations of breach.

### C. Plaintiff Adequately Pleads Causation and Damages.

The government alleges, without elaboration, that Plaintiff did not adequately plead any of the elements of negligence, including "causation, and injury by a specific government employee." ECF No. 53 at 9. The argument is meritless. As described above, the FAC is replete with allegations that specific ICE employees, identified by role, caused Mr. Sanchez Brito's prolonged custody, and that such actions caused him to suffer unlawful detention, as well as deterioration of his mental and physical health to the extent that he survived only a few months after finally securing his freedom. Mr. Sanches Brito "was suffering greatly in custody," and "Defendants' treatment of Mr. Sanchez Brito systematically wore him down and broke him, causing significant decompensation, several psychotic breaks, and permanent harm to his mental health. Defendants caused his physical well-being to suffer as well." FAC ¶¶ 74, 115. Causation and damages are adequately pled.

## II. PLAINTIFF STATES A CLAIM FOR IIED.

"[T]o state a claim for intentional infliction of emotional distress under California law, a plaintiff must show '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" *Mendia*, 165 F. Supp. 3d at 878 (quoting *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir.2009)). "Severe emotional distress

1   means emotional distress of such substantial ... or enduring quality that no reasonable [person] in

2   civilized society should be expected to endure it." *Id.* "Conduct is 'outrageous' if it is 'so

3   extreme as to exceed all bounds of that usually tolerated in a civilized community.'" *Id.* (quoting

4   *Christensen v. Super. Ct.*, 54 Cal.3d 868, 903 (1991)). "It is not enough that the conduct be

5   intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence

6   of a plaintiff of whom the defendant is aware." *Christensen*, 54 Cal. 3d at 903.

7         In *Mendia*, the plaintiff was a derivative U.S. citizen who alleged that ICE agents

8   targeted him for interrogation while he was in criminal custody "because he is foreign-born," and

9   that when he invoked his right to remain silent, they engaged in a "staring contest" with him,

10   threatened him with deportation, and placed an immigration detainer on him, resulting in his

11   being unable to obtain a bail bond. *Mendia*, 165 F. Supp. 3d at 870, 878-79. The court held that

12   "the agents' threat of deportation combined with Plaintiff's imprisonment" constitute sufficient

13   "plausible facts to support an intentional infliction of emotional distress claim." *Id.* at 879.

14         Plaintiff's claim is similar. She alleges that her son was targeted for interrogation based

15   on the mistaken belief that he was "born in Mexico" and that ICE agents kept him imprisoned for

16   nearly seven years under threat of deportation. FAC ¶¶ 4-5, 52, 61. Although the Court

17   previously held that Plaintiff failed to allege conduct directed at Mr. Sanchez Brito, ECF No. 45

18   at 33, the FAC rectifies that issue. Specifically, Plaintiff alleges that ICE agents were aware of

19   the evidence of his U.S. citizenship and still made specific decisions to keep Mr. Sanchez Brito

20   in custody. FAC ¶¶ 71-72, 75-76, 78. Agency policy even required agents to prepare memoranda

21   and make affirmative decisions to keep claimed U.S. citizens like Mr. Sanchez Brito in custody.

22   FAC ¶¶ 28-29. The agents also knew that imprisoning individuals claiming U.S. citizenship

23   through home birth would inevitably result in the detention of U.S. citizens like Mr. Sanchez

24   Brito, yet they made intentional decisions directed specifically at him to keep him in custody.

25   FAC ¶¶ 71-72, 75-76, 78. Imposing immigration detention on an individual agents know has a

26   lifelong claim to U.S. citizenship is sufficiently outrageous conduct for an IIED claim, because a

27

28

civilized community would not tolerate officers incarcerating someone for nearly seven years who they have good reason to believe they have no lawful authority to imprison.

