ISMAIL J. RAMSEY (CABN 189820)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
MICHAEL A. KEOUGH (NYRN 5199666)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612-5217
    Telephone: (510) 637-3721
    Facsimile:  (510) 637-3724
    michael.keough@usdoj.gov

*Attorneys for Defendant the
United States of America*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROSA LOPEZ, as Legal Guardian of V-S-, a Minor and Successor in Interest to the Estate of Victor Sanchez Brito,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA and GEO GROUP, INC.,<br><br>    Defendants. | Case No. 4:23-cv-04292-DMR<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |

Defendant submits the following reply in support of its Motion (Dkt. 53) to Dismiss the First Amended Complaint (Dkt. 47, " FAC") and in response to Plaintiff's opposition to the same (Dkt. 57, the "Opposition" or "Opp.").

## I.   PRELIMINARY STATEMENT

The Motion established that the claims in the First Amended Complaint against the United States should be dismissed. The Opposition's arguments do not change this outcome.

*First*, the entirety of the false imprisonment claim, and all other claims based on alleged acts that occurred before November 29, 2020, must be dismissed as untimely. There is no dispute that Plaintiff's FTCA claim was not presented to the relevant agency until November 29, 2022, and any act or omission that occurred more than two years prior to that date is time-barred pursuant to 28 U.S.C. § 2401(b). The Opposition's arguments regarding equitable tolling do not cure the timeliness issue for the entire false imprisonment claim (and claims based on any other act that occurred before November 29, 2020) because the FAC fails to allege cognizable continuous extraordinary circumstances that prevented Sanchez Brito from presenting a claim during the *years* between when his claim accrued and the time it was presented. The same argument applies to the remaining claims for acts that took place prior to November 29, 2020. In response, the Opposition contends that the Court should extend Ninth Circuit precedent regarding the accrual of FTCA claims challenging criminal proceedings to the civil immigration context. But the Ninth Circuit has not done so, and the Court should decline the invitation because civil immigration matters are not sufficiently analogous to criminal habeas matters to extend those cases here.

*Second*, the negligence claim should be dismissed to the extent it is based on any alleged acts that occurred after November 29, 2020 because the FAC does not include any factual allegation that directly connects a government employee to specific conduct during that time period. The FAC's vague allegations to "The ICE officers responsible for Mr. Sanchez Brito's detention" are not enough to cure the issues that led to this Court's dismissal of the original complaint for similar allegations regarding "Agents of the United States."

*Finally*, the intentional infliction of emotional distress ("IIED") claim should be dismissed to the extent it is based on alleged acts that occurred after November 29, 2020 because none of that alleged

conduct occurred in Mr. Sanchez Brito's presence or was directed at him, as required to plead this claim.

For these reasons, and those set forth in the Motion, the Court should dismiss the claims against the United States in their entirety and with prejudice.

## II. ARGUMENT

### A. All Claims Based on Acts or Omissions Before November 29, 2020 Are Time-Barred

#### 1. The Entire False Imprisonment Claim is Time-Barred

The Motion established that Plaintiff's entire false imprisonment claim is untimely because (1) it accrued more than two years prior to the when the claim was presented to the agency pursuant to 28 U.S.C. § 2401(b) and (2) equitable tolling is not appropriate. *See* Motion at 4-7. In response, the Opposition does not address the Motion's argument that the COVID-19 pandemic does not constitute an extraordinary circumstance, effectively conceding this point. *See generally* Opposition (containing no argument regarding the COVID-19 pandemic). The Opposition also concedes that Mr. Sanchez Brito was placed in solitary confinement "for lengthy periods" but not the entire period of time prior to the presentment of his claim. *See* Opp. at 19. The Complaint also alleges that during same time that he spent periods outside of solitary confinement Mr. Sanchez Brito was able to meaningfully participate in his ongoing immigration proceeding. It is not plausible that Mr. Sanchez Brito was unable to present his FTCA claim at the same time.