Additionally, Plaintiff alleges that ICE agents made intentional decisions to keep her son in solitary confinement for prolonged periods. Specifically, she alleges that GEO's prolonged solitary confinement of Mr. Sanchez Brito was done "with the knowledge and approval of his ICE deportation officers, their supervisors, and the Field Office Director for the ICE San Francisco Field Office," that their "review of his placement was required by Directive 11065.1", and that they "had the authority to relieve those conditions and end his solitary confinement." FAC ¶ 36-37, 102. However, "they either did not conduct the required review, or, if they did, they made intentional decisions to continue to subject him to solitary confinement, knowing it was substantially likely to cause harm." FAC ¶ 80. "Mr. Sanchez Brito's Deportation Officers, their supervisors, and the Field Officer Director for the ICE San Francisco Field Office… had the authority to end Mr. Sanchez Brito's solitary confinement but either negligently or intentionally chose not to do so, knowing his prolonged solitary confinement would cause significant harm" keeping him in isolation even after another individual committed suicide in the same or adjacent cell. FAC ¶ 103. "[D]espite being aware of the harm,…  the Field Office Director for the ICE San Francisco Field Office, and the ICE officers responsible for reviewing Mr. Sanchez Brito's prolonged solitary confinement" willfully imposed "prolonged solitary confinement" on Mr. Sanchez Brito. FAC ¶ 128. These decisions were necessarily directed at him. The intentional imposition of prolonged solitary confinement is sufficiently outrageous conduct that alone exceeds the bounds of what is tolerated in a civil society, which Plaintiff alleges "is widely known to be particularly devastating for people with significant mental illness." FAC ¶ 128.

Furthermore, Plaintiff alleges that, as a result of this imprisonment and solitary confinement, her son "decompensated," fearing he would be stuck in detention "for the rest of his life," "he did not want to live anymore in detention," and he had several "psychotic breaks" requiring hospitalization. *Id.* ¶¶ 8, 85, 105-07. "More than a third (33%) of people held in solitary confinement become psychotic and/or suicidal within the first 15 days, and people who

1    have been subjected to solitary confinement are 78% more likely to commit suicide within a year

2    of being released from prison." FAC ¶ 128. "The harm of prolonged solitary confinement is

3    widely known to be particularly devastating for people with significant mental illness," like Mr.

4    Sanchez Brito. *Id.* Once he was released, he could not recover from the trauma and was so

5    distraught that he overdosed within months of his release as a result. *Id.* ¶¶ 114-20. Thus, the

6    FAC plainly alleges facts sufficient to support a finding of severe emotional distress to state a

7    claim for IIED.

8    **III.    PLAINTIFF'S CLAIMS ARE NOT TIME BARRED IN WHOLE OR IN PART.**

9        **A.    Plaintiff's False Imprisonment Claim is Not Time Barred.**

10       The Court previously held that Plaintiff's false imprisonment claim – which the Court

11   limited to challenge only the initial arrest of Mr. Sanchez Brito – accrued no later than the date

12   of the immigration court's removal order in January 2017. ECF No. 45 at 31-32. The government

13   seeks to push the accrual date back to May 4, 2015, the date of Mr. Sanchez Brito's first

14   immigration court hearing. ECF No. 53 at 5. In either event, because Plaintiff's administrative

15   claim was filed on November 29, 2022, her false imprisonment claim (as narrowed by the

16   Court's prior Order) may only proceed if the Court applies equitable tolling to the two-year

17   statute of limitations. FAC ¶¶ 16, 129; 28 U.S.C. § 2401(b). However, in urging dismissal of this

18   claim, the government provides no justifiable reason for the Court to deny equitable tolling at

19   this pre-discovery stage of the proceedings.

20       "The time limits in the FTCA are just time limits," and "a court can toll them on

21   equitable grounds." *United States v. Wong*, 575 U.S. 402, 412 (2015). Further, the Ninth Circuit

22   has "long recognized equitable tolling in the context of a petitioner's mental illness." *Bills v.*

23   *Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010). "Because the applicability of the equitable tolling

24   doctrine often depends on matters outside the pleadings, it 'is not generally amenable to

25   resolution on a Rule 12(b)(6) motion.'" *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204,

26   1206-07 (9th Cir. 1995) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th

27   Cir.1993)); *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) ("[W]hether there are

28

grounds for equitable tolling [is] highly fact-dependent" requiring "appropriate development of the record"). Accordingly, "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim," "[r]eading the allegations in the complaint with the required liberality." *Supermail Cargo*, 68 F.3 at 1207. "For this reason," the Ninth Circuit has "reversed dismissals" on Rule 12(b)(6) motions "where the applicability of the equitable tolling doctrine depended upon factual questions not clearly resolved in the pleadings." *Id.* (citing cases). Here, the FAC contains allegations regarding equitable tolling sufficient to warrant further discovery.

"[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (citations and quotations omitted). "As to the first element, '[t]he standard for reasonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief. It requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances.'" *Id.* (citation omitted)). In the context of claims based on mental illness, the plaintiff "must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance." *Bills*, 628 F.3d at 1100.