Accordingly, the only possible remaining extraordinary circumstance is Mr. Sanchez Brito's mental illness, and whether it prevented him from presenting his FTCA claim during the entire period from May 4, 2015 (when legal process was initiated before the IJ and his false imprisonment claim accrued) to November 29, 2022 (the date the claim was presented). Plaintiff's allegations in the FAC fail to plausibly establish that Plaintiff was so incapacitated that he could not timely present his claims. *Hutchinson v. U.S. Dep't of Veteran Affs.*, No. 17-CV-06403-VKD, 2018 WL 3207970, at *7 (N.D. Cal. June 29, 2018) ("Conclusory allegations of distress are insufficient. Rather, equitable tolling is only available where the facts pled plausibly demonstrate that the claimant was so impaired that she could not timely present her claim."). More than "pars[ing] words" as Plaintiff contends (Opp. at 21), the FAC's allegations conceding that the illness was "often debilitating" for "several periods" (FAC ¶ 129) is fatal to the claim because such allegations do not show that Mr. Sanchez Brito was continuously prevented

from timely presenting his claim. The Opposition also fails to address the FAC's concession that Mr. Sanchez Brito experienced periods where he was not impaired even after legal process began (at which time any false imprisonment ended and this claim accrued), such as when a doctor found Sanchez Brito to have "appearance, behavior, and thought processes" that were "appropriate" on or about May 18, 2015. FAC ¶ 69. This period of competency was *after* Mr. Sanchez Brito's arrest by Officer Grasso on April 25, 2015 (FAC ¶ 61), and Sanchez Brito could have presented his claim at that point. Such allegations do not demonstrate that Mr. Sanchez Brito had *no* opportunity to timely present his claim as required by 28 U.S.C. § 2401(b). *See Hudson v. U.S. Postal Serv.*, No. C 00-0093 WHA, 2000 WL 236378, at *4 (N.D. Cal. Feb. 29, 2000) (declining to apply equitable tolling in FTCA case where plaintiff claimed mental illness as extraordinary circumstance but was able to file other pleadings despite the claimed illness).

Plaintiff's citations to *Calderon v. U.S. Dist. Ct. for Cent. Dist. of California*, 163 F.3d 530, 541 (9th Cir. 1998), abrogated by *Woodford v. Garceau*, 538 U.S. 202 (2003), are unavailing. That case involved a habeas petitioner – who had a statutory right to counsel under the circumstances, unlike FTCA claimants – for whom certain proceedings were stayed to assess the petitioner's mental capacity. *Id.* at 541. Under these circumstances, the court found that equitable tolling was appropriate during the time that the other proceedings were stayed even though the petitioner failed to file a timely habeas petition during the same time period. Nor does *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995) support Plaintiff's position because that case involved equitable tolling where a government agency had deliberately withheld the existence of the claim from the putative petitioner. *Id.* at 1207. Here, in contrast, the FAC does not allege that the government tried to hide the existence of any claim from Mr. Sanchez Brito. And the Opposition's attempts to distinguish *Watson v. United States*, 865 F.3d 123 (2d Cir. 2017), and *West v. United States*, No. CV-13-00304-PHX-GMS, 2018 WL 1090610, at *4 (D. Ariz. Feb. 28, 2018) (*see* Opp. at 21-22) merely prove Defendant's points. The Opposition does not grapple with the *Watson* court's holding that a plaintiff could not invoke the doctrine of equitable tolling where, during the period in which he was purportedly incapacitated for purposes of presenting an FTCA claim, he was simultaneously participating in an immigration proceeding. 865 F.3d at 132. And the Opposition concedes that the *West* plaintiff was foreclosed from

invoking equitable tolling because he was able to participate in another proceeding at the same time he was claiming a debilitating mental illness. *See* Opp. at 22. These cases mirror the facts here and warrant the same result.

## 2. The Negligence and IIED Claims are Also Time-Barred in Part

To the extent they are premised on conduct that occurred prior to November 29, 2020, Plaintiff's negligence and IIED claims similarly should be dismissed as untimely. *See* Motion at 4, 7, 9. In response, Plaintiff argues that these claims did not accrue until the district court determined that Mr. Sanchez Brito was entitled to release, citing *Erlin v. United States*, 364 F.3d 1127, 1132 (9th Cir. 2004). Opp. at 22-24. In *Erlin*, the Ninth Circuit extended to FTCA actions the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), that a plaintiff seeking damages for an allegedly unconstitutional conviction or imprisonment under 42 U.S.C. § 1983 must show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487. The holding in *Heck* regarding challenges to criminal proceedings, and extended to FTCA claims arising from criminal proceedings by the Ninth Circuit in *Erlin*, has never been applied to immigration proceedings by the Ninth Circuit (in *Erlin* or any other case). At least one district court encountering this issue has questioned whether such extension would be proper. *See El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 273 n.24 (D. Conn. 2008) (analyzing *Erlin* and observing that "There is good reason to doubt that *Heck* is properly extended to civil immigration proceedings" given the unique nature of the habeas context to which *Erlin* and *Heck* presently apply). This makes sense: *Heck*'s holding addressed the tension between concurrent criminal and civil proceedings, basing its holding on the "principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486. Neither *Heck* nor *Erlin* addressed whether the rule announced in each case should also apply to the civil immigration context. Without such a holding, the negligence and IIED claims accrued at the time plaintiff "knew both the fact of the injury and its immediate physical cause," *Gallardo v. United States*, 755 F.3d 860, 864 (9th Cir. 2014) – *i.e.*, when the alleged tortious acts occurred – and are thus time-barred to the