Here, Mr. Sanchez Brito's circumstances included that he was disabled by severe mental illness, imprisoned, including in solitary confinement for lengthy periods, and represented by a lawyer in immigration court but not for a FTCA claim, for which he had "no reasonably available access to assistance" and was only able to obtain counsel "after his release." FAC ¶¶ 3, 5, 73, 129-31. Regarding his diligence under these circumstances, he "fully engag[ed]" through his immigration counsel to the extent his mental health permitted, "in the only process made available to him or that he was aware of for vindicating his rights as a United States citizen: his removal proceedings and subsequent petition for review to the Ninth Circuit." FAC ¶ 132. Although that process took nearly seven years to resolve, the government does not argue that the

1   lengthy duration was due to any lack of diligence on his part, nor could it. Moreover, much of

2   the information that ultimately put him on notice that he had a claim "that ICE and its agents

3   lacked the lawful authority to arrest and confine him" was only "obtained through" the district

4   court process, in which "discovery and depositions were permitted" to him for the first time,

5   because such discovery is "not permitted" in immigration court. FAC ¶¶ 130, 132.

6           Plaintiff also alleges that "no information about administrative tort claims or the FTCA

7   was available to Mr. Sanchez Brito in detention." FAC ¶ 130-31. Under the totality of

8   circumstances, the Court could reasonably infer that it was "impossible" for Mr. Sanchez Brito to

9   know his rights under the FTCA and that he had no "available access to assistance." *Bills,* 628

10  F.3d at 1100. Thus, the government's assertion that the limited access Mr. Sanchez Brito had to

11  the law library, ECF No. 53 at 7, when he specifically alleges information was unavailable,

12  misses the mark. *Cf. Mendoza v. Carey*, 449 F.3d 1065, 1069 (9th Cir. 2006) (discovery

13  warranted on equitable tolling claim based on claim of "prison law library lack of Spanish-

14  language legal materials").

15          Regarding the second element of "extraordinary circumstances," Plaintiff also alleges

16  sufficient facts to warrant allowing the case to proceed to discovery. To support a claim of

17  extraordinary circumstances based on mental illness, Plaintiff must demonstrate "the impairment

18  was so severe that either" Mr. Sanchez Brito "was unable rationally or factually to personally

19  understand the need to timely file, or" that his "mental state rendered him unable personally to

20  prepare" the administrative claim "and effectuate its filing." *Bills*, 628 F.3d at 1099-100. Here,

21  the FAC states Mr. Sanchez Brito's "mental illness was so severe that it prevented him from

22  rationally or factually understanding the availability of relief under the FTCA or the need to file

23  an administrative claim…, and it rendered him unable personally to prepare and file an

24  administrative claim under the FTCA" before he passed away. FAC ¶ 129. This allegation

25  follows paragraphs of detailed allegations regarding Mr. Sanchez Brito's mental incapacity. FAC

26  ¶¶ 3, 8, 45, 79, 85, 105-07,115, 118.  "Where, as here, there is a threshold showing of mental

27  incompetency, a sufficient showing has been made for equitably tolling the statute of

28

limitations." *Calderon v. U.S. Dist. Ct. for Cent. Dist. of California*, 163 F.3d 530, 541 (9th Cir. 1998) (abrogated on other grounds); *see Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003) (If "mental incompetence in fact caused" a failure "to meet the… filing deadline, his delay was caused by an extraordinary circumstance beyond [his] control, and the deadline should be equitably tolled") (quotations omitted).

The government parses words, arguing that, because Mr. Sanchez Brito's severe mental illness was "often," but not *always*, "debilitating," the Court should deny equitable tolling at the motion to dismiss stage. ECF No. 53 at 7. However, the Ninth Circuit does not require mental impairment to be "debilitating" at all times, requiring instead merely a "threshold showing of mental incompetency." *Calderon*, 163 F.3d at 541. Thus, Ninth Circuit precedent requires that Plaintiff's allegations warrant further discovery. *Laws*, 351 F.3d at 924 (once a habeas petitioner "alleged mental incompetency," "the district court should then have allowed discovery or ordered expansion of the factual record" to determine whether equitable tolling applied).

Furthermore, Plaintiff alleges that the United States and GEO "caused [Mr. Sanchez Brito's] disability to deteriorate further" by "subject[ing] him to prolonged incarceration in solitary confinement," which also "limited his ability to communicate with anyone outside of detention." FAC ¶ 130. "[I]t would be patently unfair to allow a defendant to eschew liability by negligently incapacitating a plaintiff and consequently thwarting his claim on procedural grounds" by denying "equitable tolling." *Duke v. Cmty. Health Connections, Inc.*, 355 F. Supp. 3d 49, 58 (D. Mass. 2019).