extent they occurred before November 29, 2020.[1]

Nor does the continuing tort doctrine (Opp. 24-25) save the negligence or IIED claims for acts that occurred prior to November 20, 2020.  The Ninth Circuit has instructed that "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008) (en banc).  Plaintiff does not allege continual unlawful acts by any ICE employee; the only discrete acts identified by Plaintiff involving ICE employees are Mr. Sanchez Brito's arrest and ICE's compliance with the removal order, both of which occurred years before November 20, 2020.  That Plaintiff alleges that Yuba County or GEO placed him in segregated housing on multiple occasions does not plead a continuing violation by the United States, as the FTCA expressly excludes claims based on independent contractors.  28 U.S.C. § 2671.

At bottom, before Plaintiff can seek discovery (as the Opposition requests), Plaintiff must allege facts that, taken as true, plausibly establish that Plaintiff is entitled to relief.  No discovery is appropriate here because the allegations in the FAC fail to show that equitable tolling is appropriate.

**B.     Plaintiff Still Fails to State a Claim for Negligence**

The Motion established that Plaintiff's claim for negligence based on failure to release did not allege any specific acts linked to an individual government employee.  Motion at 7-8.  In response, the Opposition highlights allegations of general action taken by all ICE employees – but this is same pleading deficiency that led to the Court's dismissal of the original complaint.  *See* Dkt. 45 at 32.  The FAC's new allegations specifically identified in the Opposition do not link any individual government employee to any specific act:

- Paragraph 20 (cited Opp. at 7, 10):  This paragraph alleges the command structure for ICE employees who report up their chain-of-command in the ICE regional field office, and does not allege any specific act taken with regards to Mr. Sanchez Brito.

---

[1] Even if the Court looks to *Gonzalez v. United States*, No. CV-12-01912 DMG DTBX, 2013 WL 942363 (C.D. Cal. Mar. 11, 2013) (cited Opp. at 24) as an example of a district court that applied *Erlin* in the civil immigration context, that court determined that an IIED claim was not subject to *Erlin*'s rule regarding accrual after detention was invalidated (because, unlike a malicious prosecution claim, the IIED claim did not require the plaintiff to show that the detention had been invalidated) and dismissed the claim as untimely.  *Id.* at *9.  This reasoning from *Gonzalez* would equally apply to the negligence claim.

- Paragraphs 27 and 30 (cited Opp. at 8): These paragraphs describe ICE Directive 16001.1, but not any specific act taken by an individual government employee. In any event, as established in the Motion, this directive cannot form the basis of FTCA liability, and the Opposition does not address this argument. *See* Motion at 8 n. 3.

- Paragraphs 71-78 (cited Opp. at 8, 10): These paragraphs claim that unidentified ICE employees were "on notice of facts regarding his citizenship claim sufficient to investigate the validity of his continued detention." Opp. at 8. However, the cited allegations all concern the immigration detention proceedings that ended with the immigration judge ordering Mr. Sanchez Brito's removal. FAC ¶ 77. The Opposition does not explain how, after the immigration judge weighed these allegations and ordered Mr. Sanchez Brito removed, any ICE employee was on notice that further investigation of Mr. Sanchez Brito's citizenship claim was required.

- Paragraphs 122 to 124 (cited. Opp at 6): These paragraphs include allegations regarding "the larger context of ICE engaging in a practice of pursuing the removal of individuals claiming U.S. citizenship based on home birth to Mexican mothers" as part of a policy pursued by "ICE officers." The paragraphs allege a "pattern" rather than specific acts taken with regards to Mr. Sanchez Brito.