Cases cited by the government do not justify straying from these principles. In *Watson*, although the plaintiff suffered from depression, mental health was not the court's focus; instead it analyzed "'most significantly,' the fact that government officials told Watson that he was not a U.S. citizen," as the grounds for equitable tolling. *Watson*, 865 F.3d at 132. Noting that the plaintiff had "mounted a vigorous case in the immigration court" as a "pro se" respondent, the court rejected his argument that "the government's assertion of his alien status was a sufficiently 'severe' obstacle that 'caused' him to miss his filing deadline." *Id.* Similarly, in *West*, the

plaintiff had been out of custody for two years before filing his administrative complaint, and while he was in custody he "wrote and filed a petition for post-conviction relief in Arizona Superior Court" five years before filing an administrative claim on the "same set of facts." *West v. United States*, No. CV-13-00304-PHX-GMS, 2018 WL 1090610, at *3 (D. Ariz. Feb. 28, 2018). Although he claimed an unspecified "mental health issues that resulted in commitment," the court found that the plaintiff's post-conviction relief application demonstrated that "his mental illness did not impair his ability to file a timely claim." *Id.* at *4.

The modest obstacles that the plaintiffs in *Watson* and *West* demonstrably overcame are readily distinguishable from Plaintiff's circumstances, which include a lifelong diagnosis of severe "schizoaffective disorder – bipolar type" that "substantially limited… his major life activities" and caused him to become "confused, and 'grossly disorganized'" and suffer prolonged "psychotic break[s]" requiring hospitalization in at least 2018 and 2020, that he was often medicated to "near-sedation" and "decompensated to the point that he could barely hold a conversation" and required suicide prevention measures, FAC ¶¶ 3, 45, 65, 79, 85, 100, 105-07, 172, and that any vigorous defense in immigration court was performed by his attorney, *id.* ¶¶ 76. The government points to nothing in the record here to demonstrate he successfully overcame the significant obstacles he faced, as was the case in *Watson* and *West*.

Thus, the Court should not dismiss Plaintiff's false arrest claim for untimeliness.

**B.      Plaintiff's Negligence Claim Based on Keeping Mr. Sanchez Brito Imprisoned and IIED Claim Are Not Time Barred and Include the Entire Period of Mr. Sanchez Brito's Detention.**

Plaintiff's negligence and IIED claims challenge harms caused by ICE agents that were ongoing until the day Mr. Sanchez Brito was released. They therefore did not accrue until December 10, 2021. The Court should reject the government's efforts to limit those claims to the two-year period prior to November 29, 2022, when Plaintiff filed the administrative claim.

Regarding Plaintiff's negligence claim based on ICE agents' failure to release Mr. Sanchez Brito, the government's argument is foreclosed by the Ninth Circuit's opinion in *Erlin*, which held that the Supreme Court's ruling in *Heck v. Humphrey* applied to FTCA cases alleging negligence based on failure to release a prisoner. In *Heck*, the Supreme Court held that § 1983

PLAINTIFF'S OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS AMENDED COMPLAINT

claims for "allegedly unconstitutional conviction or imprisonment" do "not accrue until the conviction or sentence has been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 486, 490 (1994). The Supreme Court reasoned that holding otherwise would allow plaintiffs inappropriately to collaterally attack their confinement through civil tort actions. *Id.* at 486. Thus, if "judgment in favor of the plaintiff" in the tort action "would necessarily imply the invalidity of his conviction or sentence," then "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

In *Erlin*, the Ninth Circuit specifically applied *Heck* to FTCA claims for negligence based on unlawful confinement, holding that an FTCA claim "for negligently calculating a [federal] prisoner's release date, or otherwise wrongfully imprisoning the prisoner, does not accrue until the prisoner has established, in a direct or collateral attack on his imprisonment, that he is entitled to release from custody." *Erlin,* 364 F.3d at 1133. The court reasoned that, even though the "invalidity of his convictions or sentences is not necessary to his damages claim," a judgment that he was entitled to damages because he should have been released, "issued while he was still imprisoned, would raise the same problems" identified by the Supreme Court in *Heck*. *Id.* at 1131. Thus, "the time of accrual of an FTCA claim is subject to the federal law set out in *Heck*." *Id.* at 1132. The court rejected the government's argument that the court should distinguish *Heck* on the ground that Erlin raised a false imprisonment claim, noting that the claim in fact "is not for false imprisonment. It is for negligence." *Id.* at 1133.