None of these allegations connects a specific employee to a specific act, and none involves actions alleged to have taken place after November 29, 2020. Allegations that every ICE employee in the San Francisco regional field office may have played a role in Mr. Sanchez Brito's detention is no better than the allegations of acts by "Agents of the United States" that previously led to dismissal of this claim. *See* Dkt. 45 at 32 (holding that such allegations were insufficient because "the complaint does not clearly link any alleged negligent act to any specific individual actor").

      Nor do the cases cited by Plaintiff change this analysis. These cases involved specific allegations of conduct by government employees, not generalized allegations of action by an agency or by all employees of a particular office at that agency. *Lyttle v. United States*, 867 F. Supp. 2d 1256 (M.D. Ga. 2012) (cited Opp. at 12) included allegations regarding acts taken by at least eight specific ICE employees with regards to an allegedly unlawful detention. *Id.* at 1267. The same is true for

*Ramirez v. United States*, 998 F. Supp. 425 (D.N.J. 1998) (cited Opp. at 12), where the plaintiff alleged a specific act by government employees – detention at Newark International Airport for two-and one-half hours on the basis of an outstanding arrest warrant for someone with a similar name to the plaintiff. *Id.* at 429.  The court in *Ramirez* specifically dismissed claims involving higher-ranking officials where there was no allegation of actions taken with regards to the plaintiff. *Id.* at 432.  So too in *Mendia v. Garcia*, 165 F. Supp. 3d 861 (N.D. Cal. 2016) (cited Opp. at 12), where the complaint alleged that a specific ICE employee had placed the plaintiff on an immigration detainer that gave rise to a false imprisonment claim.  *Id.* at 870.

Because Plaintiff has only plead vague assertions of conduct by ICE employees generally (rather than acts by specific government employees), Plaintiff's negligence claim should be dismissed.

**C.     Plaintiff Still Fails to State a Claim for Intentional Infliction of Emotional Distress**

The claim for intentional information of emotion distress (IIED) should be dismissed because, even after amendment, the FAC still does not include any allegations of conduct by any ICE agent that was directed at Mr. Sanchez Brito or that occurred in Mr. Sanchez Brito's presence.  *See* Motion at 9-10. The Court previously dismissed this claim on this ground and should do so again.  *See* Dkt. 45 at 33.

The Opposition does not describe any alleged ICE conduct took place in Mr. Sanchez Brito's presence. *See* Opp. at 15-18.  Plaintiff must thus show that conduct was "directed at the plaintiff." *Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903 (1991).  But the only allegations in the FAC regarding the IIED claim relate to (1) the initial arrest, *i.e.*, conduct that is long-since time-barred, and (2) ICE's compliance with the January 30, 2017, removal order by the immigration court, which is not conduct directed at Plaintiff.  Plaintiff also cites no authority for the proposition that compliance with a court order is sufficiently outrageous conduct to plead this claim, and courts addressing this issue have held the exact opposite.  *See Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 932 (9th Cir. 2001) (carrying out court order not outrageous); *Chen v. King Cnty. Sheriff's Off.*, No. 2:21-CV-01492-LK, 2022 WL 17960617, at *11 (W.D. Wash. Dec. 27, 2022), appeal dismissed, No. 23-35055, 2023 WL 4740090 (9th Cir. June 12, 2023) (same).  Further, the Opposition concedes that such conduct may not have been intentional at all.  *See* Opp. at 17 (citing FAC ¶ 103) (accusing ICE of "negligently" failing to end Mr. Sanchez Brito's confinement).

*Mendia v. Garcia* (Opp. at 16) does not save this claim. In that case, an IIED claim was allowed to proceed based on conduct that occurred in the plaintiff's presence (an interrogation) that also occurred prior to entry of any order confirming the legality of the detention (such as the January 30, 2017, removal order in the present case). 165 F. Supp. 3d at 878. Plaintiff cites no case indicating that compliance with a lawful court order is outrageous conduct sufficient to support a claim for IIED.

### III. CONCLUSION

For the foregoing reasons, and those set forth in the Motion, the Court should dismiss Plaintiff's FAC against the United States in its entirety without leave to amend.

Respectfully submitted,

ISMAIL J. RAMSEY

United States Attorney

Dated: October 22, 2024     By:   */s/ Michael A. Keough*
MICHAEL A. KEOUGH

*Assistant United States Attorney*

*Attorneys for Defendant
the United States of America*