*Erlin* squarely controls the negligence inquiry here. Just as a favorable damages judgment in *Erlin* would have raised the same concerns identified in *Heck* regarding inappropriate collateral challenges to ongoing custody through damages actions, had Mr. Sanchez Brito succeeded on a negligence claim under the FTCA while he was still detained, it would have necessarily invalidated the immigration judge's removal order before judicial review of that order was complete. For precisely this reason, the district court in *Gonzales* held that *Erlin* applied in a challenge to ongoing immigration detention, stating that the claim would not accrue until then-pending habeas litigation challenging the lawfulness of the detention on the merits was

resolved. *Gonzalez v. United States*, No. CV-12-01912 DMG DTBX, 2013 WL 942363, at *7 (C.D. Cal. Mar. 11, 2013) ("The same principles at play in *Heck* would appear to apply with equal force in the civil immigration context.").[5] Thus, under *Erlin*, Mr. Sanchez Brito could not have filed his claim sooner than his release date. The government's argument that events that pre-date the two-year-period before he filed his administrative claim would lead to the absurd result that a claim challenging such events may never be recoverable under the FTCA. The Court should reject this interpretation.

*Erlin* is not distinguishable on the ground that it involved miscalculation of a release date, whereas Plaintiff challenges the invalidity of Mr. Sanchez Brito's detention as a whole. If anything, this brings Plaintiff's case more squarely within *Heck*'s holding, which was premised on the concern that a favorable outcome in the damages action "would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. The court in *Erlin* accepted that the entirety of the sentence might not be invalidated in that case, but it still applied *Heck*'s rationale to negligence claims regarding the failure to release. *Erlin*, 364 F.3d at 1131. Thus, Mr. Sanchez Brito was required to wait until he "established, in a direct or collateral attack," that he was "entitled to release from custody," before he could file his administrative claim. *Id.* at 1133.

Finally, Plaintiff's negligence claim for failure to release and her IIED claim both challenge harms that were ongoing from the time of his detention until the day Mr. Sanchez Brito was released. They therefore did not accrue until December 10, 2021. Because they allege continuing and repeated conduct beginning the moment he entered ICE custody, they also include all harm going back to his initial detention. Under "the continuing tort doctrine… [w]hen a tort involves continuing wrongful conduct, the statute of limitations doesn't begin to run until that conduct ends." *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002); *Nesovic v. United States*, 71 F.3d 776, 778 (9th Cir. 1995) (the "continuing wrong" doctrine involves

---

[5] The court in Gonzalez analyzed *Erlin* in the context of a "false imprisonment" claim based on prolonged detention even after removal proceedings began, a type of claim that this Court has held does not fall within the tort of false imprisonment. Compare *Gonzalez* at *3, *8 with ECF No. 53 at 31-32. However, whatever label the court in *Gonzalez* gave to the prolonged detention claim there, its analysis addressed a claim for prolonged detention and is squarely applicable to Plaintiff's prolonged detention negligence claim here.

"repeated instances or continuing acts of the same nature"). "The doctrine applies where there is no single incident that can fairly or realistically be identified as the cause of significant harm." *Flowers*, 310 F.3d at 1126. "The continuing violation theory applies to § 1983 actions." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001). Because it applies to torts and to § 1983 actions, it must also apply to the FTCA.

Here, Plaintiff's negligence claim for failure to release obviously challenges ICE agents' continuing acts of keeping Mr. Sanchez Brito in custody from the day he was arrested until the day he was released. Likewise, her IIED claim challenges ICE agents' intentional decisions to both keep him imprisoned for nearly seven years under threat of deportation while evidence of his U.S. citizenship mounted, and to keep him in prolonged solitary confinement despite their awareness of its harms on people with severe mental illness. Thus, under the continuing tort doctrine, his negligence and IIED claims are not "barred for any acts or omission that occurred prior to November 29, 2020," ECF No. 53 at 6, because the challenged acts took place long prior to that date continued or repeated until the date of his release.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the government's motion.

Respectfully submitted,

Dated: October 8, 2024

<u>/s/ Bardis Vakili</u>
Bardis Vakili

Law Office of Bardis Vakili, P.C.
P.O. Box 234160
Encinitas, CA 92023
Tel: (619) 483-3490
bardis@vakililegal.com